**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

BURTON T. FRIED,                                      :
                                                      :
                        Plaintiff,                    :
                                                      :      No. 10-CV-9308 (JSR)(JCF)
              v.                                       :
                                                      :
LVI SERVICES, INC.; LVI PARENT CORP.;                 :
CODE HENNESSY SIMMONS LLC d/b/a CHS                   :
PRIVATE EQUITY V LP; APOLLO                           :
INVESTMENT CORP.; SCOTT E. STATE, in his             :
official and individual capacities; BRIAN             :
SIMMONS, in his official and individual capacities;   :
RAJAY BAGARIA, in his official and individual         :
capacities; GERALD J. GIRARDI, in his official        :
and individual capacities,                            :
                                                      :
                        Defendants.                   :
-------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT APOLLO**
**INVESTMENT CORPORATION'S MOTION TO DISMISS THE COMPLAINT**


THOMPSON WIGDOR & GILLY LLP

Douglas H. Wigdor
85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
dwigdor@twglaw.com

*Counsel for Plaintiff Burton T. Fried*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ........................................................................... 3

ARGUMENT ...................................................................................................................... 5

I   THE COMPLAINT STATES CLAIMS AGAINST APOLLO AS PLAINTIFF'S
    JOINT AND/OR SINGLE EMPLOYER UNDER THE ADEA AND THE CITY
    HRL ..................................................................................................................... 6

        A   The Complaint Contains Factual Allegations to Support a Single
            Employer Relationship Between LVI and Defendant Apollo ................................ 6

        B   The Complaint Demonstrates Control Over Plaintiff's Terms and
            Conditions of Employment Sufficient to Establish Liability on the Part of
            Apollo as a Joint Employer With LVI ................................................................ 9

        C   A Motion to Dismiss is not the Proper Time to Decide the Issue of a
            Single and/or Joint Employer Relationship ........................................................ 12

II  APOLLO ALSO IS LIABLE FOR AIDING AND ABETTING THE
    DISCRIMATION AND RETAILATION AGAIST PLAINTIFF AS ALLEGED IN
    THE COMPLAINT .............................................................................................. 14

III THE COMPLAINT PROPERLY STATES A CLAIM FOR TORTIOUS
    INTERFERENCE ................................................................................................ 16

CONCLUSION ................................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Arculeo v. On-Site Sales & Mktg., LLC,*
    425 F.3d 193 (2d Cir. 2005) ..................................................................................... 6, 9

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) .......................................................................................... 5

*Barbosa v. Continuum Health Partners, Inc.,*
    716 F. Supp. 2d 210 (S.D.N.Y. 2010) .................................................................. 10, 13

*Beltre v. Lititz Healthcare Staffing Solutions LLC,*
    No. 10-CV-4594 (VM), 2010 WL 4963895 (S.D.N.Y. Nov. 30, 2010) ........................... 10, 13

*Bridges v. Eastman Kodak Co.,*
    800 F. Supp. 1172 (S.D.N.Y. 1992) ......................................................................... 13

*Cauthorne v. Mutual Life Ins. Co., No.,*
    No. 96-CV-0232 (JFK), 1997 WL 154019 (S.D.N.Y. Apr. 1, 1997) ....................................... 13

*Clinton's Ditch Coop. Co. v. NLRB,*
    778 F.2d 132 (2d Cir. 1985) .................................................................................... 9

*Cook v. Arrowsmith Shelburne, Inc.,*
    69 F.3d 1235 (2d Cir. 1995) .............................................................................. 6, 7, 8

*Dias v. Cmty. Action Project, Inc.,*
    No. 07-CV-5163 (NGG)(RER), 2009 WL 595601 (E.D.N.Y. Mar. 6, 2009) ........................... 5

*DiBlasio v. Novello,*
    344 F.3d 292 (2d Cir. 2003) ................................................................................... 5

*Emmons v. City Univ. of New York,*
    715 F. Supp. 2d 394 (E.D.N.Y. 2010) ...................................................................... 12

*Finkel v. S.I. Assocs. Co., Inc.,*
    No. 05-CV-4656 (LDW), 2008 WL 2630297 (E.D.N.Y. June 30, 2008) .............................. 12

*Fowler v. Scores Holding Co., Inc.,*
    677 F. Supp. 2d 673 (S.D.N.Y. 2009) ...................................................................... 12

*Gore v. RBA Group, Inc.,*
    No. 03-CV-9442 (KMK)(JCF), 2008 WL 857530 (S.D.N.Y. Mar. 31, 2008) ......................... 9

*Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*,
  470 F. Supp. 2d 345 (S.D.N.Y. 2007)........................................................................ 14, 15

*Kern v. City of Rochester*,
  93 F.3d 38 (2d Cir. 1996) ........................................................................................... 9

*Levine v. Reader's Digest Ass'n, Inc.*,
  No. 06-CV-590 (CLB), 2007 WL 4241925 (S.D.N.Y. Nov. 30, 2007) ...................... 8

*Lihli Fashions Corp., Inc. v. N.L.R.B.*,
  80 F.3d 743 (2d Cir. 1996)........................................................................................... 6

*Mason Tenders Dist. Council of Greater New York v. Cheromin, Inc.*,
  No. 07-CV-1755 (DAB), 2009 WL 1024256 (S.D.N.Y. Apr. 13, 2009) .................. 12

*Matthews v. New York Life Ins. Co.*,
  780 F. Supp. 1019 (S.D.N.Y. 1992)......................................................................... 13

*Robles v. Goddard Riverside Cmty. Ctr.*,
  No. 08-CV-4856 (LTS)(JCF), 2009 WL 1704627 (S.D.N.Y. June 17, 2009) ........ 15

*Santos v. Brookdale Hosp. Med. Ctr.*,
  29 Misc. 3d 1207(A) (N.Y. Sup. Ct. 2010) ............................................................. 11

*Shipkevich v. Staten Island Univ. Hosp.*,
  No. 08-CV-1008 (FB) (JMA), 2009 WL 1706590 (E.D.N.Y. June 16, 2009)........ 11

*Siotkas v. LabOne, Inc.*,
  594 F. Supp. 2d 259 (E.D.N.Y. 2009) ...................................................................... 16

*Thai v. Cayre Group, Ltd.*,
  726 F. Supp. 2d 323 (S.D.N.Y. 2010)........................................................................ 11

*Williams v. New York City Hous. Auth.*,
  872 N.Y.S.2d 27 (1st Dept. 2009) ............................................................................ 11

## RULES

Fed. R. Civ. P. 12(b)(6)................................................................................................... 1

Fed. R. Civ. P. 15(a) .................................................................................................... 18

## STATUTES

29 U.S.C. §§ 621, *et seq.*, Age Discrimination in Employment Act of 1967 .................. 1

N.Y.C. Admin. Code § 8-107 ......................................................................................... 1

Plaintiff Burton T. Fried ("Plaintiff" or "Mr. Fried") respectfully submits this memorandum of law in opposition to the motion by Defendant Apollo Investment Corp. ("Apollo"), pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss his claims against Apollo for discrimination and retaliation in violation of the ADEA and New York City Human Rights Law (the "City HRL"), or in the alternative, Mr. Fried's claims for aiding and abetting the discriminatory conduct against him and tortiously interfering with his employment. As set forth in greater detail below, Mr. Fried's Amended Complaint[1] ("Complaint" or "Compl.") sets forth well pleaded claims against Apollo, and Apollo's motion to dismiss should be denied in its entirety.

## PRELIMINARY STATEMENT

Mr. Fried's claims arise out of Defendants' discriminatory termination of his employment as Chairman of the LVI Defendants due to his age, as well as Defendants' retaliation against him for his protected complaints and opposition to such unlawful, age-based discrimination. Although the Company may have been Plaintiff's formal employer, the actions of Apollo's employees and representatives demonstrate a relationship between Apollo and LVI that brings Apollo within the definition of employer in the anti-discrimination statutes. Apollo's claim that it is merely a shareholder in LVI Parent belies the specific factual allegations contained in the Complaint that reveal a much more extensive involvement in both LVI and Mr. Fried's employment. Nowhere in the Complaint does Mr. Fried concede that Apollo's involvement in his employment ends at its status as a shareholder in LVI Parent; instead, Plaintiff lays out

---

[1] In addition to Apollo, the Complaint also names as Defendants, LVI Services, Inc. (the "Company" or "LVI"), LVI Parent Corp., Inc. ("LVI Parent") (together with LVI, the "LVI Defendants"), Code Hennessy Simmons LLC d/b/a CHS Private Equity V LP ("CHS") (together with the LVI Defendants, the "Corporate Defendants"), Scott E. State ("State"), Brian Simmons ("Simmons"), Rajay Bagaria ("Bagaria") and Gerald J. Girardi ("Girardi") (together, the "Individual Defendants") (all Defendants collectively, "Defendants").

precisely the manner in which Apollo is liable and supports his theory of liability with specific factual allegations.  Further, liability on the part of Apollo, as a joint and/or single employer, comports with the principles of corporate law.  Mr. Fried has not asserted at any time that Apollo's liability depends on piercing the corporate veil and, unlike Apollo, Mr. Fried recognizes the important distinction between piercing the corporate veil and liability as a single or joint employer.  Rather, Mr. Fried asserts, and supports with factual allegations, that Apollo is both integrated with LVI in a single employer relationship, and purposefully directed its employees and representatives to become involved in dictating the terms and conditions of Plaintiff's employment, including his termination.  The arguments put forward by Apollo elide over the clear import of prevailing case law to the contrary; notwithstanding Apollo's self-serving characterization of itself as merely a shareholder of LVI Parent, the actions of its employees and representatives, as alleged in the Complaint, amply demonstrate the degree of involvement and control over LVI that is the hallmark of joint and/or single employer status.

The Complaint includes numerous allegations that amount to far more than a recitation of the elements of a cause of action and, taken together, suggest affirmative conduct on the part of Apollo beyond simply gaining an ownership stake in LVI Parent.  Apollo assumes that, notwithstanding the clear allegations of the Complaint, the actions of its employees, which are at the heart of Mr. Fried's claims, were somehow undertaken on behalf of a different corporate entity, entirely independent from their employer, Apollo.  Moreover, after denying Mr. Fried's well-pleaded allegations of fact and setting forth its own, unsubstantiated and competing version of the same, Apollo requests that the Court dismiss Mr. Fried's Complaint without affording him the opportunity to conduct essential discovery that would enable the Court to evaluate the parties' conflicting narratives on the basis of a fully developed factual record.  As set forth

below, the Complaint clearly alleges well-pleaded causes of action against Apollo, as well as its

status as a joint and/or single employer.

## ALLEGATIONS OF THE COMPLAINT

Mr. Fried began working at LVI in 1986 as the Company's General Counsel.  (Compl. ¶

26).  Just three years thereafter, Mr. Fried began his seventeen-years of service as the Company's

President and CEO, during which he helped establish LVI as the country's only national provider

of environmental remediation and structural demolition services, and the largest employer in its

field.  (*Id.* ¶¶ 26, 28).  By 2005, Mr. Fried had decided to seek a permanent replacement as

President and CEO and actively searched for such a replacement during that year.  (*Id.* ¶ 30).   In

June 2006, Robert McNamara took over as President and CEO of LVI and Mr. Fried stepped into

the role of Chairman of the Company.  (*Id.* ¶ 32).  Although Plaintiff's day-to-day involvement

at LVI was diminished, Mr. Fried remained engaged in a wide variety of areas of the Company's

operations, including new business initiatives, litigation and legal matters, risk assessments and

negotiations of Company acquisitions.  (*Id.* ¶ 34).  Mr. Fried remained as Chairman until Mr.

McNamara resigned in April 2010 and, at that time, CHS asked Mr. Fried to guide LVI through

another transition period by re-assuming the position of President and CEO.  (*Id.* ¶ 37).

While Mr. Fried spearheaded efforts to find a permanent replacement, Defendant State

requested that Plaintiff put his name forward as a candidate for the position.  (*Id.* ¶ 39).  As a

result, Mr. Fried introduced State to CHS, as well as Apollo and Falcon Strategic Partners III, LP

("Falcon"), two investment firms who became minority stakeholders in Defendant LVI Parent on

October 8, 2010.[2]  (*Id.* ¶¶ 39, 41).  At that time, Apollo gained two seats on the Board of

---

[2]     Apollo incorrectly claims that it is a minority shareholder of LVI.  (*See* Def.'s Mem. 2).
In fact, Apollo holds no shares of LVI, has no ability to appoint the Company's Board members
and has no representatives on the Board of LVI.  (*See* Compl. ¶ 81).

Directors of LVI Parent (the "Board") which were subsequently filled by Defendants Bagaria and Girardi, two employees of Apollo's investment manager.[3]  (*Id.* ¶ 41).  After State interviewed with senior LVI managers and received Mr. Fried's recommendation, CHS and Apollo, along with Falcon, agreed that State should assume the position of President and CEO of LVI.  (*Id.* ¶ 42).  State began his employment with LVI on or about October 1, 2010.  (*Id.* ¶ 43).

On October 19, 2010, State and Mr. Fried met at the LVI corporate offices in New York to discuss Mr. Fried's ongoing role as Chairman.  (*Id.* ¶ 44).  During that meeting, State refused to discuss Mr. Fried's job duties and, instead, informed Mr. Fried that all of his responsibilities would be transitioned to other LVI managers.  (*Id.* ¶ 45).  When Mr. Fried attempted to inquire as to the basis for this sudden and drastic diminution of his role, State merely responded that: "*You're 71 years old.  How long do you expect to continue working*?"  (*Id.* ¶ 46).  After this alarming meeting, Plaintiff learned that Apollo, as well Bagaria and Girardi, shared State's opinion and desired that Mr. Fried be stripped of his duties as Chairman.  (*Id.* ¶¶ 49, 52).  Their shared desire was promptly satisfied, as Mr. Fried was thereafter excluded from projects that he had been leading and was prevented by State from continuing his substantive participation in many facets of the Company's operation.  (*Id.* ¶ 57).

On November 4, 2010, during a closed meeting of the Board, Mr. Fried expressed his opposition to the discriminatory, age-based conduct of State and the other Defendants, but representatives from Apollo, among other Board members, again expressed their belief that Mr. Fried should be stripped of his substantive job responsibilities.  (*Id.* ¶ 53).  At this meeting, Bagaria was a particularly vocal proponent of stripping Plaintiff's duties, doing so at the behest of Apollo's President.  (*Id.* ¶¶ 53-54).  Following this meeting, on November 10, 2010, the

---

[3]     Apollo acknowledges this fact in its motion.  (*See* Def.'s Mem. 3).

Board, including Bagaria and Girardi, reiterated this desire to Mr. Fried that he have no day-to-day involvement in the Company.  (*Id.* ¶ 58).  As a result of this clearly age-based and retaliatory conduct, Mr. Fried sent a letter, through counsel, to State to formally oppose Defendants' discriminatory actions.  In response, on November 16, 2010, Simmons notified Mr. Fried that his employment with LVI would be terminated effective November 30, 2010.  (*Id.* ¶¶ 60, 62).  Mr. Fried's termination from all positions with the LVI Defendants was effected on the same date. (*Id.* ¶ 62).

## ARGUMENT

On a motion to dismiss, the Court, presuming all "well pleaded factual allegations" to be true, must determine whether those allegations "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Facial plausibility is a "context-specific" concept, requiring more than a "sheer possibility" but less than a "probability" that a defendant has acted unlawfully.  *Id.* at 1949-50.  Resolution of factual disputes is not appropriate on a motion to dismiss.  *See*, *e.g.*, *DiBlasio v. Novello*, 344 F.3d 292, 304 (2d Cir. 2003).  Here, Mr. Fried's Complaint contains multiple examples of specific instances of Apollo involving itself directly in the terms and conditions of Mr. Fried's employment, which it dictated and controlled for Mr. Fried and other LVI employees alike.  These factual allegations are more than sufficient to state a "plausible" claim for liability against Apollo under either a joint or single employer theory, and Defendant's motion to dismiss should be denied.  *Cf. Dias v. Cmty. Action Project, Inc.*, No. 07-CV-5163 (NGG) (RER), 2009 WL 595601, at *5 (E.D.N.Y. Mar. 6, 2009) (denying motion to dismiss despite limited factual allegations in support of joint/single employer theory

because "[t]he court does not believe that [Plaintiff] is required to plead specific facts establishing single or joint employment").

## I.   THE COMPLAINT STATES CLAIMS AGAINST APOLLO AS PLAINTIFF'S JOINT AND/OR SINGLE EMPLOYER UNDER THE ADEA AND CITY HRL

### A.  The Complaint Contains Factual Allegations to Support a Single Employer Relationship Between LVI and Defendant Apollo

"A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (internal quotations and citations omitted). "In such circumstances, of which examples may be parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management, the nominally distinct entities can be deemed to constitute a single enterprise." *Id.* To determine whether two entities can be deemed to constitute a single employer, courts consider four case-specific factors, none of which are individually dispositive. *See Lihli Fashions Corp., Inc. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996) ("To demonstrate single employer status, not every factor need be present, and no particular factor is controlling. Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an 'arm's length relationship found among unintegrated companies.'") (citations omitted).

Specifically, these factors call for an inquiry into the existence and extent of the entities' shared: (i) interrelation of operations; (ii) centralized control of labor relations; (iii) common management; and (iv) common ownership or financial control. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995). Although each of the four factors is relevant, the foremost indicator of single employer status, however, is centralized control over labor relations,

which is primarily evidenced by "what entity made the final decisions regarding employment matters related to the person claiming discrimination." *Id.*

Here, the well-pleaded allegations of the Complaint demonstrate that Apollo should be held liable as a single employer under all four relevant factors, and particularly with respect to its exercise of control over LVI's labor relations.  For example, even before Apollo became a shareholder in LVI Parent, it was involved in the search for a new President and CEO and approved the hire of State.  (Compl. ¶ 42).  Further, Simmons, a managing partner of CHS, consulted with Bagaria and Girardi, Apollo employees and representatives on the Board, regarding the transition Mr. Fried's job duties to other LVI managers and the desire to replace Mr. Fried's employment agreement with a consulting agreement.  (*Id.* ¶ 49).  During the Board meeting on November 4, 2010, Bagaria and Girardi made clear that they shared State's discriminatory intent and strongly reiterated State's desire to strip Plaintiff of his substantive job duties.  (*Id.* ¶¶ 51, 53).  Throughout the period preceding State's hire until Mr. Fried was terminated, Apollo exercised control over the labor relations of LVI and participated in the discrimination against him.  (*Id.* ¶ 82).  All of the relevant conduct by Bagaria and Girardi was undertaken on behalf of Apollo and in concert with other Board members, including State and representatives from CHS.  Although the Board operated as though it had the authority to dictate the terms and conditions of employment for LVI employees, no such authority existed.  (*Id.* ¶ 76).  Thus, Bagaria and Girardi could not have effectuated the transition of Mr. Fried's duties and termination of Mr. Fried's employment in their capacities as members of the Board, and could only have undertaken this discriminatory conduct at the direction and with the consent of Apollo.  These factors, evidencing the extent of Apollo's control over labor relations at LVI,

demonstrate that Apollo, together with LVI Parent (the sole shareholder of LVI), made the final decisions regarding the terms and conditions of Mr. Fried's employment.

The Complaint likewise demonstrates that Apollo and LVI are commonly managed and owned. Common management may be shown through a high degree of involvement in the employer's operation by employees of the other entity in the single employer relationship. *See Levine v. Reader's Digest Ass'n, Inc.*, No. 06-CV-590 (CLB), 2007 WL 4241925, at *11 (S.D.N.Y. Nov. 30, 2007) (denying summary judgment on the issue of a single employer relationship and finding that a high degree of involvement by an employee of the non-employer entity raised the inference that the entity oversaw and managed the employer's operations). Here, the Complaint alleges, and Defendants do not deny, that Apollo has two seats on the Board and the two Apollo employees who occupy those seats, Bagaria and Girardi, are intimately involved in the operations of the Company, including setting the terms and conditions of Plaintiff's employment. (Compl. ¶ 81). Moreover, the Complaint also demonstrates the common ownership that exists between Apollo and LVI through Apollo's position as a minority shareholder in LVI Parent (the sole owner of the Company). (*Id*. ¶¶ 17-19).

Although Apollo claims that the Complaint fails to allege "complete domination and control" (*see* Def.'s Mem. 6), such allegations are not required for purposes of stating employment discrimination claims against Apollo under the single employer doctrine.[4] Rather, the single employer test looks for "a showing that there is an amount of participation [that] is sufficient and necessary to the total employment process, *even absent* total control or ultimate authority over hiring decisions." *Cook*, 69 F.3d at 1241 (emphasis added). And, as set forth above, the allegations in the Complaint are more than sufficient to show the involvement of

---

[4]     In fact, such arguments reflect Apollo's conflation of the standards for piercing the corporate veil with the standards for imposing liability under the single employer doctrine.

Apollo in the total employment process.  Apollo was involved in LVI's labor relations before it became an equity-holder in LVI Parent, and thereafter continued its involvement, as demonstrated, *inter alia*, by its conduct in setting the terms and conditions of Mr. Fried's employment, as well as his ultimate termination.  In light of the Complaint's well-pleaded allegations demonstrating that Apollo and LVI were Mr. Fried's single employer, Apollo's motion to dismiss Mr. Fried's claims on this ground should be denied.

### B.   The Complaint Demonstrates Control Over Plaintiff's Terms and Conditions of Employment Sufficient to Establish Liability on the Part of Apollo as a Joint Employer With LVI

In addition to sufficiently alleging that Apollo and LVI are subject to liability under a single employer theory as set forth above, the Complaint also properly alleges that the two entities share liability on the basis of their status as Mr. Fried's "joint employer."  (*See* Compl. ¶¶ 86-93).  In contrast to a single employer relationship, in a joint employer relationship "there is no single integrated enterprise.  A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they . . . handle certain aspects of their employer-employee relationship jointly."  *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (quoting *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985)); *Gore v. RBA Group, Inc.*, No. 03-CV-9442 (KMK)(JCF), 2008 WL 857530, at *3 (S.D.N.Y. Mar. 31, 2008). In this context, the definition of employer is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities," *Laurin v. Pokoik*, No. 02-CV-1938 (LMM), 2004 WL 513999, at *8 (S.D.N.Y. Mar. 15, 2004) (quoting *Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir.1996), and courts weigh "factors such as commonality of hiring, firing, discipline, pay, insurance, records, and supervision," *id.* (citations omitted). Moreover, the standard for pleading a joint employer relationship is not exacting, and a plaintiff

must merely "plead enough facts so that the claim is facially plausible and gives fair notice to defendants of [his] theory of employer liability."  *See Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 219 (S.D.N.Y. 2010); *cf. Beltre v. Lititz Healthcare Staffing Solutions LLC*, No. 10-CV-4594 (VM), 2010 WL 4963895, at *4 (S.D.N.Y. Nov. 30, 2010) (denying motion to dismiss based on defendant's inability to demonstrate that "it could not possibly be deemed plaintiff's employer or joint employer.").

Here, the factual allegations in the Complaint are more than sufficient to state both a facially plausible claim of a joint employer relationship and inform Apollo of Plaintiff's theory of liability against Apollo under these standards.  For example, Apollo affected significantly Mr. Fried's access to employment opportunities through the actions of its employees who sit on the Board.  (Compl. ¶ 88).  Although Apollo argues that such allegations are conclusory, Mr. Fried has supported them with ample specific instances of involvement by Apollo in his employment. Thus, Mr. Fried alleges that before State was hired, Apollo was active in the process through which State became an employee of the Company, including approval of his hire.  (*Id.* ¶¶ 39, 42).  As the discriminatory actions against Mr. Fried began following State's hire, Bagaria and Girardi maintained even greater involvement in Mr. Fried's employment by advocating for the transition of his duties and stripping him of all involvement in the Company.  (*Id*. ¶¶ 49, 58). Advocacy by Bagaria and Girardi for Mr. Fried's ouster from the Company culminated in their clear expression at the Board meeting on November 4, 2010 that Mr. Fried's job duties should be eliminated and that he should have no substantive involvement in the Company.  (*Id.* ¶ 53). Furthermore, Mr. Fried has alleged that the actions of Bagaria were at the behest of Apollo's

President who directed Bagaria to strip Mr. Fried of his job responsibilities.[5]  (*Id.* ¶ 54).  Such a contention is neither belated nor conclusory; it is a factual allegation that supports directly the involvement of Apollo in Mr. Fried's employment.  These allegations amount to far more than mere conclusory recitations of the elements for imposing liability on a joint employer, and are more than sufficient to defeat Apollo's motion to dismiss.  *See*, *e.g.*, *Shipkevich v. Staten Island Univ. Hosp.*, No. 08-CV-1008 (FB)(JMA), 2009 WL 1706590, at *3 (E.D.N.Y. June 16, 2009) (denying defendant's motion to dismiss where plaintiff alleged that defendant "had great control over discipline and supervision, and some control over pay and possibly firing") (cited in Def.'s Mem. 12 n.4); *see also Santos v. Brookdale Hosp. Med. Ctr.*, 29 Misc. 3d 1207(A), at *3 (N.Y. Sup. Ct. 2010) (denying motion to dismiss under City HRL where joint employer theory was predicated on allegation of "supervisory authority" and plaintiff did not allege that entity hired, fired, paid, or controlled terms and conditions of his employment.).[6]

Although these joint and single employer theories are spelled out on the face of the Complaint, Apollo spends the majority of its argument to dispel theories of liability that are not raised in the first instance by Mr. Fried and inapplicable in the context of employment

---

[5]     The fact that the President is unnamed does not lead to the conclusion that Mr. Fried has made a "naked assertion;" instead, Plaintiff has identified a particular high-ranking executive at Apollo who both had knowledge of, and directed, the discriminatory conduct of Bagaria.

[6]     Although Apollo asserts that the single and joint employer tests are analyzed in similar fashion under the City HRL (*see* Def.'s Mem. 15-16), it should be noted the City HRL mandates "a more liberal standard" of construction to effectuate its "uniquely broad and remedial purposes."  *Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 337 (S.D.N.Y. 2010) (citing *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31, 34 (1st Dept. 2009)).  As Plaintiff has demonstrated that Apollo exercised sufficient control over the terms of his employment to be held liable as a single or joint employer with LVI under the federal standard, the same conclusion must be drawn under the more permissive standard employed under the City HRL.

discrimination.[7]  In so doing, Apollo repeatedly states that it must escape liability because it is

only a minority shareholder in LVI Parent and glosses over the numerous factual allegations in

the Complaint that go well beyond Apollo's status as a mere shareholder.  Mr. Fried has

adequately pled a joint employer relationship between LVI and Apollo; the inability to hold

Apollo liable as an alter ego of LVI based on its status as a shareholder is inconsequential.

Because Mr. Fried has set forth numerous factual allegations evidencing the direct involvement

in his employment by Bagaria and Girardi, on behalf of Apollo, the motion to dismiss Mr.

Fried's discrimination claims based on Apollo's status as his joint employer should be denied.

### C.  A Motion to Dismiss is not the Proper Time to Decide the Issue of a Single and/or Joint Employer Relationship

Although the Complaint contains sufficient allegations of a joint or single employer

relationship sufficient to withstand a motion to dismiss, the existence of a single or joint

employer relationship requires a fact-intensive inquiry that cannot be resolved on a motion to

dismiss.  *See Fowler v. Scores Holding Co. Inc.*, 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009) ("the

determination of whether Scores Holding was Fowler's employer is a question of fact that cannot

be decided on a motion to dismiss").  Although Apollo claims that it cannot be considered

Plaintiff's employer as a matter of law, this conclusion, itself, is both contrary to the allegations

in the Complaint and dependent on the resolution of questions of fact that should not be decided

on a motion to dismiss.  *See Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 411

---

[7]     Indeed, all cases cited by Apollo dealing with piercing the corporate veil (*see*, *e.g.*, Def.'s Mem. 6-7) are inapposite to a determination of whether an entity can be considered an "employer" under the employment discrimination statutes.  *See generally Mason Tenders Dist. Council of Greater New York v. Cheromin, Inc.,* No. 07-CV-1755 (DAB), 2009 WL 1024256, at *3 (S.D.N.Y. Apr. 13, 2009) ("While identical to the 'single employer' doctrine in terms of effect, the alter ego doctrine is conceptually distinct"); *Finkel v. S.I. Assocs. Co., Inc.*, No. 05-CV-4656 (LDW), 2008 WL 2630297, at *12 (E.D.N.Y. June 30, 2008) ("The alter ego doctrine is conceptually unique from the single employer doctrine.").

(E.D.N.Y. 2010), *modified* (July 2, 2010) ("Defendants also argue that 'CUNY was not

Plaintiff's employer as a matter of law' under Title VII and other statutes.  But, this contention,

at its heart, requests that the Court conduct a fact-intensive inquiry into the nature of the

relationship between CUNY and RFCUNY"); *see also Beltre v. Lititz Healthcare Staffing*

*Solutions LLC*, No. 10-CV-4594 (VM), 2010 WL 4963895, at *4 (S.D.N.Y. Nov. 30, 2010)

("Under these circumstances, and without the benefit of a more complete factual record, Lititz's

suggestion that, as a matter of law, it could not be found to be Plaintiffs' employer or joint

employer strains credulity").

      Moreover, dismissal of Mr. Fried's causes of action against Apollo would plainly be

premature given that Mr. Fried has yet to engage in discovery.  *See Barbosa*, 716 F. Supp. 2d at

219 (denying defendant's motion to dismiss on the issue of a joint employer relationship because

"defendants are far more likely to be in possession of [facts supporting a joint employer

relationship] than Barbosa"); *see also Cauthorne v. Mutual Life Ins. Co*., No. 96-CV-0232 (JFK),

1997 WL 154019, at *3 (S.D.N.Y. Apr. 1, 1997) (denying Rule 12(b)(1) motion on ground of

lack of employer/employee relationship "where the facts can only be partly conveyed by

affidavits and motion practice and where the factfinder needs further information and testimony

to interpret the significance of the facts") (citing *Matthews v. New York Life Ins. Co*., 780 F.

Supp. 1019, 1024 (S.D.N.Y. 1992)); *Bridges v. Eastman Kodak Co*., 800 F. Supp. 1172, 1178

(S.D.N.Y. 1992) (declining to decide whether two entities could be treated as single employer

under Title VII where parties "submitted only meager factual information on this subject and . . .

plaintiffs have had little or no discovery to substantiate their claim that [two entities] operated as

one employer").  Although Apollo states that Mr. Fried cannot as a matter of law attribute the

decision to terminate his employment to Apollo, not only is such a claim contrary to the facts

pled in the Complaint, but any further evidence in support of this claim would necessarily be revealed during discovery.

Similarly, Apollo attempts throughout its motion to argue that the conduct of Bagaria and Girardi, employees of Apollo, cannot be considered as evidence of Apollo's employer-employee relationship with Mr. Fried.  In so doing, Apollo fails to draw any inferences in Mr. Fried's favor and, to the contrary, improperly assumes that the conduct of Bagaria and Girardi was solely on behalf of the Board, rather than at the direction and on behalf of Apollo.  This assumption is both contrary to the allegations in the Complaint and improper in the context of a motion to dismiss, as there is no basis for Apollo to claim that the conduct of Bagaria and Girardi, including all relevant contextual circumstances and questions of fact, cannot, as a matter of law, be attributed to Apollo.  In sum, based on the factual allegations in the Complaint, as well as the impossibility of resolving questions of fact concerning Apollo's joint and/or single employer liability in the context of a motion to dismiss, Apollo's motion to dismiss Mr. Fried's claims against it should be denied.

## II.   APOLLO ALSO IS LIABLE FOR AIDING AND ABETTING THE DISCRIMINATION AND RETALIATION AGAINST PLAINTIFF AS ALLEGED IN THE COMPLAINT

In the event the Court finds that the Complaint does not state a claim for liability on the part of Apollo as Mr. Fried's employer, Mr. Fried makes out a cause of action against Apollo as an aider and abettor of the discrimination to which he was subjected.  Liability for aiding and abetting discrimination rests on the "actual participation" of a defendant in the discriminatory conduct.  *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 363 (S.D.N.Y. 2007).  In order to meet this standard, a plaintiff must simply show that the defendant was "in some way involved" with the instances of discrimination.  *Id.*  Additionally,

the defendant must share "an intent or purpose with the primary actor." *Robles v. Goddard Riverside Cmty. Ctr.*, No. 08-CV-4856 (LTS) (JCF), 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009).  Courts have taken "a flexible approach" in the determination of whether or not the aider and abetter acted with a community of purpose with the primary actor and will not apply this requirement in "an overly restrictive way."  *Int'l Healthcare Exch.,* 470 F. Supp. 2d at 363.

Here, Mr. Fried's Complaint alleges that Apollo is liable for aiding and abetting based on both community of purpose, as well as Apollo's actual participation in the underlying discrimination and retaliation at issue.  Although the course of discrimination conduct began with State's actions, Mr. Fried demonstrates throughout the Complaint that this discriminatory intent became shared by all participants in the decision to "transition" his job duties, engage in retaliation for Mr. Fried's protected activity, and terminate his employment.  For example, at the Board meeting on November 4, 2010, the representatives from Apollo expressed their discriminatory intent when making the decision to transition Mr. Fried's job responsibilities and participated directly in the discrimination against Mr. Fried.  (Compl. ¶ 51).  Prior to this meeting, Mr. Fried had reached out to Bagaria and Girardi concerning State's ageist comments and both informed Mr. Fried they supported State's decisions regarding Mr. Fried's employment.  (*Id*. ¶ 52).  Additionally, the comments of Bagaria and Girardi during the November 4, 2010 Board meeting came only after Mr. Fried had expressed his opposition to discriminatory treatment at State's hands.  (*Id.* ¶ 51).  Finally, Bagaria expressed his opinions regarding Mr. Fried's employment after being directed to do so by Apollo's President.  (*Id.* ¶ 54).  The factual allegations in the Complaint make clear that Bagaria and Girardi not only participated in the discriminatory conduct at the behest of Apollo's President, but also shared in the intent to

discriminate against Mr. Fried based on his age and retaliate against him because of his opposition to their discriminatory actions.

Again, Apollo tries to brush aside the factual allegations in the Complaint by arguing that none of these allegations can support liability on the part of Apollo, even though they evidence direct and purposeful participation by its representatives on the Board, an entity that acted without the authority to dictate the terms and conditions of Mr. Fried's employment.  Because Mr. Fried pled a community of purpose among discriminatory actors, as well as direct participation on the part of Apollo, its motion to dismiss his claim for aiding and abetting should be denied.

## III.   THE COMPLAINT PROPERLY STATES A CLAIM FOR TORTIOUS INTERFERENCE

Mr. Fried has properly stated a cause of action for tortious interference with his employment by pleading that Apollo's actions were "motivated solely by malice and/or a desire to inflict injury on Plaintiff."[8]  (Compl. ¶ 152).  Although Apollo focuses its efforts to show that it did not induce a breach of an employment contract, Mr. Fried's claim against Apollo centers on tortious interference with Mr. Fried's employment, not his contract.  (*Id.* ¶ 150).  An at-will employee may maintain a claim for tortious interference with employment relations through a showing that a third party acted with malice, engaged in misrepresentation or acted through wrongful means.  *See Siotkas v. LabOne, Inc.*, 594 F. Supp. 2d 259, 275 (E.D.N.Y. 2009).  A cause of action for tortious interference will lie where the plaintiff has pled the requisite intent on the part of the third party actors.  *See id.* (refusing to dismiss complaint where "plaintiffs

---

[8]     Plaintiff pleads this cause of action against Apollo in the alternative that it cannot be considered his employer under either the single or joint employer test.

specifically allege that defendants 'acted with malice and/or the utter disregard for the rights' of plaintiffs").

Here, Mr. Fried has alleged numerous actions on the part of Apollo that serve to demonstrate it acted with the intent required to state a claim for tortious interference.  Mr. Fried had worked at LVI for 24 years prior to his unlawful termination and in that time greatly expanded the Company's presence nationally, its revenues and the services it provides.  (Compl. ¶¶ 26-29).  In return for Mr. Fried's efforts, Bagaria and Girardi intentionally endeavored first to marginalize his role at the Company, then to sever completely his affiliation with LVI because of his age.  (*Id.* ¶¶ 46, 55-60).  Further, after unlawfully terminating Mr. Fried's employment, Apollo, along with the other Defendants, attempted to exploit Mr. Fried's relationship with the Company's surety that kept open a credit line of $200 million by retaining Mr. Fried in a "non-executive" capacity.  (*Id.* ¶¶ 36, 61).  The actions of Bagaria and Girardi were directed by the President of Apollo who instructed them to strip Mr. Fried of his substantive responsibilities. (*Id.* ¶ 54).  Although Apollo repeatedly asserts otherwise, the totality of the allegations contained in the Complaint create the inference that Apollo directed the actions of Bagaria and Girardi. The means used to effectuate the transition of Mr. Fried's job duties, as well as his termination, namely, using the seats on the Board to act in concert with CHS and State to terminate an employee of LVI, were wrongful and done solely to injure Mr. Fried by tarnishing his reputation and ending his long affiliation with the LVI Defendants.  Based on those factual allegations, Mr. Fried has asserted a valid cause of action against Apollo for tortious interference with his employment.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that Apollo's motion to dismiss be denied.  In the alternative, to the extent that Defendant's motion is granted, Plaintiff respectfully requests leave to amend the Complaint accordingly pursuant to Fed. R. Civ. P. 15(a).

Dated: February 25, 2011
     New York, New York

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _/s/ Douglas H. Wigdor_____
     Douglas H. Wigdor

85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
dwigdor@twglaw.com

*Counsel for Plaintiff Burton T. Fried*