UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BURTON T. FRIED,

                         Plaintiff,

             - against -

LVI SERVICES, INC.; LVI PARENT CORP.,
CODE HENNESSY SIMMONS LLC d/b/a/ CHS
PRIVATE EQUITY V LP; APOLLO
INVESTMENT CORP.; SCOTT E. STATE, in his
official and individual capacities; BRIAN
SIMMONS, in his official and individual capacities;
RAJAY BAGARIA, in his official and individual
capacities; GERALD J. GIRARDI, in his official
and individual capacities,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

10 Civ. 9308 (JSR) (JCF)

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SIDLEY AUSTIN LLP

ATTORNEYS FOR Defendants
        LVI Services, Inc., LVI Parent Corp., Scott E. State,
        Brian Simmons, Rajay Bagaria and Gerald J.
        Girardi.

787 SEVENTH AVENUE
NEW YORK, NEW YORK  10019
(212) 839-5300

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT.............................................................................................................10

I.   FRIED'S CLAIM OF AGE DISCRIMINATION UNDER THE ADEA
     SHOULD BE DISMISSED .......................................................................10

     A.   Defendants Have Established a Legitimate Business Reason for
          Reducing Fried's Responsibilities and Offering Him a Consultant
          Contract Instead of Employment ...................................................12

     B.   Fried Has Failed to Adduce Any Evidence to Prove that Age Was
          the "But For" Reason for Defendants' Actions ...........................13

          1.   Fried's "Evidence" Falls Short ..............................................13

II.  FRIED'S AGE DISCRIMINATION CLAIMS UNDER THE NEW
     YORK CITY HUMAN RIGHTS LAW SHOULD BE DISMISSED .................15

          1.   Fried Resides and Works in Connecticut ...........................16

          2.   Fried Has Failed to State a Claim Under the NYCHRL in
               Any Event ...............................................................................17

III. FRIED'S RETALIATION CLAIMS UNDER BOTH THE ADEA AND
     THE NYCHRL SHOULD BE DISMISSED.............................................19

     A.   The Purported Adverse Employment Decisions Taken Against
          Fried Were Made Before His Discrimination Complaint...........20

     B.   Defendants Had a Legitimate Business Reason for Closing the
          Westport Office and Eliminating Shari Dembin's Position ...................22

IV.  FRIED'S AIDING AND ABETTING CLAIMS AGAINST THE
     INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED.............................23

CONCLUSION ........................................................................................................24

i

# TABLE OF AUTHORITIES

**CASES**                                                                       **Page(s)**

Ashton v. Pall Corp.,
    32 F. Supp. 2d 82 (E.D.N.Y. 1999) ...................................................................... 15

Baguer v Spanish Broadcasting Sys.,
    No. 04 Civ. 8393, 2010 WL 2813632 (S.D.N.Y. July 12, 2010) ...............................17-18, 19

Boston v. McFadden Pub., Inc.,
    No. 09 Civ. 457, 2010 WL 3785541 (S.D.N.Y. Sept. 29, 2010)..........................................13, 14

Burke v. City of N.Y.,
    No. 06 Civ. 00581, 2011 WL 31869 (E.D.N.Y. Jan. 5, 2011) .............................................. 18

Casper v. Lew Lieberbaum & Co., Inc.,
    No. 97 Civ. 3016, 1998 WL 150993 (S.D.N.Y. Mar. 31, 1998) ........................................... 16

Crawford v. Dep't of Investigation,
    324 Fed. Appx. 139 (2d Cir. 2009).................................................................................... 18

Deebs v. Alstom Transp., Inc.,
    346 Fed. Appx. 654 (2d Cir. 2009).................................................................................... 21

DeWitt v. Lieberman,
    48 F. Supp. 2d 280 (S.D.N.Y. 1999) ...............................................................................23-24

Dixon v. Int'l Fed. of Accountants,
    No. 10-1924, 2011 U.S. Dist. App. LEXIS 6116 (2d Cir. Mar. 25, 2011)............................ 18

Emanuel v. Oliver,
    85 F. Supp. 2d 321 (S.D.N.Y. 2000) ................................................................................ 19

Ferraro v. N.Y.C. Dept. of Educ.,
    No. 09 Civ. 8993, 2010 WL 3912466 (S.D.N.Y. Sept. 14, 2010)....................................... 10, 23

Franchitti v. Bloomberg L.P.,
    03 Civ. 7496, 2005 U.S. Dist. LEXIS 19285 (S.D.N.Y. Aug. 12, 2005)............................... 24

Germano v. Cornell Univ.,
    No. 03 Civ. 9766, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005)........................................ 16

Getler v. Cornell Weill Univ. Med. College Dept. of Surgery,
    No. 05 Civ. 8550, 2007 WL 38276 (S.D.N.Y. Jan. 3, 2007) ............................................. 14

Gorzynski v. Jetblue Airways Corp.,
    596 F.3d 93 (2d Cir. 2010) .................................................................................... 11, 20

Gross v. FBL Fin. Serv. Inc.,
    129 S. Ct. 2343 (2009) ............................................................................................... 11

Holowecki v. Federal Express Corp.,
    No. 09-3477, 2010 WL 2573864 (2d Cir. June 24, 2010) .................................. 11, 23

Kaplan v. Beth Israel Med. Ctr.,
    No. 07 Civ. 8842, 2010 WL 1253967 (S.D.N.Y. Mar. 31, 2010) ...................... 12, 19

Kemp v. Metro-North R.R.,
    No. 04 Civ. 9926, 2007 U.S. Dist. LEXIS 43568 (S.D.N.Y. June 12, 2007) .......... 20

Lightfoot v. Union Carbide Corp.,
    No. 92 Civ. 6411, 1994 WL 184670 (S.D.N.Y. May 12, 1994) ............................... 17

Mattera v. JP Morgan Chase Corp.,
    No. 08 Civ. 04040, 2010 WL 3785576 (S.D.N.Y. Sept. 30, 2010) .................... 20, 21

McDermott v. N.Y.C. Housing Dev. Corp.,
    No. 10 Civ. 2029, 2011 WL 167836 (S.D.N.Y. Jan. 18, 2011) ............................... 17

Mereish v. Walker,
    359 F.3d 330 (4th Cir. 2004) .................................................................................... 14

O'Leary v. N.Y.S. Unified Court Sys.,
    No. 05 Civ. 6722, 2007 WL 2244483 (S.D.N.Y. Aug. 6, 2007) .............................. 10

Raskin v. The Wyatt Co.,
    125 F.3d 55 (2d Cir. 1997) ....................................................................................... 14

Roman v. Cornell Univ.,
    53 F. Supp. 2d 223 (N.D.N.Y. 1999) ....................................................................... 15

Saenger v. Montefiore Med. Ctr.,
    706 F. Supp. 2d 494 (S.D.N.Y. 2010) ........................................................... 12, 17, 19

Salvatore v. KLM Dutch Airlines,
    No. 98 Civ. 2450, 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) .............................. 16

Sellick v. Agency-Castle Point,
    No. 09 Civ. 6616, 2010 WL 2813431 (S.D.N.Y. July 16, 2010) ............................. 12

Siano v. Haber,
    40 F. Supp. 2d 516 (S.D.N.Y. 1999) ........................................................................ 19

Slattery v. Swiss Reinsurance Am. Corp.,
    248 F.3d 87 (2d Cir. 2001) ................................................................................. 21

Spahr v. Am. Dental Ctrs.,
    No. 03 Civ. 4954, 2006 U.S. Dist. LEXIS 14581 (E.D.N.Y. Mar. 14, 2006) ........................ 14

Vesprini v. Shaw Contract Flooring Servs., Inc.,
    315 F.3d 37 (1st Cir. 2002) ................................................................................. 13

Vinokur v. Sovereign Bank,
    701 F. Supp. 2d 276 (E.D.N.Y. 2010) ....................................................................... 18

Weiss v. JPMorgan Chase & Co.,
    No. 06 Civ. 4402, 2010 WL 114248 (S.D.N.Y. Jan. 13, 2010) ............................................ 17

Williams v. City of N.Y.,
    No. 04 Civ. 1993, 2005 U.S. Dist. LEXIS 6083 (S.D.N.Y. Apr. 12, 2005) .............................. 20

**STATUTES**

New York Admin. Code §§ 8-101 *et seq.* ("NYCHRL") ....................................................... 15

N.Y.C. Admin. Code § 2-201 ................................................................................... 16

N.Y.C. Local Law No. 85 (Oct. 3, 2005) ...................................................................... 17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ...................................................................................... 1, 10

iv

Defendants LVI Services, Inc. ("LVI"), LVI Parent Corp. ("Parent"), Scott E. State, Brian Simmons, Rajay Bagaria and Gerald J. Girardi (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of the Amended Complaint (the "Compl.").

## PRELIMINARY STATEMENT

This action arises from Fried's refusal to honor his own offer to make way for the new CEO of Defendant LVI. In September 2010, Fried, the Chairman and interim CEO of LVI, persuaded defendant Scott State to take the permanent CEO position by making him an "offer he could not refuse": Fried would "remain at LVI until [State], the Board or I decide its time for me to leave . . . . [State] will be in charge and get all the room he wants from me." Less than a month after becoming CEO, State took Fried up on his offer, and asked him to consider limiting his activities on behalf of LVI to those customarily exercised by a Chairman. In response, Fried cried discrimination, and embarked on a campaign against LVI and its Board that continues to this day.

As we explain below, Fried has failed to adduce a shred of evidence that the Board's decision to offer him the opportunity to continue as Chairman of the Board and to transition to a consulting arrangement in lieu of employment by LVI was motivated by any discriminatory animus. Instead, the undisputed evidence shows that Fried had, and has, the abilities to perform a valuable role with LVI, as evidenced by the fact that the very same Board that voted to reduce his role within LVI had only months earlier tapped him to fill the interim CEO role while a permanent candidate was sought. It was not his age but, rather, his refusal to relinquish control of the reins of management to State that prompted his dismissal. As Fried testified at his deposition: "[T]he CEO role, by its title . . . should have the day-to-day and final decisions in the

1

operations of the business.  And the chairman should be a person who supports the actions of the CEO and in any way that the CEO seeks that advice and counsel." (Pl. Tr., pp. 80-81.)[1]  Fried failed to follow his own advice and posed an ultimatum to the Board and to State that he, not they, would determine his role going forward with LVI, creating the rift that led to his termination.

## STATEMENT OF FACTS

LVI is an environmental remediation company specializing in, among other things, asbestos abatement, demolition, emergency/disaster response such as the response to Hurricane Katrina, and biological and chemical decontamination. (Compl., ¶ 16.)[2]  Burton Fried began his employment with LVI in 1986, and subsequently held various positions including General Counsel, President and CEO, interim President and CEO and Chairman.  (Compl., ¶ 26.)  Although LVI's corporate office is in New York City, for the last seven years prior to his departure from LVI, Fried worked out of a satellite office in Westport, Connecticut that LVI leased exclusively for his personal convenience.  ( Compl., ¶ 27; Pl. Tr., pp. 64-66.)

### The Sale of LVI to CHS

In or about November 2005, LVI was purchased by Code Hennessy Simmons LLC ("CHS").  As a condition of the sale and at Fried's insistence, LVI agreed that Fried would be replaced as LVI's President and CEO, and Fried expressed to the Board his wish to relinquish all day-to-day operational responsibilities to the new CEO.  (Compl., ¶ 30; Pl. Tr., pp. 74-75, 81; Seltzer Aff., Exh. C.)  This new arrangement was documented in an agreement between Fried and LVI dated November 16, 2005 (the "November Agreement").  Pursuant to the November

---

[1] Copies of the pages from the transcript of Burton Fried's deposition are attached to the Affirmation of Joanne Seltzer ("Seltzer Aff.") as Exhibit B.
[2] A copy of the Amended Complaint, filed on February 3, 2011, (the "Compl.") is attached to the Affirmation of Joanne Seltzer ("Seltzer Aff.") as Exhibit A.

2

Agreement, Fried was charged with hiring his replacement as President and CEO. Thereafter, in his new role as Chairman, Fried would have primary responsibility for "strategic growth," at the direction of the new CEO. (Seltzer Aff., Exh. D; Pl. Tr., pp. 79-81.)  Significantly, Fried's employment under the November Agreement was at-will, and LVI retained at all times the discretion to alter Fried's duties and responsibilities and to terminate Fried's employment without notice or reason. (Seltzer Aff., Exh. D; Pl. Tr., pp. 83-84.)

Due in large part to Fried's efforts, in June 2006 LVI hired Robert McNamara as its new President and CEO. (Compl., ¶ 32.) As contemplated by the November Agreement, Fried thereupon resigned from his position as President and CEO and assumed the position of Chairman. (Compl., ¶¶ 31-32; Pl. Tr., p. 77.)

**Scott State's Hire as President and CEO of LVI**

In or about April 2010, McNamara abruptly resigned as President and CEO. As a result, the Board of Directors asked Fried, who by then was 70 years old, to accept the position of interim President and CEO until a replacement for McNamara could be found. (Compl., ¶ 37; Pl. Tr., pp. 110-12.)  As in 2005, Fried insisted on a prompt search for a new President and CEO to assume the day-to-day management of the business. (Compl., ¶ 38; Pl. Tr., p. 113.)  LVI retained an executive search firm, Russell Reynolds, to work with Fried to identify qualified candidates for the position. (Compl., ¶ 39.)  Fried, who had known individual defendant Scott State for a number of years, identified State as a candidate for the position and introduced him to LVI and the Board. (Compl., ¶ 30; Pl. Tr., pp. 116-17.)  State was one of three finalists for the job and ultimately became the choice of Fried and LVI's management. (Compl., ¶ 42; Pl Tr., p. 121-22.)  The Board was equally impressed by State and, upon Fried's recommendation, offered him the position of President and CEO. (Compl., ¶ 42; Pl. Tr., pp. 121-22.)

3

The offer to State was made on September 8, 2010 and negotiations thereafter ensued. As part of these negotiations, and as a condition for accepting the CEO position, State insisted that he be guaranteed the discretion to run the business as he saw fit. In an email to Fried dated September 21, 2010, Board member Brian Simmons asked Fried to have a conversation with State to assure him that he would have authority as CEO to align his team and manage the business without Fried's interference. (Seltzer Aff., Exh. E.) Simmons added: " I think it will be very important for him to hear unambiguously from you that he is in charge and you will give him the room he needs." Id. Fried responded to Simmons: "I will repeat my offer to Scott. I am prepared to remain at LVI until he, the Board or I decide its time for me to leave...an offer he can't refuse . . . . He will be in charge and get all the room he wants from me." Id. On September 22, Fried again emailed Simmons to tell him that he had spoken with State and that State "now ha[d] no concern about [his] support in his role as CEO." (Seltzer Aff., Exh. F.)[3] With assurances from both the Board and Fried that he could manage the business without interference from Fried, State accepted the offer of employment on September 23, 2010 and assumed the CEO role seven days later on October 1, 2010. (Seltzer Aff., Exh. H; Compl., ¶ 43.)

**Scott State's Transition to CEO of LVI**

State hit the ground running at LVI – meeting and soliciting advice from key LVI management, visiting LVI's many offices, and making the types of decisions he believed necessary to help turnaround what, at that time, was a struggling business. (Seltzer Aff., Exh. AA.) During this transition period, State began to notice some reluctance on Fried's part to relinquish his interim CEO responsibilities, as he had previously assured State he would do. In addition, State had concerns about Fried's insistence that State confer with him prior to making

---

[3] Fried also expressed his willingness to remain at LVI until State, the Board or he decided it was time to leave with a number of his managers, prior to State's start of his employment with LVI. (Seltzer Aff., Exh. G.)

certain decisions. (State Tr., pp. 213-14.)[4] State's concerns were heightened after Fried sent

State a number of emails criticizing him for failing to consult with Fried on various issues such

as the suspension of the search for a Chief Information Officer and a meeting with an overseas

client. (Seltzer Aff., Exhs. J, K.)  Out of frustration, on October 3, 2010, State forwarded one of

Fried's acerbic emails to LVI Board member, Robert Hogan, stating that he feared a similar

reaction every time he made a decision without consulting Fried – "exactly the issue [he] had

prior to accepting the job." (Seltzer Aff., Exh. L.)  On October 5, State promised Hogan he

would "lay the ground work for an orderly transition" with Fried and that he intended "to have

him available as needed for consultation or special assignments." (Seltzer Aff., Exh. M.)

On or about October 5, 2010, State and Fried agreed to meet on October 19, 2010 to

discuss transition issues, including Fried's future duties as Chairman. (Seltzer Aff., Exh. N.)  On

October 14, 2010, Fried sent State an unsolicited email listing responsibilities he purportedly had

handled as Chairman under McNamara. (Seltzer Aff., Exh. O.)  To State's surprise, the

expansive list included day-to-day operational responsibilities that State envisioned would be

performed by him, such as the development and implementation of new business initiatives, the

negotiations of company acquisitions and the management of major client relations. (Id.)  The

list also included responsibilities that State believed could be performed by LVI's General

Counsel, Gregory DiCarlo (such as selection of outside counsel and management of LVI

litigations and legal matters) and by other members of LVI management and staff (such as

review of LVI offers of employment and monitoring of employee air travel). (Id.; State Tr., pp.

215-18.)  State shared the list of responsibilities with members of LVI's Board and sought input

---

[4] Copies of the pages of the deposition of Scott State cited in this brief are attached to the Seltzer Aff. as Exh. I.

on how best to handle Fried's expectations regarding his role, which State considered an issue for the Board to determine. (Seltzer Aff., Exh. P.)

**October 19, 2010 Meeting**

On October 19, 2010, State met with Fried to discuss, among other transition items, his proposed responsibilities as LVI Chairman. (Compl., ¶ 44; Pl. Tr., pp. 163-64.) At the meeting, State explained that he believed most of the duties on Fried's list would be more appropriately handled by either him or other LVI management and staff members. (Compl., ¶ 45; Pl. Tr., pp. 180-82; State Tr., p. 263.) State explained that the duties and responsibilities of LVI's Chairman should be those traditionally delegated to the role. (State Tr., pp. 263-64.) Notwithstanding his prior assurances to State that State "will be in charge and get all the room he wants from me", Fried opposed the restructuring of his role. (Seltzer Aff., Exh. Q.) State reminded Fried of his prior assurances, and as a reminder that transition planning was important, asked Fried: "Burt, you're 71 years old. How long do you expect to continue working? What if you get hit by a bus?"[5] (Pl. Tr., pp. 181-82; State Tr., pp. 264-65.) Despite State's overtures, and despite his own prior assurances, Fried refused to discuss any transition of his role.

After the meeting, State, concerned with Fried's refusal to relinquish any of his day-to-day responsibilities at LVI, asked Simmons and other Board members to intervene. (Seltzer Aff., Exh. Q.) On October 28, 2010, at Simmons's request, Fried sent him the list of responsibilities prepared for Fried's meeting with State to distribute to the Board of Directors. (Seltzer Aff., Exh. R.)

---

[5] State testified that this comment echoed a similar statement Fried made to him in a telephone conversation prior to the meeting. (State Tr., pp. 261-62.) It is worth noting that age has never been a sensitive subject for Fried until now. Over the years on countless occasions he has made light of his age and the prospect of retirement. (Seltzer Aff., Exhs. T, U.) His attributing discriminatory motives to a similarly off-hand comment by State is not credible.

On November 2, 2010, Simmons, on behalf of the Board, responded to Fried's list of responsibilities, telling Fried that the list was "much more expansive that what he had envisioned" and "[not] consistent with the sentiments [Fried] had expressed to [him]" when State was hired.  (Compl., ¶ 49; Seltzer Aff., Exh. S.)  Simmons expressed his opinion of the need to transition all of Fried's day-to-day activities to State and other members of the management team.  (Seltzer Aff., Exh. S.)  Simmons wrote: "It is my hope that you continue as Chairman of the board in a non-executive capacity and act as on call resource for Scott."  Id.  He further proposed that he "replace [Fried's] existing employment arrangement with a consulting agreement."  Id.

## The November 4th Board Meeting

On November 4, 2010, LVI Parent held a regular board meeting to discuss a number of pending business matters.  (Pl. Tr., p. 229.)  At the conclusion of the meeting, the Board went into a closed session and LVI management – except State – left the meeting.  (Compl., ¶ 51; Pl. Tr., pp. 231-32.)  Thereafter, in a 30 minute speech, Fried heatedly objected to any restructuring of his role and complained of State's alleged comment at their October 19 meeting.  (Pl. Tr., pp. 29-33.)  Fried and State were then asked to leave the meeting and the Board discussed how best to resolve the issue, concluding that John Schnabel, a member of the Board and longtime ally of Fried, would contact Fried to resolve what the Board viewed as a political skirmish.  (Pl. Tr., p. 252; Seltzer Aff., Exh. V; Simmons Tr., pp. 107-09.) [6] Unfortunately, Schnabel was unable to broker an agreement with Fried, leaving the Board no choice but to proceed with the plan outlined in Simmons's November 2nd email.  (Simmons Tr., pp. 122-25.)

---

[6] Copies of the pages of the deposition transcript of Brian Simmons ("Simmons Tr.") are attached to the Seltzer Aff. as Exhibit W.

7

Pursuant to that plan, the Board proposed that Fried would transition from his role as an employee of LVI to the dual role of non-executive Chairman of the Board and of consultant. (Seltzer Aff., Exh. X, pp. 3-6.) Under the proposal, Fried's employment as Chairman would end, and he would be formally offered a consulting agreement pursuant to which he would be paid an annual retainer of $150,000, plus $250 per hour for time spent in his consulting role. This amount was intended to compensate Fried at the same level as he was previously compensated as an LVI employee. (Simmons Tr., pp. 149-50.)  Fried's initial assignment would include overseeing several litigation matters. (Seltzer Aff., Exh. X, p. 2.)

On November 15, 2010, however, before the Board could make its formal offer of a consulting agreement to Fried, Fried sent a letter through his attorney to State threatening to sue LVI and demanding, among other things, that he be reinstated with his former responsibilities. (Seltzer Aff., Exh. Y.)  State, who was traveling at the time, did not receive the letter until November 16, 2010.  On November 16, 2010, the Board sent the consultancy agreement to Fried. (State Tr., pp. 371-74.)  Fried rejected LVI's offer and resigned his position on the Board effective November 30, 2010. (Seltzer Aff., Exh. Z.)  LVI, as planned, terminated Fried's employment with LVI on November 30, 2010, but continued to offer Fried the consultancy arrangement through counsel. (Seltzer Aff., ¶ 3.)  Fried rejected LVI's offer. (Seltzer Aff., ¶ 4.)

## LVI Closes the Westport Office

As noted above, at all relevant times, LVI operated an office in Westport, Connecticut that it had established solely for Fried's personal convenience. (Compl., ¶ 65; Pl. Tr., pp. 64-66.) Following Fried's resignation, eight employees continued to work in the Westport office

8

including Shari Dembin, Fried's daughter. (DiCarlo Tr., pp. 79-80, 88.)[7] Dembin's responsibilities included processing insurance and bond requests. (Compl., ¶ 66.)

The proposal to close, or at least to minimize, the Westport office and reduce staff had been raised by Scott State at least by October 29, 2010, prior to Fried's outburst at the November 4th Board meeting. (Seltzer Aff., Exh. AA.) Closing the Westport office ultimately became one of many cost reducing measures LVI put in place in January 2011, including, among other things, the decisions to eliminate LVI's marketing support function and to move LVI's New York corporate offices to more affordable space. (Seltzer Aff., Exhs. AA, BB.)  At the time LVI offered Fried the consulting agreement, it informed him that the Westport office was going to be closed, and Fried was offered an alternate office from which to perform his duties as Chairman of the LVI Parent Board. (Seltzer Aff., Exh. X.)  With Fried's rejection of the consultancy and his resignation as a member of the Board, there was no further reason to continue to incur the unnecessary expense of a Westport office. (Cutrone Tr., pp. 171-72.)[8]

Accordingly, LVI determined that it would close the office and lay off five of the eight employees working there. (DiCarlo Tr., pp. 79-80, 89-91; State Tr., p. 402.) The three employees who were not terminated were employees of LVI's Legal Department who were to be transferred to another LVI office once the closure of the Westport office was completed. (DiCarlo Tr., pp. 89-90; State Tr., p. 404.) The reduction in force also affected individuals outside of the Westport offices, including four Business Development Managers, a Project Manager in Milford, Connecticut, a Branch Manager in Houston, Texas and a Claims Manager in New York City. (State Tr., pp. 402-04; Seltzer Aff., Exh. CC.)  Dembin was one of twelve

---

[7] Copies of the pages of the deposition transcript of Gregory DiCarlo ("DiCarlo Tr.") are attached to the Seltzer Aff. as Exhibit FF.
[8] Copies of the pages of the deposition transcript of Paul Cutrone ("Cutrone Tr.") are attached to the Seltzer Aff. as Exhibit GG.

employees selected for the reduction in force for the simple reason that she performed non-critical administrative functions that could be easily absorbed by other employees at other locations with the least amount of disruption to LVI's operations. (Cutrone Tr., pp. 164-67.) Her position has not been replaced. (Id.)

## ARGUMENT

Summary judgment is proper when the moving party shows "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The party opposing summary judgment may not rest upon "the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." O'Leary v. N.Y.S. Unified Court Sys., No. 05 Civ. 6722, 2007 WL 2244483, at *3 (S.D.N.Y. Aug. 6, 2007) (citing Fed. R. Civ. P. 56(c)). In a discrimination case, summary judgment is appropriate where "the plaintiff relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." Id. (citing Figueroa v. New York City Health & Hosps. Corp., 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007)); Ferraro v. N.Y.C. Dept. of Educ., No. 09 Civ. 8993, 2010 WL 3912466, at *2 (S.D.N.Y. Sept. 14, 2010) (Rakoff J.) (granting summary judgment in age discrimination case where the plaintiff set forth only conclusory assertions to defeat the defendant's motion).

## I.   FRIED'S CLAIM OF AGE DISCRIMINATION UNDER THE ADEA SHOULD BE DISMISSED

Fried alleges that he was stripped of his job responsibilities and then terminated because of his age. (Compl., ¶¶ 6-9.) At his deposition, when asked what led him to believe these decisions were fuelled by discriminatory animus, Fried testified that his belief was based on State's purported statement at the October 19, 2010 meeting regarding transition planning: "You're 71 years old. How long do you want to work? What if you get hit by a bus?" (Pl. Tr., pp.16-18) and on the fact that Defendants supported State's plan to re-allocate his job

10

responsibilities and terminate his employment with LVI. (Pl. Tr., pp. 25-29.) Even taking

Fried's allegations as true, this "evidence" is woefully insufficient to defeat Defendants' motion

for summary judgment under either the ADEA or the NYCHRL.

In Gross v. FBL Fin. Serv. Inc., 129 S. Ct. 2343 (2009), the Supreme Court held that "the

ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of'

age is that age was the 'reason' that the employer decided to act." Id. at 2350.  Thus, "[t]o

establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must

prove that age was the 'but for' cause of the of the employer's adverse action." Id.  Although the

Supreme Court noted that it "had not definitively decided whether the evidentiary framework of

[McDonnell Douglas] . . . is appropriate in the ADEA context", id. at 2349 n.2, New York courts

have continued to apply a modified version of the burden-shifting framework set forth in

McDonnell Douglas to cases brought under the ADEA.  Gorzynski v. JetBlue Airways Corp.,

596 F.3d 93, 106 (2d Cir. 2010).  Specifically, a plaintiff bringing a case under the ADEA must

first establish a *prima facie* claim of discrimination by showing that: (1) he was within the

protected age group; (2) he was qualified for the position; (3) he experienced an adverse action;

and (4) the adverse action occurred under circumstances giving rise to an inference of

employment discrimination.  Id. at 107.  If the plaintiff establishes a *prima facie* case, the

burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason for [the

adverse act]." Id. at 106.  After the defendant satisfies the requirement, the burden then shifts to

the plaintiff to demonstrate that age was the "but for" cause of the challenged adverse

employment action.  Id. at 106; Holowecki v. Federal Express Corp., No. 09-3477, 2010 WL

2573864, at *1 (2d Cir. June 24, 2010).

11

Under these standards, Fried cannot possibly defeat summary judgment. Even assuming, *arguendo*, Fried's ability to establish a *prima facie* claim, Defendants have articulated a legitimate business reason for the reduction of his job responsibilities and his termination, which Fried cannot rebut with the meager evidence he has adduced in this case.

## A.  Defendants Have Established a Legitimate Business Reason for Reducing Fried's Responsibilities and Offering Him a Consultant Contract Instead of Employment

Fried maintains that Defendants reduced his responsibilities and ultimately terminated his employment because of his age. (Compl., ¶¶ 16-18.) The evidence and testimony in this case, however, point to undisputed business reasons for the Board's rejection of Fried's proposed duties as Chairman under State and its offer to him of a role that he had repeatedly confirmed he would accept.

Fried's objections to the decisions taken by Defendants with respect to his future role with LVI are patently insufficient to defeat summary judgment. "[T]he ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age." Saenger, 706 F. Supp. 2d 494, 509 (S.D.N.Y. 2010) (quoting Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998). "It is not the role of federal courts to review the correctness of employment decisions or the processes by which those decisions are made." Sellick v. Agency-Castle Point, No. 09 Civ. 6616, 2010 WL 2813431, at *10 (S.D.N.Y. July 16, 2010). See also, Kaplan v. Beth Israel Med. Ctr., No. 07 Civ. 8842, 2010 WL 1253967, at *6 (S.D.N.Y. Mar. 31, 2010). Defendants' legitimate business reason for defining Fried's role as Chairman – to ensure that the new CEO and President, State, would have the freedom to manage the Company as he saw fit – is set forth in numerous documents and in unchallenged deposition testimony. See, e.g., Seltzer Aff., Exhs. P, Q, S, E, F & G; State Tr., pp. 217-18, 263-64; Simmons Tr., pp. 89-92.

**B.**     <u>Fried Has Failed to Adduce Any Evidence to Prove that Age Was the "But For" Reason for Defendants' Actions</u>

Once the Defendants have articulated a legitimate non-discriminatory reason for reducing his job responsibilities and terminating his employment, the burden of proof shifts to Fried to set forth sufficient evidence to prove that age was the "but for" reason for Defendants' actions. Fried's evidence falls far short of the mark.

                **1.**     <u>Fried's "Evidence" Falls Short</u>

The evidence Fried proffers in support of his claim of age discrimination consists of a single statement purportedly made by State: "Burt, you're 71 years old. How long do you expect to work?" (Pl. Tr., pp. 17-18) and the fact that the LVI Board members supported State's decision to limit Fried's day-to-day operational responsibilities in accordance with an assurance Fried himself had made to State in writing. (Pl. Tr., pp. 16-18, 21-25.) Other than this single statement, Fried admits to having absolutely no other evidence that the decisions taken by LVI and the Board were based on age. (Pl. Tr., pp. 42-52, 54-58.)

State's comment at the October 19, 2010 meeting, when placed in proper context, is nothing more than a request for clarification of how long Fried intended to retain his operational responsibilities at LVI. Courts have consistently held that remarks relating to retirement or transition planning alone, even when made by a decision maker, are insufficient to defeat a motion for summary judgment in an ADEA case. See <u>Boston v. McFadden Pub., Inc.</u>, No. 09 Civ. 457, 2010 WL 3785541, at *11 (S.D.N.Y. Sept. 29, 2010) ("even if plaintiff was asked about his retirement plans, inquiries about retirement plans do [ ] not necessarily show animosity toward age"); <u>Vesprini v. Shaw Contract Flooring Servs., Inc.</u>, 315 F.3d 37, 42 (1st Cir. 2002) (comment that the time had come for the plaintiff to "step back and let the young stallions run the [day-to-day] business" not sufficient to constitute direct evidence of age-based animus);

Mereish v. Walker, 359 F.3d 330, 337 (4th Cir. 2004) ("ambiguous remarks referring to the process of generational change create no triable issue of age discrimination") (citing cases); Getler v. Cornell Weill Univ. Med. College Dept. of Surgery, No. 05 Civ. 8550, 2007 WL 38276, at *11 (S.D.N.Y. Jan. 3, 2007) ("inquiries about retirement plans do not necessarily show animosity toward age"). This is particularly so where the plaintiff was the first to raise the topic of retirement. See Boston, 2010 WL 3785541, at *11; Spahr v. Am. Dental Ctrs., No. 03 Civ. 4954, 2006 U.S. Dist. LEXIS 14581, at *12 (E.D.N.Y. Mar. 14, 2006).

In Raskin v. The Wyatt Co., 125 F.3d 55 (2d Cir. 1997), the Second Circuit affirmed the grant of summary judgment to the employer in an age discrimination claim. The plaintiff, Richard Raskin, alleged that his employer had discriminated against him by failing to promote him and by constructively discharging him. See id. at 58. The primary evidence in support of this claim proffered by Raskin was a statement by his supervisor that Raskin might not be interested in a manager position because of his age and a reference to his eligibility for early retirement. Id. at 63. Even under the higher pre-Gross standard, the Second Circuit found that Raskin's supervisor had a legitimate reason to confirm Raskin's interest in a career change in light of his having an option of taking early retirement and that the inquiry, arising in a conversation about Mr. Raskin's application for a manager position, failed to support an inference that age played a role in the defendant's decision not to offer Raskin the position. Id. The Court concluded: "The ADEA does not make all discussions of age taboo." Id.

In light of Fried's numerous representations to State and to the Board of Directors that he fully intended to relinquish his responsibilities for running LVI, it is logical that State, upon receipt of Fried's expansive list of operational responsibilities, would question Fried as to when he intended to assume his new role. The question was not ageist; it was a legitimate inquiry into

14

Fried's future plans, and, as such, does not constitute evidence of discrimination under firmly established law.

Fried's other "evidence" of discrimination consists solely of the Board's agreement with State's plans to distribute operational responsibilities to other LVI managers and to himself and to clearly define for Fried the role he would assume going forward. This strategic decision, which the Board had approved of during the October 2010 restructuring, was based on the Board's judgment as to what would be in the best interest of LVI and, had previously been agreed to by Fried. This decision, standing alone, cannot constitute a discriminatory action under the ADEA. See Ashton v. Pall Corp., 32 F. Supp. 2d 82, 90 (E.D.N.Y. 1999) (diminished responsibilities did not create an inference of discrimination where employer had different expectations of how the work should be performed). See also Roman v. Cornell Univ., 53 F. Supp. 2d 223, 239 (N.D.N.Y. 1999) (removal of certain duties not automatically discriminatory because it is the employer's "prerogative…to determine what tasks [the employee] will and will not perform").

## II.   FRIED'S AGE DISCRIMINATION CLAIMS UNDER THE NEW YORK CITY HUMAN RIGHTS LAW SHOULD BE DISMISSED

In addition to his claim under the ADEA, Fried brings an age discrimination claim under the New York Administrative Code §§ 8-101 et seq.("NYCHRL"). Fried's claim under the NYCHRL fails for two reasons: (1) the purportedly discriminatory actions taken by Defendants impacted Fried in his Westport, Connecticut office and therefore are outside the scope of the NYCHRL; and (2) Fried cannot set forth any evidence even suggesting that the Board's decision was a pretext for age discrimination against him.

### 1.    <u>Fried Resides and Works in Connecticut</u>

In his Complaint, Fried unambiguously states that, during the past seven years of his employment with LVI, he has "worked from the Company's corporate Connecticut satellite office in Westport." (Compl., ¶ 27.) Fried also states in his Complaint that he is a resident of the State of Connecticut. (Compl., ¶ 15.)[9]

The NYCHRL expressly limits the applicability of its protections to acts that occur within the boundaries of New York City. <u>See</u> N.Y.C. Admin. Code § 2-201. <u>See also</u> <u>Casper v. Lew Lieberbaum & Co., Inc.</u>, No. 97 Civ. 3016, 1998 WL 150993, at *4 (S.D.N.Y. Mar. 31, 1998). To determine the location of the discrimination, courts have looked to the location of the impact of the adverse action on the plaintiff. <u>Salvatore v. KLM Dutch Airlines</u>, No. 98 Civ. 2450, 1999 WL 796172, at *16 (S.D.N.Y. Sept. 30, 1999); <u>Casper</u>, 1998 WL 150993, at *4. In order to state a claim under the NYCHRL, Fried must show more than that LVI's headquarters are located in New York City or that the decision to offer him a consultancy in place of his employment was made in New York City. Instead, he must prove that the decision impacted *him* in New York City, which he cannot do in light of his admission that he lived and worked in Connecticut at all relevant times. <u>See</u> <u>Casper</u>, 1998 WL 150993, at *4 (finding the NYCHRL inapplicable to an employee who worked in Garden City, Long Island, even though the defendant had an office in New York City); <u>Germano v. Cornell Univ.</u>, No. 03 Civ. 9766, 2005 WL 2030355, at *5 (S.D.N.Y. Aug. 17, 2005) (dismissing the plaintiff's NYCHRL claim even when the decision to pressure him to retire was made in New York City because the decision impacted him in his place of employment on Long Island).

---

[9] Tellingly, on May 16, 2011, Plaintiff filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHR"), implicitly conceding that the NYCHRL does not govern his claim. (Seltzer Aff., Exh. DD.)

Lightfoot v. Union Carbide Corp., No. 92 Civ. 6411, 1994 WL 184670 (S.D.N.Y. May 12, 1994), is precisely on point. In Lightfoot, the plaintiff, Richard Lightfoot, like Fried here, transferred from the defendant's New York City office to its Danbury, Connecticut headquarters. Id. at *1. Unlike Fried, Mr. Lightfoot continued to reside in New York City after relocating his office to Connecticut. Id. Mr. Lightfoot brought an age discrimination claim under the NYCHRL contending that, because the defendant had an office in New York City and he occasionally did work from his residence in the City, he should be afforded the protections of the NYCHRL. Id. at *5. The Court concluded that the scope of the NYCHRL did not extend to Connecticut, the place where the plaintiff suffered the impact of the purportedly discriminatory decisions. Id. Fried, like Mr. Lightfoot, admittedly worked predominantly out of the LVI Westport, Connecticut office where he was impacted by the decisions made by Defendants relating to his employment, and, as such, he is outside of the protections of the NYCHRL. Accordingly, his claim under that law should be dismissed.

### 2.     Fried Has Failed to State a Claim Under the NYCHRL in Any Event

Even if Fried were somehow protected by the NYCHRL, he still cannot state a claim. Because Gross dealt only with the ADEA, it is an open question whether a plaintiff alleging age discrimination under the NYCHRL must establish "but for" causation. Saenger, 706 F. Supp. 2d at 505. In the absence of authoritative law from New York State's highest court, federal courts have examined claims under the NYCHRL under the more independent and liberal standard accorded the NYCHRL by the Restoration Act of 2005, N.Y.C. Local Law No. 85 (Oct. 3, 2005). McDermott v. N.Y.C. Housing Dev. Corp., No. 10 Civ. 2029, 2011 WL 167836, at *6 (S.D.N.Y. Jan. 18, 2011); Weiss v. JPMorgan Chase & Co., No. 06 Civ. 4402, 2010 WL 114248, at *2-3 (S.D.N.Y. Jan. 13, 2010). Nothing in the 2005 revisions to the NYCHRL, however, changed the standard for establishing a disputed issue of material fact. Baguer v Spanish

Broadcasting Sys., No. 04 Civ. 8393, 2010 WL 2813632, at *16 (S.D.N.Y. July 12, 2010); Burke

v. City of N.Y., No. 06 Civ. 00581, 2011 WL 31869, at *5 (E.D.N.Y. Jan. 5, 2011). The absence

of any such disputed fact here is fatal to Fried's claim.

Under the NYCHRL analysis, which retains the McDonnell-Douglas burden-shifting

standard, once the defendant meets its burden of articulating a legitimate business reason for the

challenged decision, the presumption of discrimination "drops out of the picture" and the burden

shifts back to the plaintiff to present sufficient evidence to permit a rational finder of fact to infer

that the defendant's proffered reason is a pretext and that the defendant's employment decision is

more likely than not based in whole or in part on discrimination. Id. (citations omitted); Vinokur

v. Sovereign Bank, 701 F. Supp. 2d 276, 287 (E.D.N.Y. 2010). Even under this more liberal

standard, Fried's allegation of a single statement by State referring to his age and asking how

much longer he intended to work is insufficient as a matter of law to prove that the Board's

decision to reallocate Fried's duties and terminate his employment was based, even in part, on

age discrimination. As more fully set forth in Section I (B) (1), above, a single inquiry about an

intent to retire, without more, is insufficient to raise an inference of discrimination. This is so

even under the more liberal standards of the NYCHRL. See Dixon v. Int'l Fed. of Accountants,

No. 10-1924, 2011 U.S. Dist. App. LEXIS 6116, at *4 (2d Cir. Mar. 25, 2011) (upholding grant

of summary judgment under NYCHRL where a plaintiff's "entire discrimination claim [was]

predicated on an isolated derogatory remark"); Crawford v. Dep't of Investigation, 324 Fed.

Appx. 139, 142 (2d Cir. 2009) (dismissing age discrimination claim under the NYCHRL where

the sole evidence was statements that the plaintiff was "too old" for Peace Officer training).

The undisputed facts in this case, in fact, affirmatively negate any inference that

discrimination occurred. Initially, in 2010, when Fried was 70 years, the Board asked him to

assume responsibility for running LVI until a new CEO and President could be recruited. (Pl. Tr., p. 112.) This Board action indicates that the Board considered Fried capable of taking on the responsibilities inherent in running LVI and militates against any inference that the decision to reallocate Fried's Chairman responsibilities only months later could be the product of discriminatory animus. See Baguer, 2010 WL 2813632, at *15 ("Being in the protected class when hired undermines any inference of age discrimination."). See also Emanuel v. Oliver, 85 F. Supp. 2d 321, 334 (S.D.N.Y. 2000) ("no reasonable juror could conclude" that plaintiff was fired because of his age where he was "a mere eleven months older" than when hired); Siano v. Haber, 40 F. Supp. 2d 516, 524 (S.D.N.Y. 1999) (age discrimination claim undermined where plaintiff was fired at 71, but was already 64 when she was hired).

In addition, Simmons, who offered Fried this opportunity, was the same actor who determined that Fried's status should change from employee to consultant. Kaplan, 2010 WL 1253967, at *5. These undisputed facts negate any possible inference that age played any role in the Board's decisions relating to Fried's employment. See Saenger, 706 F. Supp. 2d at 510.

In light of Fried's inability to set forth facts sufficient to prove that Defendants' decision was motivated by age discrimination, the Court should dismiss his claim under the NYCHRL against all Defendants.

## III.   FRIED'S RETALIATION CLAIMS UNDER BOTH THE ADEA AND THE NYCHRL SHOULD BE DISMISSED

In his Complaint, Fried alleges that Defendants retaliated against him by (1) excluding him from multiple facets of LVI's operations and requesting that LVI's manager direct new Company matters to State rather than to Fried (Compl., ¶¶ 55-58); (2) terminating his

employment and offering him a position as a consultant (Compl., ¶¶ 60-62); and (3) terminating the employment of his daughter, Shari Dembin. (Compl., ¶¶ 64-71.)[10]

Retaliation claims under the ADEA and the NYCHRL are analyzed using the McDonnell Douglas burden-shifting framework. Gorzynski, 596 F.3d at 110. To establish his *prima facie* claim, plaintiff must show that (1) he participated in protected activity known to defendant; (2) he suffered an adverse employment action and (3) a causal connection exists between the plaintiff's engagement in the protected activity and the adverse employment action. Id. (citations omitted). Once established, the burden shifts to Defendants to articulate a legitimate nondiscriminatory reason for the adverse employment action. Mattera v. JP Morgan Chase Corp., No. 08 Civ. 04040, 2010 WL 3785576, at *14 (S.D.N.Y. Sept. 30, 2010). Finally, the burden shifts back to the plaintiff to demonstrate that the reason is pretextual. Id.

### A. The Purported Adverse Employment Decisions Taken Against Fried Were Made Before His Discrimination Complaint

It is axiomatic that no cause-and-effect relationship between a protected activity and an adverse employment action can be found where the alleged adverse employment action occurred prior to the commencement of any protected activity. Kemp v. Metro-North R.R., No. 04 Civ. 9926, 2007 U.S. Dist. LEXIS 43568, at *49 (S.D.N.Y. June 12, 2007) (dismissing retaliation claim where a transfer decision was made before the plaintiff's EEOC charge, even though the actual transfer occurred after the charge); Williams v. City of N.Y., No. 04 Civ. 1993, 2005 U.S. Dist. LEXIS 6083, at *42 (S.D.N.Y. Apr. 12, 2005) (finding no viable retaliation claim where the plaintiff filed his complaint with the New York City Commission on Human Rights after his termination). Moreover, where timing is the only basis for a claim of retaliation, and gradual adverse job actions began before the plaintiff ever engaged in any protected activity, an inference

---

[10] Ms. Dembin has brought a related claim, captioned Shari L. Dembin v. LVI Services, Inc.; LVI Parent Corp.; Scott E. State, No. 11 Civ. 1888, on March 17, 2011.

of retaliation is negated. <u>Mattera,</u> 2010 WL 3785576, at * 16. <u>See also</u> <u>Deebs v. Alstom</u>

<u>Transp., Inc.,</u> 346 Fed. Appx. 654, 657 (2d Cir. 2009); <u>Slattery v. Swiss Reinsurance Am. Corp.,</u>

248 F.3d 87, 95 (2d Cir. 2001).

  Fried claims that he complained about age discrimination at the Board meeting of

November 4, 2010. (Compl., ¶ 51.)  He also alleges that he reached out to Board members from

CHS and Apollo to tell them of State's alleged discriminatory treatment shortly after the meeting

with State on October 19, 2010. (Compl., ¶ 52.)  The decision to shift Fried's day-to-day

responsibilities to other members of LVI management, however, had been contemplated by Fried

as early as 2005 and had been considered by State and members of the Board even before State

accepted the position of CEO and President. (Pl. Tr., pp. 80-81; Seltzer Aff., Exhs. E, F.)  As

early as September 19, 2010, a month before State's conversation with Fried, State, in an email

to Robert Hogan, stated: "In the best-case scenario Burt will decide to retire at some date certain

from LVI upon a new CEO being named and offer to support the business under a consulting

agreement in any way the new CEO sees fit." (Seltzer Aff., Exh. EE, p. 2.)  Moreover, as noted

above, Fried had repeatedly represented that he was "prepared to remain at LVI until [State], the

Board or I decide its time for me to leave…"  Likewise, the offer to Fried of the consulting

agreement and a reduced role with LVI was initiated by Simmons in an email dated November 2,

2010, in which he wrote to Fried: "I am of the opinion that we need to transition all of your day-

to-day activities to Scott and other members of the management team.  It is my hope that you

continue as Chairman of the Board in a non-executive capacity and act as on-call resource for

Scott. . . . I would like to replace your existing employment arrangement with a consulting

agreement that compensates you for the services you will continue to provide and also as

Chairman of the Board." (Seltzer Aff., Exh. S, pp. 1-2.)  The communication of the decision to

transfer Fried's day-to-day responsibilities and to transition his role from employee to consultant occurred before his discrimination complaint on November 4, 2010 and even before the purported conversation he had with Board members about his meeting with State on October 19, 2010. As such, his retaliation claims on the basis of these alleged adverse actions is simply not actionable.

**B.   Defendants Had a Legitimate Business Reason for Closing the Westport Office and Eliminating Shari Dembin's Position**

As with the decision to offer Fried a consultant agreement, the decision to close, or at least downsize, the Westport office and effect a reduction in force was considered as early as October 29, 2010. (Seltzer Aff., Exh. FF.) The fact that this decision was considered prior to the November 4, 2010 Board meeting, when Fried first threatened to sue LVI for age discrimination, negates Fried's claim that the decision was retaliatory.

Defendants have adduced unrebutted evidence of a legitimate business reason for the closing of the Westport office – one of the measures taken by State to contain costs at a time when LVI faced a significant financial shortfall. (Seltzer Aff., Exhs. AA, BB, CC; State Tr., pp. 395-400.) The other measures included the move of the New York City headquarters to a more affordable location and the termination of eleven employees in addition to Dembin, including all of the employees of the Westport office other than the legal team, which will be moved to a different location. (Seltzer Aff., Exhs. AA, CC.)

Fried has set forth no evidence that LVI's cost containment reasons for closing of the Westport office and the selection of Dembin and eleven other LVI employees are pretextual. Other than the fact that Dembin is his daughter and that she was selected for the reduction in force (Compl., ¶¶ 64, 68), Fried offers as evidence of retaliation only the fact that she was

terminated less than a month after Fried's "protected activity." (Compl., ¶ 69.)[11]  As set forth above, an inference of discrimination is discounted where timing is the sole basis for the inference and the adverse action had been contemplated prior to the protected activity.  <u>See</u> cases, above at page 18.

Finally, and most importantly, Fried's claim of retaliation fails simply because it makes no sense.  It is patently absurd to suggest that Defendants would close an office and terminate the employment of twelve employees at multiple locations just to retaliate against Fried when they could have more easily targeted Dembin alone or, at most, the staff of the Westport office. Fried's baseless accusation that all of these cost-cutting measures were pretext to disguise LVI's real motive of punishing him for bringing a lawsuit are no more than sheer conjecture and totally unsupported by any competent evidence, and are therefore insufficient to defeat Defendant's motion for summary judgment.  <u>See</u> <u>Holowecki</u>, 644 F. Supp. 2d at 353 (granting summary judgment motion where the plaintiff "offered nothing more than conclusory allegations in support of his age discrimination claim"); <u>Ferraro</u>, 2010 WL 3912466 at *2 (granting summary judgment where plaintiff provided only "conclusory assertions").

**IV.    <u>FRIED'S AIDING AND ABETTING CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED</u>**

As Fried has failed to set forth material issues of fact to defeat Defendants' motion for summary judgment as to his discrimination and retaliation claims, his claims against the individual Defendants State, Simmons, Bagaria and Girardi should be dismissed.  Under the NYCHRL, there is a requirement that liability must first be established as to the employer before accessorial responsibility can be found as to an alleged aider and abettor.  <u>DeWitt v. Lieberman</u>,

---

[11] As Mr. Fried complained of discrimination at the November 4, 2010 Board meeting, and even taking as true his allegation that he complained to individual Board members after his meeting with October 19, 2010, Fried's contention that his protected activity occurred less than a month before Dembin's termination notification on January 6, 2010 is baseless.

48 F. Supp. 2d 280, 293-94 (S.D.N.Y. 1999) (quoting Murphy V. ERA United Realty, 674

N.Y.S.2d 415, 417 (2d Dep't 1998)); Franchitti v. Bloomberg L.P., 03 Civ. 7496, 2005 U.S. Dist.

LEXIS 19285, * 34 (S.D.N.Y. Aug. 12, 2005). Because Fried has failed to set forth sufficient

evidence to establish liability for discrimination or retaliation as against LVI or the Parent, his

claims against the individual Defendants must similarly fail.

## CONCLUSION

For the reasons set forth above, Defendants respectfully requests that the Court enter

summary judgment dismissing the Complaint in its entirety.

Dated: June 10, 2011
      New York, New York

SIDLEY AUSTIN LLP

By: _____

    Nicholas H. De Baun
    ndebaun@sidley.com
    Joanne Seltzer
    jseltzer@sidley.com
    787 Seventh Avenue
    New York, New York 10019
    (212) 839-5300

    Attorneys for Defendants
    LVI Services Inc., LVI Parent Corp,
    Scott State, Brian Simmons, Rajay Bagaria
    and Gerald Girardi

24