**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
BURTON T. FRIED,                                  :
                                                  :
                        Plaintiff,                :          No. 10 Civ. 9308 (JSR)(JCF)
                                                  :
            v.                                    :
                                                  :
LVI SERVICES, INC.; LVI PARENT CORP.,             :
CODE HENNESSY SIMMONS LLC d/b/a CHS               :
PRIVATE EQUITY V LP; APOLLO                       :
INVESTMENT CORP.; SCOTT E. STATE, in his          :
official and individual capacities; BRIAN         :
SIMMONS, in his official and individual capacities; :
RAJAY BAGARIA, in his official and individual     :
capacities; GERALD J. GIRARDI, in his official    :
and individual capacities,                        :
                                                  :
                        Defendants.               :
                                                  :
-------------------------------------------------------------- X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**THOMPSON WIGDOR LLP**

85 Fifth Avenue
New York, New York 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 1

      Scott State's Pre-Hire Inquires Regarding Mr. Fried ............................................ 4

      The Hiring Of Scott State .................................................................................... 5

      The October 19, 2010 Age-Related Comment .................................................... 5

      State's October 19, 2010 Email ........................................................................... 6

      Mr. Fried's First Complaints of Discrimination ................................................. 6

      The November 4, 2010 Board Meeting ................................................................ 6

      The November 5, 2010 Email ............................................................................... 7

      Mr. Fried's Termination and Reassignment of His Job Duties ........................... 7

      Ms. Dembin's Termination ................................................................................... 8

ARGUMENT .................................................................................................................. 9

    I.    SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR.
         FRIED'S ADEA CLAIM ......................................................................... 10

        A.  Mr. Fried Has Established a Prima Facie Case Under the ADEA ........................ 10

        B.  Mr. Fried Has Established "But For" Causation ...................................... 12

            1.   Defendants' Proffered Reason for Mr. Fried's Termination is False ........ 12

            2.   Defendants' Real Reason for Terminating Mr. Fried was Because of his
                Age ................................................................................................. 13

    II.    SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR.
         FRIED'S NYCHRL CLAIM ...................................................................... 18

    III.    SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR.
          FRIED'S RETALIATION CLAIMS ........................................................... 20

A.  There Was A Causal Connection Between Mr. Fried's Termination And Protected Activity ...............................................................................................................21

B.  A Causal Connection Between Ms. Dembin's Termination And Mr. Fried's Protected Activity ...............................................................................................23

IV.  THE INDIVIDUAL DEFENDANTS AIDED AND ABETTED IN THE DISCRIMINATION AND RETALIATION AGAINST MR. FRIED........................25

CONCLUSION.........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Berube v. Great Atl. & Pac. Tea Co., Inc.*,
    348 F. App'x. 684 (2d Cir. 2009) ...................................................................................10

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999) .........................................................................................10

*Boston v. McFadden Pub., Inc.*,
    No. 09-CV-457 (RJH), 2010 WL 3785541 (S.D.N.Y. Sept. 29, 2010) ...........................14

*Casper v. Lew Lieberbaum & Co., Inc.*,
    No. 97-CV-3016 (JGK), 1998 WL 150993 (S.D.N.Y. Mar. 31, 1998)............................20

*Cholita Corp. v. M/V MSC MANDRAKI*,
    No. 10 CIV. 4717 (JSR), 2011 WL 1405038 (S.D.N.Y. Apr. 4, 2011) .............................9

*Crawford v. Dep't of Investigation*,
    324 F. App'x. 139 (2d Cir. 2009).....................................................................................17

*Deebs v. Alstom Transp., Inc.*,
    346 F. App'x. 654 (2d Cir. 2009).....................................................................................24

*Dixon v. Int'l Fed'n of Accountants*,
    No. 10-1924-CV, 2011 WL 1086867 (2d Cir. Mar. 25, 2011) .........................................17

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004) .........................................................................................25

*Germano v. Cornell University*,
    No. 03-CV-9766, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005) ....................................20

*Giarratano v. Edison Hotel*,
    No. 08-CV-1849 (SAS), 2009 WL 46444 (S.D.N.Y. Feb. 24, 2009) ..............................15

*Gorzynski v. Jetblue Airways Corp.*,
    596 F.3d 93 (2d Cir. 2010) .....................................................................................10, 12

*Graham v. Long Island R.R.*,
    230 F.3d 34 (2d Cir. 2000) ...........................................................................................10

*Gross v. FBL Fin. Serv. Inc.*,
    129 S. Ct. 2343 (2009) .............................................................................................12, 18

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010) ........................................................................21

*Hird-Moorhouse v. Belgian Mission to United Nations*,
No. 03-CV-9688, 2010 WL 3910742 (S.D.N.Y. Oct. 5, 2010) ..................................18, 24

*Hofmann v. Dist. Council 37*,
No. 99-CV-8636 (KMW) (JCF), 2004 WL 1936242 (S.D.N.Y. Aug. 31, 2004) ............16

*Hofmann v. Dist. Council 37*,
No. 99-CV-8636 (GEL), 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006)........................16

*Joseph v. Marco Polo Network, Inc.*,
No. 09-CV-1597 (DLC), 2010 WL 4513298 (S.D.N.Y. Nov. 10, 2010).........................12

*Leibowitz v. Cornell University*,
584 F.3d 487 (2d Cir. 2009) ........................................................................12

*Lightfoot v. Union Carbide Corp.*,
No. 92-CV-6411, 1994 WL 184670 (RPP) (S.D.N.Y. Nov. 1998)...................................20

*Loeffler v. Staten Island Univ. Hosp.*,
582 F.3d 268 (2d Cir. 2009) ........................................................................18

*Mattera v. JPMorgan Chase Corp.*,
740 F. Supp. 2d 561 (S.D.N.Y. 2010) ....................................................12, 23

*Morris v. New York City Dept. of Sanitation*,
No. 99-CV-4376 (WK), 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003)..............................16

*Newmark v. Lawrence Hosp. Ctr.*,
No. 07-CV-2861 (CS), 2008 WL 5054731 (S.D.N.Y. Oct. 20, 2008).......................22, 24

*O'Reilly v. Marina Dodge, Inc.*,
No. 10-CV-2977, 2011 WL 1897489 (2d Cir. May 19, 2011)...................................14, 17

*Raskin v. The Wyatt Co.*,
125 F.3d 55 (2d Cir. 1997) ........................................................................14

*Salvatore v. KLM Royal Dutch Airlines*,
No. 98-CV-2450 (LAP), 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999)...........................20

*Schreiber v. Worldco LLC*,
324 F.Supp. 2d 512 (S.D.N.Y. 2004) ..............................................................16

*Sciola v. Quattro Piu, Inc.*,
    361 F. Supp. 2d 61 (E.D.N.Y. 2005) ........................................................................16

*Shapiro v. New York City Dept. of Educ.*,
    561 F. Supp. 2d 413 (S.D.N.Y. 2008) .....................................................................17

*Silver v. N. Shore Univ. Hosp.*,
    490 F. Supp. 2d 354 (S.D.N.Y. 2007) .....................................................................22

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001) ......................................................................................22

*Spahr v. Am. Dental Centers*,
    No. 03-CV-4954 (DRH) (ARL), 2006 WL 681202 (E.D.N.Y. Mar. 14, 2006)..............14

*Terry v. Ashcroft*,
    336 F.3d 128 (2d Cir. 2003) ....................................................................................20

*Velasquez v. Gates*,
    No. 08-CV-2215 (CLP), 2011 WL 2181625 (E.D.N.Y. June 3, 2011)............................18

*Velez v. McHugh*,
    No. 09-CV-0925 (GAY), 2011 WL 778693 (S.D.N.Y. Mar. 2, 2011) ............................10

*Vesprini v. Shaw Contract Flooring Services, Inc.*,
    315 F.3d 37 (1st Cir. 2002) ......................................................................................14

*Weiss v. JPMorgan Chase & Co.*,
    No. 06-CV-4402 (DLC), 2010 WL 114248 (S.D.N.Y. Jan. 13, 2010) ............................18

*Wright v. N.Y. City Off–Track Betting Corp.*,
    No. 05-CV-9790 (WHP), 2008 WL 762196 (S.D.N.Y. Mar. 24, 2008) ..........................23

*Yarde v. Good Samaritan Hosp.*,
    360 F.Supp. 2d 552 (S.D.N.Y. 2005) ......................................................................22

**STATE CASES**

*Hoffman v. Parade Publis.*,
    15 N.Y.3d 285 (2010) .........................................................................................18, 20

*Williams v. N.Y. City Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009) ...............................................................................20

**FEDERAL STATUTES AND RULES**

29 U.S.C. §§ 621 ..................................................................................................10

Fed. R. Civ. P. 56(c) ..............................................................................................9

**STATE STATUES AND RULES**

New York Administrative Code §§ 8-101 *et seq.* ("NYCHRL") .................................................10

N.Y.C. Local Law No. 85 (Oct. 3, 2005)........................................................................20

## PRELIMINARY STATEMENT

Prior to being hired by LVI Services as its President and CEO, Scott State expressed his desire that, "in the best case scenario," Burton Fried, who was 70 years old at the time, "retire" after nearly a quarter of a century of excellent performance with the company.  Less than three weeks after Mr. State started working, he stripped Mr. Fried of all of his duties because of his age and asked Mr. Fried, "you're 71 years of age, how much longer do you expect to work?" Mr. Fried then complained to the Board of Directors that he was being subjected to age discrimination.  When his complaints fell on deaf ears, his attorneys sent a letter to Mr. State memorializing his complaints of discrimination.  The following day, Mr. Fried was fired by Mr. State.  In a further act of retaliation, Mr. Fried's daughter, who was also a long-term employee of LVI, was terminated approximately one month after Mr. Fried complained to the Board.

## STATEMENT OF FACTS

Defendant LVI Parent Corp. ("Parent") maintains its principal place of business in New York City and is the parent and sole shareholder of Defendant LVI Services, Inc. ("LVI"). (Ex. 3, p.14; Ex. 4, p.24; Ex. 5, p.19).  Parent is approximately 95% owned by: Apollo Investment Corp. ("Apollo"), CHS Private Equity V LP ("CHS"), and Falcon Investment Advisors ("Falcon"). (Ex. 4, p.17-18).  The Board of Directors of Parent (the "Board") is currently comprised of: Defendants Rajay Bagaria ("Bagaria") and Gerald Girardi ("Girardi") from Apollo, Defendant Brian Simmons ("Simmons") and Robert Hogan ("Hogan") from CHS, John Schnabel ("Schnabel") from Falcon, Scott State ("State"), Richard Ferruci and Robert Buck. (Ex. 4, p.18-19).  While employed by LVI, Mr. Burton Fried ("Mr. Fried") was Chairman of the Board. (Ex. 4 p.19; Ex. 6, p.14).

1

LVI is an environmental remediation and demolition company that maintains its principal place of business in New York City (the "New York City Office"). (Ex. 3, p.25, 30-31; Ex. 4, p.32-33). Along with all of its subsidiaries, LVI is comprised of approximately 20 offices across the United States and has thousands of employees. (Ex. 7, p.174-175; Ex. 8, p.24-25).

Mr. Fried, who has been referred to as the "founder" of LVI, was born on February 26, 1940. (Ex. 9; Ex. 10; Ex. 11, p. 362, 364-365). Hired in 1986, he was the General Counsel of LVI until he became its President and Chief Executive Officer in 1989. (Ex. 12, p. 63-64). As President and CEO, Mr. Fried worked out of the New York City Office. (Ex. 4, p. 45).

In or around September 2003, LVI opened a satellite office to the New York City Office in Westport, Connecticut ("Westport Office"). (Ex. 12, p. 45, 64; Ex. 4, p.166). Because Mr. Fried lived in Westport, he decided to work out of the Westport Office two to three days a week and work out of the New York City Office two to three days a week. (Ex. 4, p.45-46; Ex. 12, p.65-67). Between November 2005 and July 2006, Mr. Fried worked out of the Westport Office three days a week and out of the New York City Office two days a week. (Ex. 13).

Because LVI became the dominant leader in its industry while Mr. Fried was President and CEO, Mr. Fried, in 2005, recommended to the then current owner of LVI that it find a President and CEO with experience managing a billion-dollar company. (Ex. 4, p.35-36; Ex. 12 p. 75-76). However, Mr. Fried had no intention of retiring once a new President and CEO was hired and decided to continue working for LVI as an employee with the job title of Chairman and to continue serving as Chairman of the Board. (Ex. 12, p. 77-79, 132; Ex. 13).

In or around July 2006, Robert McNamara ("McNamara") was hired by LVI as its President and CEO and Mr. Fried became Chairman of LVI. (Ex. 4, p.38-39, 41; Ex. 14). In connection with his new role, Mr. Fried envisioned working four days each week. (Ex. 12, p.

2

109-110).  However, after his first week as Chairman, he reverted back to working at least five days a week. (Ex. 12, p. 109-110).  As Chairman under McNamara, Mr. Fried was responsible for, among other things, strategic growth, legal matters and sales. (Ex. 7, p.35-36; Ex. 13).  As Chairman, Mr. Fried did a good job. (Ex. 7, p.37; Ex. 6, p.25-26).

While Mr. Fried was Chairman under McNamara, he was based in the Westport Office. (Ex. 13).  Despite the location of his office, he still worked in New York City for LVI. (Ex. 4, p. 45-46; Ex. 15, ¶3-5).  For example, he worked out of the New York City office on occasion and attended numerous meetings concerning LVI business in New York City. (Ex. 15, ¶3; Ex. 4, p.45-46).  He also called and/or emailed, almost daily, personnel in the New York City Office about projects in New York City and/or about issues involving the operations of the New York City Office. (Ex. 15, ¶4).  When Mr. Fried was not in New York City working, or communicating with LVI personnel in New York City concerning LVI business in New York City, he was drafting and reviewing paperwork involving LVI projects in New York City. (Ex. 15, ¶5).

In early 2010, McNamara resigned, and Mr. Fried was asked by Simmons to be the interim President and CEO of LVI until McNamara's replacement could be found. (Ex. 5, p. 31; Ex. 8, p.28-30; Ex. 12, p. 108-109).  Not only did Mr. Fried agree to serve in this capacity, but he also continued to serve as Chairman of LVI and intended to continue as Chairman after a new President and CEO was found. (Ex. 4, p.64; Ex. 7, p.38, 48-50).  While interim President and CEO, Mr. Fried did a good job. (Ex. 4, p.64-65; Ex. 6, p. 28; Ex. 8, p. 35-36).  In fact, he was specifically told by Simmons that he was "earning every penny" of his salary, and Bagaria and Girardi also commended Mr. Fried's performance by writing that "we are fortunate to have Burt Fried as interim CEO who had done a good job stabilizing the situation." (Ex. 16; Ex. 17, p. 13).

3

While Mr. Fried was interim President and CEO, and later as Chairman, LVI was conducting a substantial amount of business in New York City. (Ex. 7, p.44).  For example, it was performing work at: (a) Madison Square Garden in connection with a $27.5 million contract; (b) 130 Liberty Street in connection with an approximately $30 million contract; (c) Hudson Yards in connection with a $10 million contract; and (d) Yankee Stadium in connection with a $3 million contract. (Ex. 7, p.39-45).  The former two contracts, which Mr. Fried played a role in securing, were two of the biggest contracts that LVI had at the time. (Ex. 7, p.45-47).

While he was interim President and CEO, Mr. Fried, who was still based in the Westport Office, continued to work in New York City for LVI. (Ex. 6, p.83-85; Ex. 8, p.66-69; Ex. 15, ¶6-7).  For example, he worked out of the New York City Office on occasion and continued to attend numerous meetings concerning LVI business in New York City, including four meetings in connection with the Madison Square Garden project. (Ex. 6, p.84; Ex. 7, p.45-47; Ex. 8, p.66-69; Ex. 15, ¶5).  He also continued to call and/or email, almost daily, personnel in the New York City Office about projects in New York City and/or about issues involving the operations of the New York City Office. (Ex. 4, p.66-67; Ex. 8, p.66-69; Ex. 15, ¶7).  He also, on a weekly basis, participated in conference calls with a client in New York City to discuss issues concerning a project in New York City. (Ex. 15, ¶7).

**Scott State's Pre-Hire Inquiries Regarding Mr. Fried**

In or around August 2010, State, who was 47 years old at the time, was introduced to Mr. Fried as a candidate for President and CEO of LVI.  (Ex. 12, p. 110; Ex. 10).  On September 14, 2010, before State was even hired, he inquired about how Mr. Fried could be removed as Chairman of the Board. (Ex. 18).

Again, before he was hired, State asked John Leonard ("Leonard"), the Chief Operating Officer of LVI, if Mr. Fried, who was 70 years old at the time, was going to retire. (Ex. 7, p.59-60, 64-65; Ex. 11, p. 115-117).  Mr. Leonard said no. (Ex. 7, p.59-60, 64-65; Ex. 11, p.130-131; Ex. 19).  In fact, Mr. Fried had often told Mr. Leonard that he intended to die in his chair. (Ex. 7, p.49).

On September 19, 2010, despite already being told by Leonard that Mr. Fried had no intention of retiring, State wrote the following in the body of a lengthier email to Hogan:

> ⇨   In the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit.  Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do.  That is not a healthy situation for Burt or LVI. (Ex. 11, p.131; Ex. 19).

**The Hiring Of Scott State**

On approximately September 28, 2010, State was hired by LVI as its President and CEO. (Ex. 11, p.91).  Upon State's hire, Mr. Fried assumed his prior title and job duties of Chairman of LVI. (Ex. 3, p.47; Ex. 20).  As Chairman, Mr. Fried continued to do a good job. (Ex. 7, p.76-77).  During this time, Mr. Fried, who was still based in the Westport Office, continued to work in New York City for LVI. (Ex. 8, p.65; Ex. 15, ¶8).  For example, he continued to attend meetings concerning LVI business in New York City. (Ex. 8, p.65; Ex. 12, p.66-67, 255; Ex. 15, ¶8).

**The October 19, 2010 Age-Related Comment**

On October 19, 2010, Mr. Fried met with State for the first time since State was hired in New York City to discuss Mr. Fried's job duties. (Ex. 12, p.176; Ex. 21).  During the meeting, State told Mr. Fried that he was going to take away all of his duties and give them to others (who

were younger than Mr. Fried by decades) (Ex. 10; Ex. 12, p.182, 194).  When Mr. Fried asked

State why he was doing this, Mr. State admitted:

⇨ "Burt, you're 71 years of age, how much longer do you expect to
work?"

(Ex. 7, p.117; Ex. 12, p.194).  State made this comment despite knowing that Mr. Fried wanted

to "remain active forever." (Ex. 34).  In response to State's remark, Mr. Fried told State that he

was 70 years old and that he intended to work for LVI for many years to come. (Ex. 12, p.182-

83).  Despite Mr. Fried's response, State decided to reassign his duties. (Ex. 4, p.101; Ex. 11, p.

183).

**State's October 19, 2010 Email**

After he met with Mr. Fried, that same day State emailed Simmons and wrote the

following sentence in reference to Mr. Fried:

⇨ "I was clear with him that it was my objective to have him truly retire and be just
an on call resource."

(Ex. 21).

**Mr. Fried's First Complaints of Discrimination**

After this meeting and prior to the end of October 2010, Mr. Fried spoke to Bagaria,

Simmons and Schnabel, and told them that State wanted to reassign all of his duties and told

them the comment State made. (Ex. 3, p.54-57; Ex. 8, p. 44-45, 48; Ex. 12, p.194-200).

**The November 4, 2010 Board Meeting**

On November 4, 2010, the Board held a quarterly meeting in New York City which Mr.

Fried attended. (Ex. 22).  At the end of the meeting, the Board discussed Mr. Fried's future role

at LVI. (Ex. 22).  During this meeting, Mr. Fried calmly told the Board that State reassigned all

of his duties to others, and also told them the age-related comment State made. (Ex. 3, p.90-91;

Ex. 5, p.43-44; Ex. 6, p.51-52; Ex. 8, p.72-73; Ex. 23, p. 41, 43-44; Ex. 33, p.75).  He also told the Board that State's actions constituted age discrimination. (Ex. 3, p.91; Ex. 6, p.51-52; Ex. 23, p.43-44; Ex. 33, p.75-76).  At the conclusion of the meeting, no decision regarding Mr. Fried's continued employment was made. (Ex. 3, p.93, 95; Ex. 5 p.73).  Instead, the Board decided to have Schnabel reach out to Mr. Fried and State to broker a resolution. (Ex. 3, p.92-93).  Further, the Board decided not to investigate Mr. Fried's complaint of age discrimination, even though Jeffrey Smith, Esq., a partner at Sidley Austin (the same firm representing Defendants) and LVI's outside counsel, was present at the Board meeting. (Ex. 4, p.23; Ex. 5, p.75; Ex. 23, p. 10, 12, 25, 81-82; Ex. 33, p.21, 76-77).

### The November 5, 2010 Email

On November 5, 2010, State emailed his personal friend, who he was communicating with about LVI business, and wrote the following sentence in reference to Mr. Fried:

⇨  In a battle with founder about his need to retire but Board gets it and is working to exit him with some respect.

(Ex. 9; Ex. 11, p. 362, 364-365).

### Mr. Fried's Termination and Reassignment of His Job Duties

On November 15, 2010, Mr. Fried's attorneys hand delivered a letter to State's attention at the New York City Office to address the discriminatory conduct that Mr. Fried previously complained about. (Ex. 4, p.138-139; Ex. 24).  On November 16, 2010, a majority of the Board members (Girardi, Simmons, Hogan, Schnabel and State) discussed the November 15 letter and the employment of Shari Dembin ("Dembin"), who is Mr. Fried's daughter. (Ex. 5, p.82-84, 87-92; Ex. 8, p.138-139; Ex. 25).  The Board members, including State, decided to ignore the November 15 letter and send a letter in response. (Ex. 5, p.87-92; Ex. 8, p.145-148; Ex. 26).  The letter in response, which was sent to Mr. Fried on November 16, 2010, terminated Mr. Fried's

employment as Chairman of LVI. (Ex. 26).  The decision to terminate Mr. Fried was made by State. (Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5).  Prior to State's hire, the Board never considered firing Mr. Fried. (Ex. 3, p.53-54; Ex. 5, p.39-40).

The November 16 letter also advised Mr. Fried that he could continue to be Chairman of the Board and offered him the opportunity to work for LVI as a consultant on an hourly basis. (Ex. 26).  However, this arrangement was contingent on Mr. Fried agreeing not to sue LVI for age discrimination and retaliation. (Ex. 26).  Moreover, Mr. Fried was not guaranteed a minimum number of hours, could have been terminated at any time upon 30-days notice, and was only guaranteed $37,500.  (Ex. 26).  Mr. Fried declined the offer. (Ex. 33, p.130-131).  He resigned as Chairman of the Board on November 30, 2010; he did not resign from his position as Chairman of LVI. (Ex. 3, p.118; Ex. 31; Ex. 33, p.12, 133).

After he was fired, Mr. Fried's job duties were mostly reassigned to Tom Cullen who was 35, Gregory DiCarlo who was 44, David Pearson who was 44, Frank Aiello who was 45, John Leonard who was 46, State who was 47, Mark Canessa who was 48, Kamal Sookram who was 53, and Joseph Annarumma who was 57. (Ex. 5, p.105; Ex. 7, p.93-116; Ex. 10; Ex. 36).

## Ms. Dembin's Termination

Ms. Dembin, who began working for LVI in April 1996 out of its New York City Office, transferred to the Westport Office in September 2003. (Ex. 4, p.148-149; Ex. 6, p.88-89; Ex. 7, p.146).  She was the Insurance/Bonding Administrator and was responsible for risk management, and administering insurance and bonding. (Ex. 7, p.147-148; Ex. 4, p.149-151; Ex. 6, p.90-91).  She made $85,000 annually and performed her job well. (Ex. 4, p.150-151, 156; Ex. 6, p.91-92; Ex. 7, p. 148).

Approximately one month after Mr. Fried complained to Bagaria, Simmons and Schnabel about being discriminated against (and as early as nine days, and as late as five weeks after Mr. Fried complained to the Board), out of the thousands of employees within the LVI organization that were evaluated for layoff, State decided to terminate Ms. Dembin, along with 10 other employees, in January 2011. (Ex. 3, p.124; Ex. 4, 161-165, 169-170; Ex. 5, p.118; Ex. 7, p.150-151, 155, 172-173; Ex. 32; Ex. 33, p.160-161).

Ms. Dembin, who performed the same duties for the past 10 years, was not laid off in connection with prior rounds of layoffs conducted by LVI. (Ex. 4, p.172-177).  Out of the 11 employees selected for layoff, six employees were from the Westport Office. (Ex. 7, p.155-162). Significantly, three employees from the Westport Office were not selected for layoff and continue to work in that office. (Ex. 4, p.168, 171; Ex. 6, p.89-90).  Notably, some of Ms. Dembin's job duties were reassigned to an employee that was not laid off from the Westport Office. (Ex. 4, p.166-167, 171; Ex. 6, p.96; Ex. 7, p.165-166).

## ARGUMENT

Summary judgment is not appropriate unless the evidence on the record demonstrates that "there is no genuine issue as to any material fact."   FED.R.CIV.P. 56(c).  "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Cholita Corp. v. M/V MSC MANDRAKI*, No. 10-CV-4717 (JSR), 2011 WL 1405038, at *4 (S.D.N.Y. Apr. 4, 2011). In employment discrimination cases, it is well-settled that "[c]aution should be exercised in addressing summary judgment motions . . . where intent and state of mind are at issue because 'careful scrutiny of the

factual allegations may reveal circumstantial evidence to support the required inference of discrimination.'"  *Velez v. McHugh*, No. 09-CV-0925 (GAY), 2011 WL 778693, at *2 (S.D.N.Y. Mar. 2, 2011) (quoting *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000)); *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) ("as discrimination will seldom manifest itself overtly, courts must be alert to the fact that [e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law") (internal quotation omitted).

## I.   SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S ADEA CLAIM

Mr. Fried was discriminated against because of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. ("ADEA"), and the New York City Human Rights Law, New York Administrative Code §§ 8-101 *et seq.* ("NYCHRL"). As set forth below, Mr. Fried has demonstrated that genuine issues of material fact exist to preclude summary judgment on his claims.

### A.   Mr. Fried Has Established a Prima Facie Case

In order to establish a *prima facie* case of discrimination under the ADEA, the plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106-107 (2d Cir. 2010).  It is well-settled that a plaintiff's burden at this point is "de minimis." *See Berube v. Great Atl. & Pac. Tea Co., Inc.*, 348 F. App'x. 684, 686 (2d Cir. 2009).  In this case, Defendants assume that Mr. Fried has met his de minimis burden.  (D. Br., p.12).  In any event, Mr. Fried can demonstrate each aspect of his *prima facie* case.

It is undisputed that at all relevant times, Mr. Fried was 70 years old.  It is also undisputed that Mr. Fried, as a 24 year employee of LVI, including 20 as its President and CEO and/or Chairman, was qualified to hold the Chairman position at the time he was fired.  (Ex. 15, ¶2).  It is also undisputed that Mr. Fried was fired as Chairman of LVI.  (Ex. 26).

With respect to the fourth prong, it is also undisputed that:

- Mr. Fried worked at LVI for 24 years before State was hired (Ex. 15, ¶2).  During his time as Chairman under McNamara, his work performance was exceptional. (Ex. 6, p.25-26; Ex. 7, p.37). A few months before State was hired, Mr. Fried was told by Simmons, he was "earning every penny" of his salary (Ex. 16), and Bagaria and Girardi said that Apollo was "fortunate to have Burt Fried as interim CEO."  (Ex. 17);

- On September 14, 2010, before he was even hired, State was trying to determine how to remove Mr. Fried as Chairman of the Board; a role which did not impact State's ability to manage LVI.  (Ex. 18);

- On September 19, 2010, State emailed Hogan and wrote that "[i]n the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit.  Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do.  That is not a healthy situation for Burt or LVI." (Ex. 19);

- On October 19, 2010, when Mr. Fried asked State why he was reassigning his job duties to other employees, State said, "Burt you're 71 years of age, how much longer do you expect to work?"  (Ex. 12, p.194);

- After meeting with Mr. Fried on October 19, 2010, State wrote to Simmons, "I was clear with [Mr. Fried] that it was my objective to have him truly retire and be just an on call resource." (Ex. 21);

- On November 5, 2010, State emailed his friend and told him that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (Ex. 9);

- State, who is 23 years younger than Mr. Fried, made the decision to fire him.  (Ex. 10; Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5); and

- After he was fired, Mr. Fried's job duties were reassigned to employees who range from 13 to 35 years younger than him. (Ex. 5, p.105; Ex. 7, p.93-116; Ex. 10; Ex. 36).

In light of this evidence, Mr. Fried has, at the very least, created an issue of fact as to whether his termination occurred under circumstances giving rise to an inference of discrimination. *See Joseph v. Marco Polo Network, Inc.*, No. 09-CV-1597 (DLC), 2010 WL 4513298, at *10 (S.D.N.Y. Nov. 10, 2010) ("For the purposes of assessing the plaintiffs' *prima facie* case, the plaintiffs' evidence of [their supervisor's] explicit age-related comments in connection with the performance of the plaintiffs' professional duties is sufficient."); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 573 (S.D.N.Y. 2010) ("The Second Circuit has continuously held that an inference of discrimination arises . . . when an older qualified employee is replaced by someone younger.") (collecting cases). Accordingly, Mr. Fried has established a *prima facie* case of age discrimination.

## B.    Mr. Fried Has Established "But For" Causation

Because Mr. Fried has met his initial burden, Defendants must articulate a legitimate, non-discriminatory reason for Mr. Fried's termination. *Gorzynski* at 107. Defendants claim that Mr. Fried's was terminated "to ensure that the new CEO and President, State, would have the freedom to manage the Company as he saw fit." (D. Br., p.12). Now, the burden shifts back to Mr. Fried to establish that his "age was the but for cause of the employer's adverse action." *Gross v. FBL Fin. Serv. Inc.*, 129 S. Ct. 2343, 2350 (2009). In order to meet this burden, Mr. Fried may rely on the facts giving rise to an inference of discrimination, as well as evidence demonstrating that the reason for his termination is pretextual. *Leibowitz v. Cornell University*, 584 F.3d 487, 503 (2d Cir. 2009).

### 1.   Defendants' Proffered Reason for Mr. Fried's Termination is False

Defendants claim that Mr. Fried was terminated "to ensure that the new CEO and President, State, would have the freedom to manage the Company as he saw fit." Issues of fact

exist regarding the veracity of this reason.  For example, before State was hired: (a) he wrote to Hogan inquiring about how to remove Mr. Fried as Chairman of the Board, a position that had no direct influence on State's day-to-day management of LVI; (b) he wrote that "in the best case scenario, Burt will decide to retire at some date certain from LVI upon a new CEO being named . . . ;" and (c) he received assurances from Mr. Fried that he would give State independence to run LVI and Mr. Fried did not interfere with State. (Ex. 4, p. 129; Ex. 6, p. 39, 65, 74; Ex. 7, p. 74-76; Ex. 33, p. 62-63; Ex. 37; Ex. 38).  In fact, Defendants do not even allege that Mr. Fried actually interfered with State.  Further, no other LVI senior managers were fired, except Mr. Fried.  (Ex. 15, ¶9).

Finally, and most importantly, when Mr. Fried asked State why he was reassigning his job duties, State admitted that it was because of Mr. Fried's age by responding, "Burt, you are 71 years of age, how much longer do you expect to work?" (Ex. 12, p.194).  Defendants' explanation for State's comment, that he was inquiring into Mr. Fried's future plans, must be false because State admittedly knew that Mr. Fried had no intention of retiring from LVI prior to his comment.  (Ex. 19; Ex. 34).  State's foreknowledge regarding Mr. Fried's intentions creates, at least, an issue of fact as to its context.

### 2.   Defendants' Real Reason for Terminating Mr. Fried was Because of his Age

Issues of fact also exist as to whether the real reason for firing Mr. Fried was because of his age.  On October 19, 2010, Mr. Fried met face-to-face with State at the New York City Office.  During that meeting, State told Mr. Fried that he was going to be reassigning Mr. Fried's duties to other employees.  When Mr. Fried asked State <u>why</u> he was reassigning his job duties to other employees, State said:

- "Burt you're 71 years of age, how much longer do you expect to work?"  (Ex. 12, p.194);

13

State's admission that Mr. Fried's job duties were being reassigned because of his age is direct evidence of age discrimination.  Defendants' attempt to put State's discriminatory statement in context is futile.  Defendants contend that State was merely clarifying "how long Fried intended to retain his operational responsibilities," and/or referring "to retirement or transition planning alone."  (D. Br., p.13).  This attempt to remove the discriminatory animus from State's comment is belied by the evidence because at the time, State knew that Mr. Fried had no intention of retiring from LVI.  *See O'Reilly v. Marina Dodge, Inc.*, No. 10-CV-2977, 2011 WL 1897489, at *2 (2d Cir. May 19, 2011) ("Where, as here, the asserted nondiscriminatory explanations relate to and purport to justify allegedly age-related comments, a jury may consider the pretextual nature of the explanations in determining whether the comments are ageist and whether the adverse action would not have occurred but for the plaintiff's age.").

In this case, State and Mr. Fried did not discuss his retirement plans. (Ex. 11, p. 118-119). The cases Defendants cite are inapposite.  For example, in *Boston v. McFadden Pub., Inc.*, No. 09-CV-457 (RJH), 2010 WL 3785541 (S.D.N.Y. Sept. 29, 2010), the Court held that discussions of retirement could not give rise to an inference of discriminatory animus because the plaintiff broached the subject himself and there was no evidence that plaintiff's retirement was discussed outside that context.  *Boston* at *11.  Reliance on *Raskin v. The Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997), is similarly misplaced as there the defendant inquired directly with the plaintiff regarding his retirement plans during a discussion concerning the plaintiff's interest in a new position with the defendant.[1]

---

[1]     The additional case-law cited by Defendants is also inapplicable.  *See e.g. Vesprini v. Shaw Contract Flooring Services, Inc.*, 315 F.3d 37, 41 (1st Cir. 2002) (granting summary judgment where alleged discriminatory remarks were made between one and two years before plaintiff's termination); *Spahr v. Am. Dental Centers*, No. 03-CV-4954 (DRH) (ARL), 2006 WL 681202, at *4 (E.D.N.Y. Mar. 14, 2006) (finding that plaintiff could not create

Defendants also claim that there is no pretext because the Board made the decision to terminate.  However, each of the Individual Defendants, including State, previously swore under oath that State had made the decision to terminate Mr. Fried's employment.  Defendants further claim that there is no pretext because they are entitled to the same actor inference because the Board asked Mr. Fried to serve as interim President and CEO at the age of 70.  However, it is undisputed that State, Bagaria and Girardi were not on the Board at that time.  Therefore, Defendants cannot get the benefit of the same actor inference.

Despite Defendants' contentions that Mr. Fried's evidence of age discrimination consists of only this single age-based comment by State, the record reveals otherwise.  For example, despite being aware that Mr. Fried had no intention of retiring:

- On September 19, 2010, before he was even hired, State emailed Hogan and wrote that "[i]n the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit.  Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do.  That is not a healthy situation for Burt or LVI." (Ex. 19);

- On October 19, 2010, directly after the meeting with Mr. Fried where State stripped him of his job duties because of his age, State wrote to Simmons that during the meeting with Mr. Fried, he was clear that it was his "objective to have [Mr. Fried] truly retire." (Ex. 21);

- On November 5, 2010, State emailed his friend and told him that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (Ex. 9);

Whether State's choice of words evinces a desire to remove Mr. Fried because of his age is a question for the jury.  *See Giarratano v. Edison Hotel*, No. 08-CV-1849 (SAS), 2009 WL 464441, at *6 (S.D.N.Y. Feb. 24, 2009) (finding that the question of whether the use of the word "retirement" referred to plaintiff's age was a question to be resolved by the jury).

---

an inference of discrimination when her supervisor inquired into her retirement plans where plaintiff  "repeatedly raised the topic of retirement").

This case closely mirrors *Sciola v. Quattro Piu, Inc.*, 361 F. Supp. 2d 61 (E.D.N.Y. 2005), where the Court denied summary judgment on the plaintiff's age discrimination claim.  In *Sciola*, although the plaintiff's general manager was aware he had no intention of retiring, the general manager made the following age-based comments to plaintiff: (1) "why are you still working?" (2) "I would retire if I was you;" and (3) "Why don't you retire, you are sixty-three years old?"  *Id.* at 63-64.  The Court held that given the timing of the comments – within two years of the adverse action – a reasonable person could view the circumstances "as discriminatory as the speaker's opinion is that once an arbitrary age is reached, an individual should retire."  *Id.* at 68; *see also Schreiber v. Worldco LLC*, 324 F.Supp.2d 512, 522-523 (S.D.N.Y. 2004) (denying summary judgment where decision-makers made multiple age-based comments in the context of plaintiff's employment three or four months before plaintiff left defendant); *Hofmann v. Dist. Council 37*, No. 99-CV-8636 (KMW), 2004 WL 1936242, at *10 (S.D.N.Y. Aug. 31, 2004) *report and recommendation adopted as modified*, No. 99-CV-8636 (GEL), 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006) (denying summary judgment where decision-makers told plaintiffs that they should retire and that it would be a good idea to consider retirement); *Morris v. New York City Dept. of Sanitation*, No. 99-CV-4376 (WK), 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003) (denying summary judgment where plaintiff was told multiple times that he should retire and that he was not in defendant's future plans).

In addition to the aforementioned age-related comments, as set forth above, further evidence of age discrimination exists, such as:

- Mr. Fried worked at LVI for 24 years before State was hired (Ex. 15, ¶2).  During his time as Chairman under McNamara, his work performance was exceptional. (Ex. 6, p.25-26; Ex. 7, p.37). A few months before State was hired, Mr. Fried was told by Simmons, he was "earning every penny" of his salary (Ex. 16), and Bagaria and Girardi said that Apollo was "fortunate to have Burt Fried as interim CEO."  (Ex. 17);

- On September 14, 2010, before he was even hired, State was trying to determine how to remove Mr. Fried as Chairman of the Board; a role which did not impact State's ability to manage LVI.  (Ex. 18);

- State, who is 23 years younger than Mr. Fried, made the decision to fire him.  (Ex. 10; Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5); and

- After he was fired, Mr. Fried's job duties were reassigned to employees who range from 13 to 35 years younger than him. (Ex. 5, p.105; Ex. 7, p.93-116; Ex. 10; Ex. 36).

When looking at the totality of the circumstances, State's comment clearly "bear[s] a more ominous significance." *Shapiro v. New York City Dept. of Educ.*, 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008) (Rakoff, J.) ("[w]hile it is true that the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination, we have held that when other indicia of discrimination are properly presented . . . the jury has a right to conclude that they bear a more ominous significance").  The cases cited by Defendants are inapposite.  *See Dixon v. Int'l Fed'n of Accountants*, No. 10-1924-CV, 2011 WL 1086867, at *1 (2d Cir. Mar. 25, 2011) (finding that a single derogatory remark made by someone with no role in plaintiff's termination could not give rise to an inference of discrimination); *Crawford v. Dep't of Investigation*, 324 F. App'x. 139, 142 (2d Cir. 2009) (finding that because testimony regarding statements indicative of age-bias came from one uncorroborated source, one plaintiff could not testify with specificity regarding the discriminatory statement made to him, and the statement made to another plaintiff came over a year before his termination, plaintiffs could not avoid summary judgment).

Taken as a whole, an issue of fact exists as to whether age was the "but for" cause of State's decision to fire Mr. Fried.  *See O'Reilly*, 2011 WL 1897489, at *4 (finding that where plaintiff was subjected to ageist jokes, replaced by a younger employee, and demonstrated that an issue of fact existed as to whether defendant's justification for his termination was pretextual, a reasonable jury could conclude that age was the but for cause of plaintiff's termination);

17

*Velasquez v. Gates*, No. 08-CV-2215 (CLP), 2011 WL 2181625, at *14 (E.D.N.Y. June 3, 2011) (denying summary judgment where defendant made comments to plaintiff regarding the speed at which she worked and evidence showed that defendant's non-discriminatory reason was false).

## II.   SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S NYCHRL CLAIM

Claims under the NYCHRL must be reviewed "independently and more liberally from their federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). Courts within the Southern District have made it clear that plaintiffs in age discrimination cases need only prove that age was "a motivating factor" for the adverse employment decision, and have explicitly rejected the application of the "but for" test to claims under the NYCHRL. *See Weiss v. JPMorgan Chase & Co.*, No. 06-CV-4402 (DLC), 2010 WL 114248, at *4 (S.D.N.Y. Jan. 13, 2010); *Hird-Moorhouse v. Belgian Mission to United Nations*, No. 03-CV-9688 (RWS), 2010 WL 3910742, at *6 n. 1 (S.D.N.Y. Oct. 5, 2010). As demonstrated in Point I above, because issues of fact exist as to whether the decision to terminate Mr. Fried's employment meets the "but for" standard of *Gross*, Mr. Fried has shown that he can meet the lower standard under the NYCHRL.

Defendants contend that the NYCHRL is inapplicable to Mr. Fried because he lives in Connecticut and maintained an office there. However, the New York Court of Appeals has held that the NYCHRL applies to non-residents if the discriminatory conduct had an impact within New York City. *Hoffman v. Parade Publis.*, 15 N.Y.3d 285, 289 (2010). Based upon the examples set forth in Mr. Fried's accompanying Declaration, the decision to terminate Mr. Fried undoubtedly had an impact in New York City.

For example, until September 2003, Mr. Fried worked exclusively out of the New York City Office. (Ex. 4, p.45). From that time, through July 2006, Mr. Fried split his time between

the New York City Office and Westport Office. (Ex. 4, p.45-46; Ex. 12, p.65-67; Ex. 13). Thereafter, although Mr. Fried used the Westport Office as his base, he continued to work in New York City for LVI by generating business, overseeing projects, and attending meetings. (Ex. 15, ¶3-5).  Even when Mr. Fried was not physically present in New York City, he made almost daily phone calls to personnel stationed in the New York City Office regarding projects in New York City, or issues concerning the operation of the New York City Office. (Ex. 15, ¶4).

Leading up to Mr. Fried's termination, he was integral in securing one of the largest contracts for LVI in New York City. (Ex. 7, p.39-47).  Moreover, Mr. Fried continued to attend meetings in New York City related to LVI projects and communicated on a daily basis with the New York City Office. (Ex. 15, ¶¶ 6-8).  Until State's hire in September 2010, Mr. Fried functioned essentially as a telecommuter through his constant communications with New York City clients and LVI employees based in New York City. (Ex. 7, p. 55-56).  In addition, State's discriminatory reassignment of Mr. Fried's job duties occurred in New York City and Mr. Fried opposed this action at a Board meeting in New York City.  Also, Mr. Fried was paid by the New York City Office from LVI's New York City controlled bank account.  (Ex. 15, ¶10).  State's decision to reassign Mr. Fried's job duties, and eventually terminate him, because of his age, impacted New York City by preventing Mr. Fried from: (1) working on multi-million dollar projects he helped secure; (2) traveling to meet with LVI clients, and potential clients, in New York City; and (3) overseeing employees in the New York City Office.  As such, the NYCHRL applies to Mr. Fried.

Mr. Fried has demonstrated multiple facets in which Defendants' discriminatory conduct impacted him in New York City.  The case-law cited by Defendants is entirely inapplicable because in this case, Mr. Fried has demonstrated not only that the decision to strip him of his

duties occurred in New York City, but that this decision directly impacted him with regards to his work that occurred within New York City.[2]

A finding that the NYCHRL does not apply here would cut directly against the public policy expressed in the statute.  The New York City Council amended the NYCHRL in 2005 because the statute had "been construed too narrowly to ensure protection of the civil rights of all persons covered by the law."  Local Law No. 85 [2005] of City of NY [Restoration Act]; *see also Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 66-69 (1st Dep't 2009) ("[t]he independent analysis [of NYCHRL claims] must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's 'uniquely broad and remedial' purposes").  Dismissal of the NYCHRL claim risks doing exactly what the Restoration Act sought to prevent, namely, the narrowing of the statute's protections.

## III.   SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S RETALIATION CLAIMS

Defendants retaliated against Mr. Fried, in violation of the ADEA and NYCHRL, for complaining about discriminatory conduct by: (1) terminating his employment; and (2) terminating his daughter, Shari Dembin's, employment.  In order to establish a *prima facie* case of retaliatory discharge under the ADEA and NYCHRL, a plaintiff must show: (1) he was engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) he was discharged; and (4) there was a causal connection between the protected activity and the termination.  *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).  A plaintiff may present proof

---

[2]      *See Germano v. Cornell University*, No. 03-CV-9766 (DAB), 2005 WL 2030355 (finding NYCHRL inapplicable to plaintiff because he did not perform any job-related duties within New York City); *Salvatore v. KLM Royal Dutch Airlines*, No. 98-CV-2450 (LAP), 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) (finding no impact in New York City where plaintiffs did not allege they were subject to any adverse employment action in New York City and alleged only that isolated offensive acts occurred in New York City); *Casper v. Lew Lieberbaum & Co., Inc.*, No. 97-CV-3016 (JGK), 1998 WL 150993 (S.D.N.Y. Mar. 31, 1998) (finding no impact in New York City where none of the harassing comments were made in New York City).  Additionally, Defendants cannot rely on *Lightfoot*, No. 92-CV-6411, 1994 WL 184670 (RPP), because it is not good law after *Hoffman*.  *See* 15 N.Y.3d at 289 (finding it is clear from the statute's language that the NYCHRL applies to the inhabitants of New York City).

of causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010).  The burden that a plaintiff must meet at the *prima facie* stage is de minimis.  *Id.*  In this case, it is undisputed that Mr. Fried engaged in a protected activity, Defendants were aware of his protected activity, and that Mr. Fried and Ms. Dembin were terminated.

### A.     There Was A Causal Connection Between Mr. Fried's Termination And His Protected Activity

There is direct evidence that Mr. Fried was terminated in retaliation for his complaints of age discrimination.  Both Girardi and Schnabel testified that in direct response to Mr. Fried's November 15 complaint of age discrimination to State, the Board sent a letter to him terminating his employment. (Ex. 5, p.82-92; Ex. 8, p.138-139, 145-148; Ex. 25).  The retaliatory animus was also documented by Girardi who wrote, in his contemporaneous notes, the following: "Burt sent pre-emptive letter; ignore and send good faith letter offer to Burt Fried." (Ex. 25).  The "good faith letter" referenced by Girardi is the letter that terminated Mr. Fried's employment. (Ex. 26).

There is also circumstantial evidence that Mr. Fried was terminated in retaliation for his complaints of age discrimination.  Mr. Fried's earliest complaint of discrimination occurred at some point between October 19, 2010 and October 30, 2010 when Mr. Fried contacted multiple members of the Board to oppose State's decision to reassign his job duties because of his age. (Ex. 3, p.54-57; Ex. 8; p.44-45, 48; Ex. 12, p.194-200).  Notably, Defendants deny that Mr. Fried complained during this period.  In any event, it is undisputed that Mr. Fried complained again regarding age discrimination on both November 4 and November 15.  Regardless of which date is used as the operative date of Mr. Fried's first complaint, it is undisputed that he was

terminated less than a month after he complained of age discrimination, supporting an inference of causation. *See Newmark v. Lawrence Hosp. Ctr.*, No. 07-CV-2861 (CS), 2008 WL 5054731, at *9 (S.D.N.Y. Oct. 20, 2008) (finding that an inference of retaliation was created by a temporal proximity of approximately a month and a half between protected activity and adverse action); *see also Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").

Although Defendants claim that Mr. Fried contemplated transitioning his day-to-day responsibilities to LVI managers as early as 2005, the undisputed facts demonstrate that this is not the case. Rather, in 2005, Mr. Fried decided to step down only as President and CEO, and did so in July 2006 when he assumed the responsibilities as Chairman. Further, before State's hire, the Board never contemplated firing Mr. Fried. Moreover, while Simmons may have expressed his desire to offer Mr. Fried a consulting arrangement in his November 2, 2010 email, it is undisputed that such an offer was not made to until November 16. Finally, it is undisputed that the Board did not reach a conclusion regarding Mr. Fried's employment at LVI during the November 4 Board meeting. The mere fact that an employer considered an adverse action before it was implemented cannot support an award of summary judgment. *See Silver v. N. Shore Univ. Hosp.*, 490 F. Supp. 2d 354, 366 (S.D.N.Y. 2007) ("I reject defendants' argument that there cannot be a retaliation claim because the Institute had decided to fire Silver before he filed the EEOC charge" because defendant did not specify exactly when Mr. Fried was to be discharged).

All the cases cited by Defendants to negate an inference of retaliatory animus are entirely distinguishable. *See e.g. Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding no causal connection where the adverse employment actions were part of an

extensive period of progressive discipline which began five months before plaintiff engaged in protected activity); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 582 (S.D.N.Y. 2010) (finding plaintiff was unable to establish a causal connection where his documented and undisputed poor performance began significantly earlier than his protected activity).  In light of the direct evidence of retaliation and the temporal proximity between Mr. Fried's complaints of discrimination and his termination, issues of fact exist regarding Mr. Fried's retaliation claims.

### B.    A Causal Connection Between Ms. Dembin's Termination And Mr. Fried's Protected Activity

Mr. Fried's daughter, Ms. Dembin, began working for LVI in 1996 and had been based out of the Westport Office starting in 2003 when it opened.  Throughout the entirety of her employment, Ms. Dembin was viewed as a quality performer.  As stated above, it is undisputed that Mr. Fried complained regarding age discrimination on October 19, 2010 at the earliest, and November 4, 2010 at the latest.  It is further undisputed that some time after November 13, 2010, Ms. Dembin's name came up for the first time during a discussion of a potential reduction-in-force ("RIF") and the first time her name appeared on a list of employees who would be affected by the RIF was on December 21, 2010, less than two months after Mr. Fried's earliest complaints of age discrimination. (Ex. 4, p.161-166; Ex. 7, p.150-151; Ex. 32; Ex. 35).  Thus, an issue of fact exists based on the temporal proximity between Mr. Fried's protected activity and the decision to layoff Ms. Dembin.  *Wright v. N.Y. City Off–Track Betting Corp.*, No. 05-CV-9790 (WHP), 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008) (stating generally that an inference of retaliation may be created indirectly when the temporal proximity is under two months).

Defendants' legitimate, non-discriminatory reason for Ms. Dembin's termination was that LVI decided to close the Westport Office.  However, Ms. Dembin's inclusion in a RIF does not

automatically shield Defendants from any liability concerning the decision to terminate her employment. *Hird-Moorhouse*, 2010 WL 3910742, at *5 ("reorganization may not be used as a pretext to remove or demote a particular employee, particularly where that employee is a member of a protected class"). Defendants rely heavily on the fact that the decision to close the Westport Office was made on October 29, 2010, however, Girardi testified that as of November 16, 2010, no decision had been made to close the office. (Ex. 5, p.86-87, 95). As case-law cited approvingly by Defendants reveals, mere contemplation of an action prior to protected activity cannot negate a retaliatory inference created by the temporal proximity between protected activity and the adverse action. *See Deebs v. Alstom Transp., Inc.*, 346 F. App'x. 654, 658 (2d Cir. 2009) (finding no inference of retaliation created where plaintiff had a previous poor performance record and was terminated on the basis of that record); *see also Silver* at 366. Even if State was contemplating closure of the Westport Office in October, it is undisputed that Ms. Dembin's name was not raised at all until after November 13, 2010. Additionally, it is undisputed that the same actor who discriminated against Mr. Fried also made the decision to terminate Ms. Dembin. Finally, prior to the RIF in January 2011, LVI had multiple layoffs in previous years and Ms. Dembin was not laid off, even though she was making $85,000 per year and allegedly had duties that "could be performed by any capable person paying attention." (Ex. 4, p.157, 175-177). Considering the temporal proximity, as well as evidence demonstrating that Defendants' non-retaliatory reason is pretexual, an issue of fact exists concerning whether Defendants' legitimate, non-discriminatory reason for Ms. Dembin's termination was pretextual. *See Newmark* at *9 (denying summary judgment where plaintiff used temporal proximity to establish the *prima facie* case and there was an issue of fact concerning defendant's stated non-retaliatory reason for termination).

## IV.    THE INDIVIDUAL DEFENDANTS AIDED AND ABETTED IN THE DISCRIMINATION AND RETALIATION AGAINST MR. FRIED

Under the NYCHRL, an individual who "actually participates in the conduct giving rise to a discrimination claim" may be held liable.  *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004).  In this case, the record demonstrates that State made numerous age-related comments regarding Mr. Fried.  Even after Mr. Fried complained of discrimination to Bagaria, Simmons and Girardi, they did not investigate his complaints and continued to support State.  *See Feingold* at 158 (finding an issue of fact existed concerning individual liability where the individuals failed to take remedial action to rectify a hostile work environment and then terminated plaintiff's employment based on impermissible factors).  Finally, State, Girardi and Simmons participated in a call where it was decided that Mr. Fried should be fired for complaining about discrimination.  Accordingly, an issue of fact exists as to aider and abettor liability.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that Defendants' motion for summary judgment be denied.

Dated: June 20, 2011
     New York, New York                         Respectfully submitted,

                                                THOMPSON WIGDOR LLP

                                                By: /s/ Shaffin A. Datoo_____
                                                   Douglas H. Wigdor
                                                   Shaffin A. Datoo
                                                   Matthew D. Gorman

                                                85 Fifth Avenue
                                                New York, New York 10003
                                                Tel: (212) 257-6800
                                                Fax: (212) 257-6845

                                                *Counsel for Plaintiff*