# Exhibit 21

| | |
|---|---|
| **From:** | Scott State <scott.state@gmail.com> |
| **Sent:** | Tuesday, October 19, 2010 5:00 PM |
| **To:** | Simmons, Brian P. <BSimmons@chsonline.com> |
| **Cc:** | Hogan, Robert <Rhogan@chsonline.com> |
| **Subject:** | Re: Chairman Duties |

Brian

Spent 3 hours with Burt today. He came to me with an expanded list of duties and proceeded to explain how he is uniquely qualified to do each task. He told me that he would like to work for LVI as long as he is able, be paid $600K / yr to work 4 days a week, and that it would be a great loss to the Company if he were not involved. I was clear with him that it was my objective to have him truly retire and be just an on call resource. He countered that that would be a huge mistake, the business would suffer, and he would apply his skills elsewhere (not sure if he was suggesting he would compete). He also said the Board, other than CHS, would not support such a decision. He continues to claim that Apollo and Falcon are in his pocket.

It is clear that Burt believes that he is irreplaceable and he would like to be involved forever. The management team is growing weary of his constant meddling in every aspect of the business and continued interference. The world is very different than Burt views it. My interactions have all been very professional and I sense no animosity toward me from Burt. He just simply wants to stay involved "the way Bob allowed him to" so he can make everything work better. It is a view that, in my opinion, is not conducive to success. He and I are already diverging on long term strategy and opportunities for growth as well as how to run marketing, HR, accounting, and IT.

We should probably talk about how to handle this. His involvement is technically as a Board member so I am not sure what my say is in terms of his continued role at LVI. If he is asked by me to depart he will not go out without a fight and some broken glass although he did say at one point that if I were so short sighted to request that he would comply.

Scott

On Tue, Oct 19, 2010 at 1:58 PM, Simmons, Brian P. <BSimmons@chsonline.com> wrote:
> Scott - obviously this is unworkable. How would you like to use Burt? Legal? Collections? I
> am happy to bear the brunt of the noise on this I would like to be specific with him as to what works
> for the Board - i.e what works for you. Let me know.
>
> **Brian P. Simmons | Managing Partner**
> **CHS Capital LLC**
>  **10 South Wacker Drive, Suite 3175**
>  **Chicago, Illinois 60606**
>  **Phone 312.876.1980 | Fax 312.876.3854**
>  **Cell 312.804.0138**
>  **bsimmons@chsonline.com**
>  **www.chsonline.com**
>

---

**From:** Scott State [mailto:scott.state@gmail.com]
**Sent:** Thursday, October 14, 2010 3:36 PM

**To:** Simmons, Brian P.; Hogan, Robert
**Subject:** Chairman Duties

CONFIDENTIAL

LVIP 001751

Gentlemen

I have been going back and forth with Burt on who does what at LVI. He has been pretty unhappy that I do not seek his counsel on almost everything and has expressed that view to me and a number of other members of senior management, all whom seem to be looking for new leadership and a new direction. This morning I initiated a phone call to Burt to start a process that completely defines his future role with LVI. My position was very clear that I would like his support in dealing with legacy issues such as litigation and claims and that other support would be as needed and requested by me. I was clear to indicate that I expected no direct involvement in the day to day activities of LVI or business on ago forward basis. Like most of my discussions with Burt on his continuing role he agreed. We then slated a meeting to discuss this again next week in person while I am in NYC. Burt said he had a list of what he believed his ongoing duties were already prepared and would send it to me. Attached is that list.

Here is my dilemma, after review of this list there is really only one bullet that pertains to the discussion I had with him 10 minutes earlier yet he somehow believes his view of his duties is consistent with my view. I can't be more clear than I have been and I don't see spending $1MM / yr to have Burt reviewing air travel and BS administrative items. My inclination is to go through this list with him and tell him that there is no reason that the Chairman of a Company would do any of these things. That discussion will not go well. It seems that Burt has a goal to remain active forever and these tasks he has latched on to were apparently supported by McNamera.

I am OK making moves on a number of senior people that don't pull their weight and not looking to involve the investors in those decisions or actions. With Burt I feel I must be more careful and seek your thoughts and counsel.

Scott

LVIP 001752

# Exhibit 22

**MINUTES OF A MEETING OF
THE BOARDS OF DIRECTORS
OF
LVI PARENT CORP.
A Delaware corporation**

**Held on
November 4, 2010**

A meeting of the Board of Directors of LVI Parent Corp., a Delaware corporation ("LVI" or the "Company"), was held at the offices of Apollo Investment Corp. in New York City on Thursday, November 4, 2010.

The following directors of the Company were present at said meeting: Rajay Bagaria, Robert Buck, Richard Ferrucci, Burton Fried, Gerald Girardi, Robert Hogan, John Schnabel, Brian Simmons and Scott State (collectively, the "Board"). Also present at the meeting were John Leonard, Vice President of LVI, Paul Cutrone, Vice President and Chief Financial Officer of LVI, Theodore Reynolds, of Apollo Investment Management, Matt Kunz, of CHS Capital, and Jeffrey Smith, legal counsel to the Company.

Burton Fried acted as chairman of the meeting. Jeffrey Smith acted as secretary of the meeting and kept the minutes thereof.

Mr. Fried called the meeting to order at approximately 8:40 a.m., local time. Mr. Fried welcomed the directors and guests to the meeting. Mr. Fried confirmed that the directors had received due notice of the meeting which was issued and sent to the directors in accordance with the by-laws of LVI.

The members of the board of directors of LVI Invest Corp. (F/K/A LVI Acquisition Corporation) present at the meeting approved the minutes of the meeting of the LVI Acquisition Corporation board held on August 17, 2010.

Mr. Leonard then reviewed LVI's safety performance and presented charts comparing LVI's recordable incident rate and lost time injury rate for the third quarter of 2010 to prior periods and industry averages. Mr. Leonard also updated the Board on the Field Safety Incentive Program that the Company had implemented on August 1, 2010.

Mr. Cutrone provided a review of LVI's third quarter 2010 financial performance. The review included a discussion of revenue, EBITDA and margins relative to plan and prior year performance and analysis of G&A and working capital and a review of LVI's balance sheets and income statements. The review also included analysis of the annual debt service and availability under the Company's revolver and a review of the Company's financial covenant obligations and compliance. Mr. Cutrone discussed the reasons for variances from plan and prior year results. Mr. Cutrone also provided a report on LVI's working capital and updated the Board on the status of LVI's backlog.

Mr. Cutrone and Mr. Leonard then reviewed reports detailing accounts receivable aging and retention as of September 30, 2010.

CHI 5676039

CONFIDENTIAL

LVI 000298

The financial report was concluded with a review of General and Administrative expenses through September 2010.

Mr. State then reviewed the status of a number of key projects currently being performed by the Company, as well as projects on which LVI was bidding. As part of this review Mr. Leonard addressed the status of the 130 Liberty project.

Mr. State updated the Board on current conditions in the markets for demolition and abatement services and emergency response services. The updated included a review of performance at the Company's Northstar Recovery Services business.

Mr. State then provided the Board with an overview of trends affecting the Company's businesses and discussed the key components and issues related to the Company's strategy for 2011. The discussion included an update on various strategic relationships that the Company was considering.

Mr. State addressed a number of specific items aimed at keeping the Board apprised of developments and issues that have impacted or will impact the Company, including the move of the corporate offices to Midtown in 2011, increases in the cost of health insurance, letter of credit usage, and the need to make the Company's business development efforts more strategic, among others.

Mr. Cutrone then discussed the Company's current information technology and the development of an IT plan to address the Company's information systems requirements. The Board will be updated on these matters following further analysis.

Mr. Cutrone then explained the business purpose associated with a dividend from LVI Environmental Services of New Orleans, Inc. to LVI Services Inc. in the amount of $15 million and that the Company's proposed governance documents would require that such a dividend be approved by the Board in addition to the approval by the board of directors of LVI Environmental Services of New Orleans, Inc. Following discussion the Board unanimously granted its approval of such dividend.

Mr. Cutrone then sought the Board's approval of the retention of Deloitte & Touche to serve as the Company's auditors of the 2010 financial statements. Following Mr. Cutrone's review of the terms of the engagement and discussion of such terms, the Board unanimously approved the retention of Deloitte & Touche.

Mr. Cutrone then reviewed the Management Liability Policy handout included in the Board presentation that summarized the principal terms of the company's D&O, EPL and fiduciary coverage; discussed the upcoming lender meeting scheduled for December 2, 2010; and the status of the Company's debt rating update with S&P and Moody's.

Mr. Hogan then presented the Board with updated drafts of the Corporate Governance Guidelines and amended and restated Audit Committee and Compensation Committee Charters. After a brief discussion, it was decided that the Board would schedule a follow-up call to discuss and finalize the governance guidelines and charters.

The Board then excused the management participants in the meeting other than those that are members of the Board. At the request of Mr. Fried the Board then discussed Mr. Fried's role at the Company and its subsidiaries.

CONFIDENTIAL

There being no further business, the meeting was adjourned at approximately 2:15 p.m., local time.

Jeffrey N. Smith, Secretary of Meeting

CONFIDENTIAL

LVI 000300

# Exhibit 23

Page 1

1

2  UNITED STATES DISTRICT COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  No. 10 Civ. 9308(JSR)

5  -------------------------------------------x

6  BURTON T. FRIED,

7                          Plaintiff,

8          - against -

9  LVI SERVICES, INC., LVI PARENT CORP., CODE

10  HENNESSY SIMMONS, LLC d/b/a CHS PRIVATE

11  EQUITY V LP; APOLLO INVESTMENT CORP.,

12  SCOTT E. STATE, in his official and

13  individual capacities; BRIAN SIMMONS, in

14  his official and individual capacities;

15  RAJAY BAGARIA, in his official and

16  individual capacities; GERALD J. GIRARDI,

17  in his official and individual capacities,

18                          Defendants.

19  -------------------------------------------x

20                          June 8, 2011

                            2:10  p.m.

21

22

23

24

25

Page 2

1

2

3

4          DEPOSITION of JEFFREY SMITH via

5    teleconference, taken by the Plaintiff,

6    pursuant to Order, held at the offices of

7    Thompson Wigdor & Gilly, LLP, 85 Fifth

8    Avenue, New York, New York, before Debbie

9    Zaromatidis, a Shorthand Reporter and

10   Notary Public of the State of New York.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1

2   A P P E A R A N C E S :

3

4        THOMPSON WIGDOR & GILLY, LLP

5        Attorneys for Plaintiff

6             85 Fifth Avenue

7             New York, New York 10003

8        BY:   SHAFFIN A. DATOO, ESQ.

9

10

11       SIDLEY AUSTIN, LLP

12       Attorneys for Defendants

13            787 Seventh Avenue

14            New York, New York 10019

15       BY:   NICHOLAS DEBAUN, ESQ.

16

17

18   ALSO PRESENT:

19       BURTON FRIED

20

21

22

23

24

25

1                    SMITH

2    counsel for LVI.

3         Q.     How long have you known him?

4         A.     I first met Burt in I believe

5    November or December of 2005.  I believe

6    it was December actually it was.  It was

7    at the LVI holiday party in December of

8    2005.

9         Q.     And do you know how old Mr.

10   Fried is?

11        A.     I am not certain.

12        Q.     Okay.  How old do you think he

13   is?

14        A.     I understand from the various

15   pleadings, et cetera, that he is 71 or 72

16   years old.

17        Q.     Okay.  And are you currently

18   employed?

19        A.     Yes.

20        Q.     And where do you work?

21        A.     Sidley Austin.

22        Q.     And how long have you worked

23   there?

24        A.     Since April 1, 2008.

25        Q.     And where were you before Sidley

Page 12

SMITH

1

2      A.      I've served as counsel of LVI

3   since the time that it was acquired by the

4   Code Hennessy Simmons Capital Group.

5      Q.      And do you also have a role on

6   LVI's board?

7      A.      Not an official role, no.

8      Q.      Do you have a nonofficial role?

9      A.      No.

10      Q.      Do you serve as

11   secretary -- secretary to the board?

12      A.      Generally I go to the board

13   meetings, and when I am at the board

14   meetings I -- I serve as secretary and

15   take the minutes.  Yes.

16      Q.      Okay.  Do you have any other

17   affiliation with LVI other than being its

18   counsel and its secretary when you go to

19   the board meetings?

20      A.      No.

21      Q.      How long have you is -- sorry.

22   When you are not present at the board

23   meetings, do you know who serves as

24   secretary?

25            MR. DEBAUN:    Objection.

Page 25

1                   SMITH

2    in your opinion he did not do a good job

3    advocating or discussing his point?

4            MR. DEBAUN:    Objection.

5        A.    I don't recall any incidents.

6        Q.    Now, I think I already asked you

7    a question that assumed this, but did you

8    attend a board meeting on November 4,

9    2010?

10       A.    I did.

11       Q.    And prior to the meeting and in

12   your capacity as secretary, did you have

13   any communications with other board

14   members leading up to the November 4

15   meeting?

16       A.    No.

17       Q.    And how about in your capacity

18   as counsel?

19       A.    Yes.

20       Q.    Okay.  How many communications

21   did you have?

22       A.    I have no idea.

23       Q.    Okay.  Was it more than five?

24       A.    I have no idea.  I mean

25   I -- the -- let me just understand.  You

1                          SMITH

2          A.     I do not.

3          Q.     Okay.  And do you recall during

4     this first segment what viewpoints any

5     board members expressed?

6               MR. DEBAUN:   Objection.

7          A.     During the first segment?

8          Q.     Yes.

9          A.     I don't recall during the first

10    segment what was expressed.

11         Q.     Okay.  And during this first

12    segment -- sorry.

13         A.     No, I just don't recall, you

14    know, the -- during the first segment

15    specifically what was expressed.

16         Q.     Okay.  During the first

17    segment, how would you describe Mr.

18    Fried's demeanor?

19               MR. DEBAUN:   Could you repeat

20    the question, please?

21               MR. DATOO:   Sure.

22         Q.     During the first segment, how

23    would you describe Mr. Fried's demeanor?

24         A.     Calm, maybe a little impassioned

25    at times but generally calm.

Page 43

1                      SMITH
2     both.
3         Q.     Okay.  And --
4              MR. DEBAUN:   Mr. Smith, I
5     caution you to let Mr. Datoo finish his
6     questions before you respond to that.
7              THE WITNESS:  Yes.
8         Q.     During this first session, did
9     Mr. Fried say anything about age
10    discrimination?
11             MR. DEBAUN:   Objection.
12        A.     I don't recall.
13        Q.     Do you recall during any segment
14    if Mr. Fried said anything about age
15    discrimination?
16        A.     Yes, he did.
17        Q.     Okay.  And do you recall what he
18    said about that?
19        A.     He described a conversation he
20    had with Mr. State at that meeting in
21    October and Mr. Fried at the end of that
22    description of the -- of a comment made
23    that he -- he said was made by Mr. State.
24    After describing that he said something
25    like that is -- that is age discrimination

Page 44

                           SMITH
 1
 2   or something like that.
 3        Q.      And did Mr. Fried tell you what
 4   comment he said Mr. State made?
 5        A.      Yes.  He told the board that
 6   he -- during the course of this
 7   conversation with Mr. State when Mr. State
 8   had advised that a number of
 9   responsibilities that Mr. Fried had said
10   that he had previously handled that Mr.
11   State thought were more appropriately
12   handled by other people within the
13   organization because their roles were more
14   appropriate to the particular task, that
15   when Mr. Fried objected to that Mr. -- he
16   said Mr. State made a comment something
17   like:  Burt, you're 72 years old.  How
18   long do you want do this stuff or
19   something like that.  How long do you want
20   do this? And that is when Mr. Fried said
21   that is age discrimination.
22        Q.      And was Mr. --
23        A.      Something like that.
24        Q.      Was Mr. State present when Mr.
25   Fried made that statement to the board?

1                    SMITH

2    lines.  I don't remember -- I just don't

3    have a recollection, you know,

4    specifically, but, you know, there was

5    discussion around, you know, different

6    things he could do, you know, I think

7    generally with the view, you know, subject

8    to being something that Mr. State wanted

9    him to, you know, be doing and involved

10   in, but I don't remember specifics.

11        Q.    Okay.  Now, other than what you

12   just testified to, do you recall any other

13   comments that were made at the board

14   meeting about Mr. Fried?

15        A.    It is seven months ago.  No, I

16   don't have any specific recollections.

17        Q.    Okay.  Was there an

18   investigation conducted into Mr. Fried's

19   allegation or mention of age

20   discrimination?

21        A.    An investigation?

22        Q.    Yes.

23        A.    Could I ask counsel a question?

24        Q.    Probably you should answer my

25   question first.  I am sure he will cut you

Page 82

1                    SMITH

2   off --

3            MR. DEBAUN:   Are you able to

4   answer --

5        Q.   I am sure he will cut you off if

6   you start discussing any attorney-client

7   information if that is a concern.

8            MR. DEBAUN:   Well, it is a yes

9   or no question.  Are you able to answer it

10  that way?

11       A.   Repeat the question.

12       Q.   Was an investigation conducted

13  into Mr. Fried's allegation or mention of

14  age discrimination?

15       A.   No.

16       Q.   Okay.  Why not?

17           MR. DEBAUN:   Objection.

18           THE WITNESS:   Should I answer

19  it?

20           MR. DEBAUN:   Are you able to

21  answer that question without revealing

22  attorney-client communications or work

23  product?

24       A.   I mean I don't think anyone felt

25  there was a basis for the claim for age

1                     SMITH

2          C E R T I F I C A T I O N

3

4

5

6      I, DEBBIE ZAROMATIDIS, a Shorthand

7    Reporter and a Notary Public, do hereby

8    certify that the foregoing witness,

9    JEFFREY SMITH, was duly sworn on the date

10   indicated, and that the foregoing is a

11   true and accurate transcription of my

12   stenographic notes.

13      I further certify that I am not

14   employed by nor related to any party to

15   this action.

16

17

18

19

20

21

22

       - - - - - - - - - - - - - - - - - - - - - - - - - -

23              DEBBIE ZAROMATIDIS

24

25

Exhibit 24

**T|W|G**

## Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

85 Fifth Avenue
New York, NY 10003
Tel 212.257.6800
Fax 212.257.6845
www.twglaw.com

**Douglas H. Wigdor**
dwigdor@twglaw.com

November 15, 2010

**CONFIDENTIAL COMMUNICATION**
**FOR SETTLEMENT PURPOSES ONLY**

### VIA HAND DELIVERY

Mr. Scott E. State
President and Chief Executive Officer
LVI Services, Inc.
80 Broad Street
New York, NY 10004

      Re:    Burton T. Fried

Dear Mr. State:

We represent Burton T. Fried, the highly dedicated and long-standing Chairman and former Chief Executive Officer ("CEO") of LVI Services, Inc. ("LVI" or the "Company"), in connection with his employment with the Company. Specifically, Mr. Fried has retained our Firm in connection with recent attempts by the Company to unlawfully strip Mr. Fried of all his substantive job duties, including those services he has historically been performing as Chairman since 2006, and drastically reduce his role in the Company on account of his age and in breach of Mr. Fried's employment contract, the terms of which are memorialized in a November 16, 2005 contract with Mr. Fried (the "Contract").

As you are well aware, Mr. Fried is a long-tenured and exceedingly valuable employee of LVI, having served as the Company's CEO for two distinct periods totaling over 20 years. During Mr. Fried's tenure as CEO, he built LVI into the multi-million dollar company it is today and contributed immeasurably to the Company's years of success. Now, despite Mr. Fried's long track record of success and strong desire to continue as Chairman, the Company abruptly and unlawfully seeks to relegate Mr. Fried to the role of a mere figurehead on account of the fact he is seventy years of age. Because of his steadfast commitment to the Company and desire to remain with the Company that he has worked hard to build, this letter seeks to provide you with an opportunity to resolve this matter without commencing litigation against LVI.

Throughout his tenure with LVI, Mr. Fried has been indispensable to the Company's annual growth in both profits and revenue, presiding over the sale of the Company multiple times to

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Mr. Scott E. State
11/15/2010
Page 2

**CONFIDENTIAL COMMUNICATION**
**FOR SETTLEMENT PURPOSES ONLY**

new investors. As a result of Mr. Fried's efforts engineering these sales, LVI management has benefited greatly by reinvesting capital from these sales. The latest of these sales occurred on November 16, 2005, when Code Hennessy Simmons ("CHS") purchased a majority equity interest in LVI. On that same date, Mr. Fried entered into an employment contract with the Company where Mr. Fried agreed to remain as Company President and CEO until a replacement could be found. In recognition of Mr. Fried's expertise in the area and the respect he was formerly accorded, Mr. Fried was entrusted with the task of finding his own replacement. After Mr. Fried conducted interviews of all the candidates for the position and selected the finalists, both Mr. Fried and CHS agreed that Bob McNamara should replace Mr. Fried as CEO.

In June 2006, Mr. McNamara officially replaced Mr. Fried as CEO. In recognition of Mr. Fried's indispensability to the Company, Mr. McNamara conditioned his acceptance of the position on Mr. Fried continuing with the Company in the position of Chairman. Mr. Fried indeed stayed on as the Company's Chairman, accepting a pay cut to $600,000 a year and agreeing to work four days a week. That arrangement lasted only a week, however, as Mr. Fried quickly returned to full-time duty, albeit while continuing to honor his prior agreement to accept a reduced salary. Mr. Fried worked five days a week as the Chairman of LVI until Mr. McNamara resigned, effective April 2010. During that time, the Company's Earnings Before Interest, Taxes, Depreciation and Amortization fell from $65 million in Mr. Fried's last full year as CEO to only $20 million in 2009. Upon Mr. McNamara's resignation, the Company again looked to Mr. Fried's expertise and leadership by asking him to step in as interim CEO and conduct the search for his replacement. At that time, the Company increased Mr. Fried's salary to its former $750,000 level, with Brian Simmons, Managing Partner of CHS Capital LLC and member of the LVI Board of Directors, telling Mr. Fried in a May 12, 2010 email that "you are earning every penny of [your salary]."

Mr. Fried continued his invaluable service to the Company throughout his term as interim CEO by leading the Company through the period of negotiation of a recapitalization and restructuring to eliminate $100 million in debt. After the restructuring and recapitalization closed, CHS specifically applauded Mr. Fried's work during that process and informed Mr. Fried that the Company survived only because of his leadership during the negotiation period. The positive sentiment expressed by CHS and Mr. Simmons dissipated in mere months as the Company, and you, as its new CEO, in addition to individual directors, came to believe that Mr. Fried's age necessitated removal of all his day-to-day responsibilities.

As he had done in the previous search for a CEO, Mr. Fried spearheaded the efforts earlier this year to find someone to take over for him on a permanent basis. After he interviewed about ten candidates, Mr. Fried provided your resume to Russell Reynolds, the firm retained by LVI as the recruiter for the CEO position, as well as Brian Simmons. From there, your resume was passed on to Apollo and Falcon, the two private equity firms poised to come on as equity partners with CHS. As a result of Mr. Fried's introductions, you became the first choice to fill the CEO position. Mr. Fried's efforts on your behalf did not stop after putting your name forward as an

BF_067

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Mr. Scott E. State             **CONFIDENTIAL COMMUNICATION**
11/15/2010                   **FOR SETTLEMENT PURPOSES ONLY**
Page 3

interested candidate. Indeed, both you and the Company sought Mr. Fried's advice during the contract negotiation process as CHS became concerned that you would not accept the position due to your worries that Mr. Fried would play too big of a role in the Company. Mr. Fried allayed the concerns of both you and CHS, convincing you that you would operate as CEO and that Mr. Fried would support you fully in the role of Chairman. Due to Mr. Fried's tireless efforts, you accepted the position as CEO and began work on or about October 1, 2010.

On October 19, 2010, just shortly after you commenced employment with LVI, Mr. Fried met with you to present you with a list of the responsibilities Mr. Fried had as Chairman under Mr. McNamara. Instead of discussing these responsibilities with Mr. Fried, you informed him that his duties would be transitioned to other LVI managers and that, effective immediately, he would cease working on various projects that he had been effectively managing prior to your hiring. After Mr. Fried sought a reason for this drastic and unnecessary step, you told Mr. Fried, "You are 71 years old. How long do you expect to continue working?" Mr. Fried immediately left the meeting due to this shocking and obviously discriminatory conduct. Although Mr. Fried hoped that this discriminatory animus was not shared by others at LVI and gave you every opportunity to repudiate your discriminatory comment, the discriminatory and demeaning treatment of Mr. Fried has continued to this day. To Mr. Fried's disappointment, you took further action to humiliate Mr. Fried and minimize his role at the Company by directing senior managers not to call Mr. Fried and to route all inquiries to Mr. Fried through you.

While you may have been the only one to outwardly express your belief that Mr. Fried's age necessitates removal of all his job duties, others at LVI obviously harbor the same animus. For instance, an email from Mr. Simmons to Mr. Fried on November 2, 2010 expressed his opinion that Mr. Fried should be phased out of the Company due to his age. Indeed, at the same time that Mr. Simmons commended Mr. Fried for selecting you as CEO, he told Mr. Fried that all of his responsibilities should be distributed to other LVI managers. Mr. Simmons concludes his email by revealing his true motivations behind reducing Mr. Fried's responsibilities, telling him that "while the team has relied on you for advice and counsel for many years, they must now take on true ownership of daily challenges, be asked to produce results on their own, and be evaluated based upon the outcome." Mr. Simmons clearly shares your belief that Mr. Fried's age necessitates pushing him to the background and giving away his responsibilities to younger employees.

Most recently, at a closed session of the LVI Board of Directors, Mr. Fried gave an impassioned speech detailing his years of outstanding service to the Company and expressing his desire to continue as LVI Chairman with substantive responsibilities. As a courtesy, Mr. Fried again gave you a chance to repudiate your discriminatory comment, yet, you did not take the olive branch offered by Mr. Fried. Instead, you squandered this chance to begin the process of rectifying the situation by refusing to deny that you had indeed told Mr. Fried that his age required his constructive ouster from the Company.

BF_068

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Mr. Scott E. State                         **CONFIDENTIAL COMMUNICATION**
11/15/2010                                 **FOR SETTLEMENT PURPOSES ONLY**
Page 4

Although Mr. Fried has devoted a substantial portion of his life to LVI, the Company now evinces a total lack of respect for Mr. Fried's years of steadfast and exemplary service. At his present age, Mr. Fried has shown no signs of slowing down and has expressed only an unwavering commitment to staying with the Company in more than the "advisory" capacity LVI now envisions him in. In spite of Mr. Fried's vitality, the Company seeks merely to exploit Mr. Fried's relationship with Richard Ferrucci and Arch Surety ("Arch" or the "Surety") in order to ensure that the $200 million surety line remains open to LVI. Now, the Company attempts to have it both ways by distributing all of Mr. Fried's substantive responsibilities to younger employees but still leaving Mr. Fried at LVI with the ceremonial title of Chairman in order to take advantage of his ten year relationship with the Surety. Mr. Fried will not lend his name and reputation to any effort to represent to the Surety that he is anything less than a vibrant and active executive involved in approval of projects before a bond request is made to Arch; nor, will Mr. Fried stand by idly as LVI promotes his active participation in the Company in its press releases while behind the scenes the Company seeks only to relieve him of any meaningful role.

As the Company is no doubt aware, stripping Mr. Fried of his responsibilities, including those additionally assigned duties and responsibilities he has performed since Mr. McNamara joined the Company in June 2006, would also be in breach of the Contract he signed with LVI on November 16, 2005. As per the terms of this agreement, Mr. Fried is entitled to maintain the position of Chairman, with "primary responsibility for strategic growth." Contrary to this promise, the Company now seeks to make Mr. Fried merely your "on call resource" and to give you full discretion to decide "if there are areas of the business or specific situations where [you] want[] [Mr. Fried's] direct involvement." Providing you with such unlimited discretion is directly contrary to Mr. Fried's employment agreement, a point realized by Mr. Simmons as he tells Mr. Fried in his November 2 email that he wishes "to replace [his] existing employment arrangement with a consulting agreement." Mr. Simmons clearly realizes the illegality of the proposed changes in Mr. Fried's employment and is unsubtly attempting to make an end run around the clearly defined parameters of Mr. Fried's employment contract.

Based on our knowledge of LVI's callous and discriminatory conduct to date, it is abundantly clear that the Company is pursuing a course of conduct which constitutes unlawful age discrimination and violates Mr. Fried's employment contract. Although Mr. Fried's devotion to the Company is unwavering and he would prefer to remain with LVI in his present, undiminished capacity, he remains committed to pursuing any and all legal remedies in order to ensure that he is fully made whole as a result of the Company's illegal and discriminatory action. As noted above, I am writing to provide the Company with the opportunity to avoid a costly legal action that will result in substantial liability for LVI. To this end, I ask that you contact me to discuss the possible resolution of this matter as soon as possible, but by no later than November 22, 2010.

Finally, I trust that you will treat this letter with the appropriate degree of discretion so that Mr. Fried's professional relationships are not harmed in any way by disclosure of his decision to seek

BF_069

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Mr. Scott E. State                    **CONFIDENTIAL COMMUNICATION**
11/15/2010                            **FOR SETTLEMENT PURPOSES ONLY**
Page 5

legal representation. In addition, I remind you of your legal obligation to preserve all documents that may be relevant to this matter, including but not limited to all relevant emails, voicemails, telephone recordings, video surveillance recordings, and other communications that may be relevant to this matter. If you have not done so already, please take immediate steps to preserve any material related to this matter, whether in electronic or paper form, including immediately implementing the following:

- Hold in abeyance any existing document retention and/or destruction policies or practices, or any other actions that would result in the deletion of any material;

- Stop the automatic deletion of emails and other electronic data;

- Stop the recycling or reuse of computer backup tapes;

- Secure and preserve all recorded telephone conversations and email correspondence of yourself and other decision-makers responsible for the circumstances of my client's employment;

- Maintain all electronic data in reasonably accessible form, including ceasing any automatic archiving to backup tapes; and

- Secure and preserve all computer or electronic hardware, including all hard drives, laptops, PDA's, Blackberry's or any other similar equipment and devices.

I await your response.

Sincerely,

Douglas H. Wigdor

BF_070

Exhibit 25

11/16 | LVI   BOD Call
- Ferucci, CHS (Simmons & Horn), Falcon
  AIC (Girard & Reynolds), Buck (Schnall),
  (Not present), Scott State

Schnall:
- Burt is open to some role w/ day to day
  Responsibilities
- insists this is due to his "Age"

Burt - Sent Preemptive Letter; Ignore & Send
  Good faith letter other to Burt Fried

Next Steps
1. Send out Letter to Burt
2. Treatment for Burt
   - E-mail Acct.
   - Westport office
   - Compensation
   - Treat his departure as we would Treat any other employee
   ( + Maintain Status Quo until 11/30
   → General Counsel Relocate eventually to Bedford

3. Fuschi - Demonstrate Synergy; Ability to De-Lever
   + Improve Coverage Ratios; performance

Other
1. Sr. Manager Offsite in Denver - week of 11/15

AIC 00000236

# Exhibit 26

| From: | Simmons, Brian P. <BSimmons@chsonline.com> |
|---|---|
| **Sent:** | Tuesday, November 16, 2010 4:08 PM |
| **To:** | 'BFried@lviservices.com' |
| **Cc:** | 'Rajay Bagaria' <RBagaria@apolloic.com>; 'John Schnabel' <JSchnabel@falconinvestments.com>; Gerald J. Girardi <GGirardi@ApolloIC.com>; Teddy Reynolds <reynolds@apolloic.com>; Hogan, Robert <Rhogan@chsonline.com>; Richard F. Ferrucci (mknipfing@rffassociates.com); 'Buck, Bob' <BBuck@beaconroofingsupply.com>; 'jnsmith@sidley.com' |
| **Subject:** | Transition to Chairman |
| **Attach:** | Fried (1).pdf; Fried (2).pdf |

Burt - attached is a letter from me and an agreement reflecting the discussions we have had regarding your role as Chairman of the Board.  Please review - we look forward to hearing from you.

# chs|capital

**Brian P. Simmons | Managing Partner**
**10 South Wacker Drive, Suite 3175**
**Chicago, Illinois 60606**
**Phone 312.876.1980 | Fax 312.876.3854**
**Cell 312.804.0138**
**bsimmons@chsonline.com**
**www.chsonline.com**

**Assistant:**
**Michelle Karlin**
**312.876.9410**
**mkarlin@chsonline.com**

This email may contain material that is confidential and/or privileged and is for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

CONFIDENTIAL



**chs|capital**

Brian P. Simmons, Managing Partner

November 16, 2010

Burton Fried
Chairman of the Board
LVI Parent Corp.
877 Post Road East, Suite #4
Westport, CT 06880

Dear Burt:

Following our meeting November 4, and our subsequent discussions with you, management and among board members, I have been asked to finalize the scope of your responsibilities, compensation and benefits as you transition to non-executive chairman and consultant.

Effective 11/30/10 your employment with LVI Services Inc. will terminate. You will continue your relationship with LVI as non-executive Chairman of the Board of LVI Parent Corp. In addition, we are offering you the position of consultant to LVI Services on the terms set forth in the attached letter agreement.

As Chairman of the Board of LVI Parent Corp. we expect that you will participate in all board meetings, work with LVI CEO, Scott State, to establish meeting agendas and coordinate the presentations. In addition, we ask that you serve on the Audit Committee.

As a consultant to LVI Services, your consulting assignment would initially consist of providing continued support in the Keesler Federal Credit Union litigation, the litigation by the Estate of Daniel Sitomer and the Duane Morris LLP litigation. In addition, you would be asked to provide assistance and support from time to time on various projects as requested by Scott State based upon the challenges and opportunities facing LVI and your ability to provide assistance. You would be paid an annual retainer of $150,000 plus $250 per hour for time spent in your consulting role. You would also be entitled to reimbursement of all reasonable business expenses incurred by you as a result of your activities as a consultant. The offer of the consulting assignment is contingent on your agreement to the terms and conditions set forth in the attached letter agreement.

Burt, the board would like for this transition to be as smooth as possible. Please review the attached consulting agreement and execute and return it to my attention no later than December 7th 2010.

Sincerely,

Brian P. Simmons
On behalf of the Board of Directors of
LVI Parent Corp.

CONFIDENTIAL

LVIP 001947

LVI Services Inc.
80 Broad Street
New York, NY 10004

November 16, 2010

Burton T. Fried
149 Roseville Road
Westport, Connecticut 06880

Dear Burt:

This letter sets forth our agreement with respect to your changing role with LVI Services Inc. ("LVI"). Effective November 30, 2010, your employment with LVI will terminate and you will be offered the opportunity to continue your relationship with LVI as a consultant, providing the services set forth in this agreement, subject to the terms and conditions set forth herein.

Your consulting assignment will begin on December 1, 2010 and will consist of: (1) providing continued support in the Kessler Federal Credit Union litigation, the litigation by the Estate of Daniel Sitomer, and the Duane Morris LLP litigation and (2) providing assistance and support from time to time on projects as requested by Scott State (the "Consulting Services"). The scope of the Consulting Services may be amended at LVI's sole discretion. This agreement and the Consulting Services may be terminated by you or by LVI at any time by providing thirty (30) days' written notice to the other party.

You will receive a retainer of $150,000 per year, payable in regular advance quarterly installments of $37,500 for the Consulting Services. Additionally, you will be paid at the rate of $250.00 per hour for actual hours worked on the Consulting Services within thirty (30) days of your submission of an invoice to LVI. Should LVI decide to terminate the Consulting Services on or before February 28, 2011, you will be allowed to retain the first retainer installment of $37,500 paid in advance for your services. You will be solely responsible for payment on your behalf of any federal, state and local income tax withholding, social security taxes, workers' compensation coverage, unemployment insurance, liability insurance, health and/or disability insurance, retirement benefits or other welfare or pension benefits, and/or other payments and expenses. As a consultant, you will not be eligible to receive any compensation or benefits other than as set forth in this agreement. You shall, however, be entitled to payment or reimbursement of all reasonable business expenses incurred by you as a result of your performing the Consulting Services with the prior consent of LVI.

In consideration of this offer of a consulting agreement and for other good and valuable consideration, receipt of which is hereby acknowledged:

(i)     You knowingly and voluntarily release and forever discharge LVI Parent Corp., LVI and its affiliates (together with all their other direct and indirect subsidiaries, and their successors, past, current or future shareholders, directors, officers, and employees, and any one else connected with them, collectively referred to herein as the "LVI Releasees") to the extent permitted by law, of and from any and all claims, known and unknown, asserted or unasserted, you have or may have against the LVI Releasees as of the date of execution of this

agreement, arising out of or in any way connected to your employment with LVI or the termination of your employment with LVI, including, but not limited to, any alleged violation of any federal, state or local civil or human rights law, regulation or ordinance, and you further release and waive any other claim or cause of action recognized in law or in equity, which you had or now have against the Company.

(ii)      You expressly recognize and agree that, by entering this agreement, you are waiving any and all rights or claims that you may have arising under the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act of 1990, which have arisen on or before the date of the execution of this agreement. By your signature below, you warrant and represent that (1) in return for this agreement, you will receive benefits beyond those to which you were already entitled before entering this agreement; (2) you were advised (by this Agreement) to consult with an attorney before signing this agreement; (3) you have been given twenty-one (21) days to review this ADEA release and waiver and seven (7) days to revoke it and, (4) you have voluntarily elected to execute this agreement. Moreover, should you wish to revoke this agreement, you must provide written notice of revocation to Scott State by no later than the seventh day after you have signed this agreement.

While you are providing the Consulting Services, you will have access to documents or information that are confidential and proprietary to LVI. Except in the performance of services to LVI, or with the prior written consent of LVI, you agree that you will not, at any time, while providing the Consulting Services or thereafter, disclose to any person or entity or use for your benefit or the benefit of others, any such document or information obtained by you.

You further understand and agree that LVI has legitimate interests in protecting its goodwill, its relationships with major customers, contractors and subcontractors, employees and other business partners, and in maintaining its trade secrets, and hereby agree that the following restrictions are appropriate to protect such interests and are narrowly construed to meet such goals. Accordingly, at all times you are providing the Consulting Services to LVI and at all times during the period of twelve (12) months following the date of the termination of the Consulting Services (the "Restricted Period"):

(i)      You will not, directly or indirectly, without the prior written permission of LVI, solicit, attempt to solicit or assist anyone else in soliciting, any person or entity who is or has been a customer, supplier, contractor, subcontractor or any other business relation of LVI, or any of its subsidiaries (collectively, "Business Relationships") to (A) cease doing business with LVI or any of its subsidiaries, (B) alter or limit its business relationship with LVI or any of its subsidiaries, or (C) purchase, other than from LVI or any of its subsidiaries, any service or product which compete with any of the services or products offered by LVI or its subsidiaries. For purposes of this paragraph, Business Relationships is defined as persons or entities that have engaged LVI or any of its subsidiaries or for which LVI had an outstanding bid for work during the three years immediately prior to the termination of the Consulting Services and (a) with whom you have had contact during your association with LVI or any of its subsidiaries or (b) of whom you learned though your association with LVI or any of its subsidiaries; and

(ii)      You will not, directly or indirectly, without the prior written permission of LVI, (A) solicit, attempt to solicit or assist anyone else to solicit any director,

2

LVIP 001949

member, officer or employee to terminate his or her association with LVI or any of its subsidiaries or (B) solicit, attempt to solicit, hire or otherwise retain the services of any director, member, officer or employee (whether on a full-time basis, part-time basis or otherwise and whether as an employee, independent contractor, consultant, agent, advisor or in another capacity), in each case, except pursuant to general advertising not specifically targeted at employees of the company or any of its subsidiaries.

You further agree that you will not, directly or indirectly, make (or cause to be made) to any person or entity any knowingly disparaging, derogatory or other negative statement about LVI Parent Corp., LVI, any of their subsidiaries or affiliates, or any of their officers, directors, employees, partners, shareholders or agents (or any of their services or products).

As you will not be engaged by LVI on a full-time, exclusive basis, you will retain the right to provide services to the general public during your engagement with LVI. During the time that you are providing the Consulting Services, you will disclose to LVI the identity of any entity or individual for which you intend to provide services prior to your providing such services. You will exercise your best judgment as to the amount of time to be devoted to and the location of the Consulting Services, provided that you will agree to make yourself available at reasonable times and for reasonable periods to fulfill your obligations under this agreement. LVI intends to close its offices in Westport, Connecticut. If the nature of the Consulting Services requires that such services be performed at LVI's premises, LVI will provide you with office space at one of its facilities to allow you to perform the Consulting Services.

Other than your providing the Consulting Services, you will not have authority to act on behalf of, or otherwise bind LVI or its affiliates. Accordingly, you may not enter into any agreement on behalf of, or purport to bind LVI or its affiliates, or represent to any person that you have the power to create any obligation, express or implied, on behalf of LVI or its affiliates without LVI's express prior written consent. The parties intend to create by this agreement the relationship of an independent contractor and not an employer-employee relationship. Nothing in this agreement is intended or shall be deemed to create any partnership, agency or joint venture relationship between or among the parties.

This agreement will be governed by the laws of the State of New York, without regard to its conflict of laws provisions. Any dispute or action under or relating to this agreement may be brought in any state or federal court located in the State of New York. You hereby consent to and confer personal jurisdiction over you by any such court.

3

If you agree to the terms and conditions set forth in this agreement, please sign on the line provided below and return the agreement to Scott State on or before December, 7th 2010.

Very truly yours,

Scott E. State

CEO, LVI Services Inc.

Accepted and agreed to:

_____     _____
Burton T. Fried                                              Date

4

LVIP 001951

Exhibit 27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                     :   **ECF CASE**

BURTON T. FRIED,                        :
              Plaintiff,       :
                                       :   No. 10 Civ. 9308 (JSR)
        v.                       :
                                       :   **SCOTT E. STATE'S OBJECTIONS**
LVI SERVICES, INC., LVI PARENT CORP.,   :   **AND ANSWERS TO PLAINTIFF'S**
CODE HENNESSY SIMMONS LLC d/b/a/ CHS  :   **FIRST SET OF**
PRIVATE EQUITY V LP; APOLLO          :   **INTERROGATORIES**
INVESTMENT CORP.; SCOTT E. STATE, in his ::
official and individual capacities; BRIAN
SIMMONS, in his official and individual capacities;
RAJAY BAGARIA, in his official and individual
capacities; GERALD J. GIRARDI, in his official
and individual capacities,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the Southern District of New York, Scott E. State

("State"), by his attorneys, Sidley Austin LLP, answers and makes his written objections to

Plaintiff's First Set of Interrogatories (the "Interrogatories") as set forth below.  State's response

to any of the Interrogatories is not, and shall not be construed as, an admission of the relevance

or admissibility into evidence of any such response or of the propriety of any of Plaintiff's

Interrogatories.

       **GENERAL OBJECTIONS, COMMENTS AND QUALIFICATIONS**

       In addition to the specific objections separately set forth in response to certain

Interrogatories, State asserts the following General Objections, which are incorporated into each

specific answer and objection, whether or not specifically referred to therein.

1.    State objects to the "Definitions and Instructions" section of the Interrogatories to the extent that Plaintiff's definitions and instructions contradict or go beyond the scope of permissible discovery under the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of New York.

2.    State makes the objections and provides the answers contained herein without waiver of any right or privilege to object to the introduction into evidence, in this or any other action or proceedings, of any information contained in any of the documents or the introduction of any of the documents themselves, upon grounds of competency, relevancy, hearsay, authenticity or other proper grounds.  State reserves all rights to object to the use of any of the information produced (now or in the future) in response hereto, in any subsequent proceedings, including the trial of this or any other action.  State expressly reserves the right to object to further discovery into any subject matter in the Interrogatories.  In responding, State does not admit the factual or legal premise of any Interrogatory.

3.    State responds to the Interrogatories based on the best of his present knowledge, information and belief.  State's response is at all times subject to such additional or different information that discovery or further investigation may disclose.  State reserves the right to supplement and update his responses to the Interrogatories.  Any supplemental response provided to the Interrogatories shall not function as a waiver of any privilege or objection State has or may assert herein.

4.    State objects to the Interrogatories to the extent that they seek information that is subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint-defense privilege, and/or any other

2

applicable privileges. State intends to and does claim such privilege(s) with respect to all such information.

These General Objections are incorporated into each of the responses set forth below and shall have the same force and effect as if set forth in full in response to each individual request.

*          *          *

## SPECIFIC OBJECTIONS AND ANSWERS

**Interrogatory No. 1:**

Identify all person(s) with knowledge or information regarding the allegations as set forth in the Complaint.

**Objections to Interrogatory No. 1:**

State objects to Request No. 1 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 1:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

Individuals who have knowledge or information regarding the allegations in the Complaint and/or Charge of Discrimination are:

> Scott State
> John Leonard
> Paul Cutrone
> Robert McNamara
> Members of the Board of Directors of LVI Parent Corp.

3

**Interrogatory No. 2:**

Identify all directors, officers, partners, managers and/or employees of any of the Corporate Defendants who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to transition Plaintiff's job duties to other LVI managers.

**Objections to Interrogatory No. 2:**

State objects to Request No. 2 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.  For example, the phrase "have information or knowledge concerning the reasons for, and the process leading to . . . transition Plaintiff's duties to other LVI managers" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 2:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The LVI employee responsible for the decision to transition Plaintiff's job duties to other LVI managers is Scott State.

**Interrogatory No. 3:**

Identify all directors, officers, partners, managers and/or employees of any of the Corporate Defendants who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to replace Plaintiff's Employment Agreement with a consulting agreement.

**Objections to Interrogatory No. 3:**

State objects to Interrogatory No. 3 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. State further objects to Interrogatory No. 3 on the grounds that it assumes facts that are not in

evidence, such as the existence of a decision "to replace Plaintiff's Employment Agreement with a consulting agreement."

**Answer to Interrogatory No. 3:**

Without waiving the foregoing objection, and to the extent not objected to therein, State answers:

The LVI employee responsible for the decision to offer Plaintiff a consulting agreement is Scott State.

**Interrogatory No. 4:**

Identify all directors, officers, partners, managers and/or employees of any of the Corporate Defendants who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to terminate Plaintiff's employment.

**Objections to Interrogatory No. 4:**

State objects to Interrogatory No. 4 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge" is vague, ambiguous and lacks sufficient precision to permit a response.

**Answer to Interrogatory No. 4:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The LVI employee responsible for the decision to terminate Plaintiff's employment with LVI is Scott State.

**Interrogatory No. 5:**

Identify all directors, officers, partners, managers and/or employees of the Corporate Defendants who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to terminate Shari Dembin's employment with LVI.

**Objections to Interrogatory No. 5:**

State objects to Interrogatory No. 5 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge" is vague, ambiguous and lacks sufficient precision to permit a response.

**Answer to Interrogatory No. 5:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The LVI employee responsible for the decision to terminate Shari Dembin's employment with LVI is Scott State.

**Interrogatory No. 6:**

Identify all directors, officers, partners, managers and/or employees of any of the Corporate Defendants who determined the terms and conditions of Plaintiff's employment at LVI, or otherwise have knowledge of the terms and conditions of Plaintiff's employment, including, but not limited to, the authority to set Plaintiff's compensation, enter into employment agreements with Plaintiff, and/or terminate Plaintiff's employment.

**Objections to Interrogatory No. 6:**

State objects to Interrogatory No. 6 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

For example, the phrase "who otherwise have knowledge" is vague, ambiguous, and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 6:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

Employees of LVI responsible for determining the terms and conditions of Plaintiff's employment at LVI are Scott State and, previously, Robert McNamara.

**Interrogatory No. 7:**

Identify all directors, officers, partners, managers and/or employees of the LVI Defendants who received any complaint, communication or report from Plaintiff, whether formal or informal, written or verbal, regarding the discriminatory actions taken against Plaintiff.

**Objections to Interrogatory No. 7:**

State objects to Interrogatory No. 7 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. State further objects to Interrogatory No. 7 to the extent that it assumes facts that are not in evidence.

**Answer to Interrogatory No. 7:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

Scott State and members of the Board of Directors of LVI Parent were present at the Board of Directors meeting in which Plaintiff raised a complaint of discrimination against State.

**Interrogatory No. 8:**

Identify all directors, officers, partners, managers and/or employees of the Corporate Defendants who have knowledge of the remark about Plaintiff's age made to Plaintiff on or about October 19, 2010 by Defendant State.

**Objections to Interrogatory No. 8:**

State objects to Interrogatory No. 8 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. State further objects to Interrogatory No. 8 to the extent that it assumes facts that are not in evidence, such as the existence of a remark "about Plaintiff's age."

**Interrogatory No. 9:**

Identify all directors, officers, partners, managers and/or employees of the Corporate Defendants who participated in the recruitment and hiring process of Defendant State as Chief Executive Officer of the Company.

**Objections to Interrogatory No. 9:**

State objects to Interrogatory No. 9 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who otherwise have knowledge of" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 9:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The employee of LVI who was primarily involved in the hire of Scott State as Chief Executive Officer of LVI was Burton Fried.

**Interrogatory No. 10:**

Identify all directors, officers, partners, managers and/or employees of the LVI Defendants who have knowledge of the job duties and responsibilities Plaintiff performed as Chairman of the LVI Defendants.

**Objections to Interrogatory No. 10:**

State objects to Interrogatory No. 10 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who have knowledge of" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 10:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The LVI employees of who were primarily involved in determining the job duties and responsibilities Plaintiff performed as Chairman of LVI were Scott State and, previously, Robert McNamara.

**Interrogatory No. 11:**

Identify all person(s) with knowledge by November 16, 2010 that a letter had been delivered to Defendant State from Plaintiff's counsel on November 15, 2010.

**Objections to Interrogatory No. 11:**

State objects to Interrogatory No. 11 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who had knowledge by November 16, 2010 that a letter from

9

Plaintiff's counsel was delivered on November 15, 2010" is vague, ambiguous, and lacks

sufficient precision to permit an answer.

**Answer to Interrogatory No. 11:**

Without waiving the foregoing objections, and to the extent not objected to

therein, State answers:

The employee of LVI who was made aware on November 16, 2010 of the letter

from Plaintiff's counsel that was delivered on November 15, 2010 is Scott State.

**Interrogatory No. 12:**

Identify all officers, directors, partners, managers and/or employees of LVI who
are common to the management, ownership, and/or labor relations of Parent and/or has
knowledge of the common management, ownership, financial control and/or labor relations of
LVI and Parent

**Objections to Interrogatory No. 12:**

State objects to Interrogatory No. 12 to the extent it is vague, ambiguous, overly

broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

For example, the phrase "who are common to the management, ownership and/or labor

relations" is vague, ambiguous and lacks sufficient precision to permit an answer.  State further

objects to Interrogatory No. 12 to the extent it assumes facts that are not in evidence.

**Answer to Interrogatory No. 12:**

Without waiving the foregoing objections, and to the extent not objected to

therein, State answers:

None.

Dated: *March 24*, 2011

SIDLEY AUSTIN LLP


By: _____
    Nicholas H. De Baun
    Joanne Seltzer

    787 Seventh Avenue
    New York, New York 10019
    (212) 839-5300

    Attorneys for Defendants

    LVI Services, Inc., LVI Parent Corp., CHS
    Private Equity V LP, Scott E. State, Brian
    Simmons, Rajay Bagaria and Gerald J.
    Girardi

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, state under penalty of perjury that, on *March 24*, 2011, a true and correct copy of Scott E. State's Objections and Answers to Plaintiff's First Set of Interrogatories was served by electronic and Federal Express overnight delivery upon the following:

Douglas H. Wigdor
Thompson Widgor & Gilly LLP
85 Fifth Avenue
New York, New York 10003
dwigdor@twglaw.com


_____
Joanne Seltzer

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                         :   **ECF CASE**

BURTON T. FRIED,                  :

                       :

             Plaintiff,      :   No. 10 Civ. 9308 (JSR)

                       :

        - against -        :   **SCOTT E. STATE'S**

                       :   **VERIFICATION OF**

LVI SERVICES, INC.; LVI PARENT CORP.,  :   **INTERROGATORIES**
CODE HENNESSY SIMMONS LLC d/b/a/ CHS
PRIVATE EQUITY V LP; APOLLO       :
INVESTMENT CORP.; SCOTT E. STATE, in his  :
official and individual capacities; BRIAN    :
SIMMONS, in his official and individual
capacities; RAJAY BAGARIA, in his official and  :
individual capacities; GERALD J. GIRARDI, in his :
official                         :
and individual capacities,         :

                       :

              Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


STATE OF NEW YORK         )
                       ) ss.:
COUNTY OF NEW YORK     )


      SCOTT E. STATE, being duly sworn, deposes and says:

         1.      I am President and CEO of LVI Services, Inc. and LVI Parent Corp.

         2.      I have read my Objections and Answers to Plaintiff's First Set of

Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to

my own knowledge, or upon information and belief, and as to those matters, I believe them to be

true.

3.    The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events and my review of my records, correspondence and other writings.

SCOTT E. STATE

Sworn to and subscribed before
me this __ day of _____ 2011

Notary Public

LARRY ROSING
Notary Public, State of New York
No. 01RO6106496
Qualified in Nassau County
My Commission Expires Mar. 08, 2012

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| BURTON T. FRIED, | **ECF CASE** |
| Plaintiff, | No. 10 Civ. 9308 (JSR) |
| - against - | **SCOTT E. STATE'S VERIFICATION OF INTERROGATORIES** |
| LVI SERVICES, INC.; LVI PARENT CORP., CODE HENNESSY SIMMONS LLC d/b/a/ CHS PRIVATE EQUITY V LP; APOLLO INVESTMENT CORP.; SCOTT E. STATE, in his official and individual capacities; BRIAN SIMMONS, in his official and individual capacities; RAJAY BAGARIA, in his official and individual capacities; GERALD J. GIRARDI, in his official and individual capacities, |  |
| Defendants. |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

SCOTT E. STATE, being duly sworn, deposes and says:

1.    I am President and CEO of LVI Services, Inc. and LVI Parent Corp.

2.    I have read my Objections and Answers to Plaintiff's First Set of Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to my own knowledge, or upon information and belief, and as to those matters, I believe them to be true.

3.    The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events and my review of my records, correspondence and other writings.

SCOTT E. STATE

Sworn to and subscribed before
me this 7 day of April 2011

Notary Public

LARRY ROSING
Notary Public, State of New York
No. 01RO6106496
Qualified in Nassau County
My Commission Expires Mar. 08, 2012

2

Exhibit 28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| BURTON T. FRIED, | : **ECF CASE** |
| Plaintiff, | : |
| | : |
| | : No. 10 Civ. 9308 (JSR) |
| v. | : |
| | : **BRIAN SIMMONS'S OBJECTIONS** |
| LVI SERVICES, INC., LVI PARENT CORP., | : **AND ANSWERS TO PLAINTIFF'S** |
| CODE HENNESSY SIMMONS LLC d/b/a/ CHS | : **FIRST SET OF** |
| PRIVATE EQUITY V LP; APOLLO | : **INTERROGATORIES** |
| INVESTMENT CORP.; SCOTT E. STATE, in his | :: |

official and individual capacities; BRIAN
SIMMONS, in his official and individual capacities;
RAJAY BAGARIA, in his official and individual
capacities; GERALD J. GIRARDI, in his official
and individual capacities,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the Southern District of New York, Brian Simmons

("Simmons"), by his attorneys, Sidley Austin LLP, answers and makes his written objections to

Plaintiff's First Set of Interrogatories (the "Interrogatories") as set forth below.  Simmons's

response to any of the Interrogatories is not, and shall not be construed as, an admission of the

relevance or admissibility into evidence of any such response or of the propriety of any of

Plaintiff's Interrogatories.

## GENERAL OBJECTIONS, COMMENTS AND QUALIFICATIONS

In addition to the specific objections separately set forth in response to certain

Interrogatories, Simmons asserts the following General Objections, which are incorporated into

each specific answer and objection, whether or not specifically referred to therein.

1.      Simmons objects to the "Definitions and Instructions" section of the Interrogatories to the extent that Plaintiff's definitions and instructions contradict or go beyond the scope of permissible discovery under the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of New York.

2.      Simmons makes the objections and provides the answers contained herein without waiver of any right or privilege to object to the introduction into evidence, in this or any other action or proceedings, of any information contained in any of the documents or the introduction of any of the documents themselves, upon grounds of competency, relevancy, hearsay, authenticity or other proper grounds.  Simmons reserves all rights to object to the use of any of the information produced (now or in the future) in response hereto, in any subsequent proceedings, including the trial of this or any other action.  Simmons expressly reserves the right to object to further discovery into any subject matter in the Interrogatories.  In responding, Simmons does not admit the factual or legal premise of any Interrogatory.

3.      Simmons responds to the Interrogatories based on the best of his present knowledge, information and belief.  Simmons's response is at all times subject to such additional or different information that discovery or further investigation may disclose.  Simmons reserves the right to supplement and update his responses to the Interrogatories.  Any supplemental response provided to the Interrogatories shall not function as a waiver of any privilege or objection Simmons has or may assert herein.

4.      Simmons objects to the Interrogatories to the extent that they seek information that is subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint-defense privilege, and/or any other

2

applicable privileges.  Simmons intends to and does claim such privilege(s) with respect to all such information.

These General Objections are incorporated into each of the responses set forth below and shall have the same force and effect as if set forth in full in response to each individual request.

*          *          *

## SPECIFIC OBJECTIONS AND ANSWERS

**Interrogatory No. 1:**

Identify all person(s) with knowledge or information regarding the allegations as set forth in the Complaint.

**Objections to Interrogatory No. 1:**

Simmons objects to Request No. 1 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 1:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

CHS employees who have knowledge or information regarding the allegations in the Complaint are Brian Simmons, Robert G. Hogan and Matthew Kunz.

**Interrogatory No. 2:**

Identify all directors, officers, partners, managers and/or employees of any of the CHS and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to transition Plaintiff's job duties to other LVI managers.

3

**Objections to Interrogatory No. 2:**

Simmons objects to Request No. 2 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "have information or knowledge concerning the reasons for, and the process leading to . . . transition Plaintiff's duties to other LVI managers" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 2:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

CHS employees who have knowledge of the reasons for the decision to transition Plaintiff's job duties to other LVI managers are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 3:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who participated in, or otherwise have information or knowledge of the Employment Agreement between Plaintiff and LVI.

**Objections to Interrogatory No. 3:**

Simmons objects to Interrogatory No. 3 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 3:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

4

CHS employees who have knowledge of the contents of the agreement dated

November 16, 2005 between Plaintiff and LVI are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 4:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who have knowledge concerning the drafting and/or negotiation of Employment Agreement between Plaintiff and LVI.

**Objections to Interrogatory No. 4:**

Simmons objects to Interrogatory No. 4 to the extent it is vague, ambiguous,

overly broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 4:**

Without waiving the foregoing objections, and to the extent not objected to

therein, Simmons answers:

The CHS employee who has knowledge concerning the drafting and/or

negotiations of the agreement dated November 16, 2005 between Plaintiff and LVI is Brian

Simmons.

**Interrogatory No. 5:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to replace Plaintiff's Employment Agreement with a consulting agreement.

**Objections to Interrogatory No. 5:**

Simmons objects to Interrogatory No. 5 to the extent it is vague, ambiguous,

overly broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

For example, the phrase "who participated in, or otherwise have information or knowledge

5

concerning the reasons for, and the process leading to the decision to replace Plaintiff's

Employment Agreement with a consulting agreement" is vague, ambiguous and lacks sufficient

precision to permit a response. Simmons further objects to Interrogatory No. 5 to the extent that

it assumes facts that are not in evidence, such as a decision "to replace Plaintiff's Employment

Agreement with a consulting agreement."

### Answer to Interrogatory No. 5:

Without waiving the foregoing objections, and to the extent not objected to

therein, Simmons answers:

CHS employees who have knowledge of the reasons for Scott State's decision to

offer Plaintiff a consultant agreement are Brian Simmons and Robert G. Hogan.

### Interrogatory No. 6:

Identify all directors, officers, partners, managers and/or employees of CHS
and/or Parent who participated in, or otherwise have information or knowledge concerning the
reasons for, and the process leading to, the decision to terminate Plaintiff's employment.

### Objections to Interrogatory No. 6:

Simmons objects to Interrogatory No. 6 to the extent it is vague, ambiguous,

overly broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

For example, the phrase "who participated in, or otherwise have information or knowledge

concerning the reasons for, and the process leading to the decision to terminate Plaintiff's

employment" is vague, ambiguous and lacks sufficient precision to permit a response.

6

**Answer to Interrogatory No. 6:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

CHS employees who have knowledge of the reasons for Scott State's decision to terminate Plaintiff's employment are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 7:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who determined the terms and conditions of Plaintiff's employment, or otherwise have knowledge of the terms and conditions of Plaintiff's employment, including, but not limited to, the authority to set Plaintiff's compensation, enter into employment agreements with Plaintiff, and/or terminate Plaintiff's employment, while Plaintiff was employed as Chairman of LVI Defendants.

**Objections to Interrogatory No. 7:**

Simmons objects to Interrogatory No. 7 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who otherwise have knowledge" is vague, ambiguous, and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 7:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

Employees of CHS who had knowledge of the terms and conditions of Plaintiff's employment at LVI are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 8:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who received any complaint, communication or report from Plaintiff, whether formal or informal, written or verbal, regarding the discriminatory actions taken against Plaintiff.

7

**Objections to Interrogatory No. 8:**

Simmons objects to Interrogatory No. 8 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Simmons further objects to Interrogatory No. 8 to the extent that it assumes facts that are not in evidence, such as "a discriminatory action taken against Plaintiff."

**Answer to Interrogatory No. 8:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

Brian Simmons , Robert G. Hogan and Matthew Kunz were present at the Board of Directors meeting in which Plaintiff raised a complaint of discrimination against Mr. State.

**Interrogatory No. 9:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who have knowledge of the remark about Plaintiff's age made to Plaintiff on or about October 19, 2010 by Defendant State.

**Objections to Interrogatory No. 9:**

Simmons objects to Interrogatory No. 9 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Simmons further objects to Interrogatory No. 9 to the extent that it assumes facts that are not in evidence, such as the existence of a remark "about Plaintiff's age."

**Answer to Interrogatory No. 9:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

8

Brian Simmons, Robert G. Hogan and Matthew Kunz were present at the Board

of Directors meeting in which Plaintiff alleged that Scott State made a comment about Plaintiff's

age.

**Interrogatory No. 10:**

Identify all directors, officers, partners, managers and/or employees of CHS
and/or Parent who participated in the decision to hire Defendant State as Chief Executive Officer
of the Company.

**Objections to Interrogatory No. 10:**

Simmons objects to Interrogatory No. 10 to the extent it is vague, ambiguous,

overly broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

For example, the phrase "who participate in the decision" is vague, ambiguous and lacks

sufficient precision to permit an answer.

**Answer to Interrogatory No. 10:**

Without waiving the foregoing objections, and to the extent not objected to

therein, Simmons answers:

CHS employees who were involved in the recruitment of Scott State for the

position of Chief Executive Officer of LVI are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 11:**

Identify all officers, directors, partners, managers and/or employees of CHS who
are common to the management, ownership, financial control and/or labor relations of Parent
and/or has knowledge of the common management, ownership, financial control and/or labor
relations of LVI and Parent.

**Objections to Interrogatory No. 11:**

Simmons objects to Interrogatory No. 11 to the extent it is vague, ambiguous,

overly broad, unduly burdensome, calls for the production of extensive information which has no

9

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who are common to the management, ownership and/or labor relations" is vague, ambiguous and lacks sufficient precision to permit an answer. Simmons further objects to Interrogatory No. 11 to the extent it assumes facts that are not in evidence.

**Answer to Interrogatory No. 11:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

Brian Simmons and Robert G. Hogan are members of the Parent's Board of Directors.

**Interrogatory No. 12:**

Identify all directors, officers, partners, managers and/or employees of CHS who have knowledge in any way relating to Parent's control over the labor relations and personnel and practices of LVI.

**Objections to Interrogatory No. 12:**

Simmons objects to Interrogatory No. 12 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and lacks sufficient precision to permit an answer. Simmons further objects to Interrogatory No. 12 to the extent it assumes facts that are not in evidence, such as any control by Parent over the labor relations and practices of LVI.

Dated: *May 24*, 2011

SIDLEY AUSTIN LLP


By: _____
    Nicholas H. De Baun
    Joanne Seltzer

    787 Seventh Avenue
    New York, New York 10019
    (212) 839-5300

    Attorneys for Defendants

    LVI Services, Inc., LVI Parent Corp., CHS
    Private Equity V LP, Scott E. State, Brian
    Simmons, Rajay Bagaria and Gerald J.
    Girardi

11

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, states, under penalty of perjury that, on *March 24* 2011, a true and correct copy of Brian Simmons's Objections and Answers to Plaintiff's First Set of Interrogatories was served by electronic and Federal Express overnight delivery upon the following:

> Douglas H. Wigdor
> Thompson Wigdor & Gilly LLP
> 85 Fifth Avenue
> New York, New York 10003
> dwigdor@twglaw.com

Joanne Seltzer

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| | : **ECF CASE** |
| BURTON T. FRIED, | : |
| | : |
| Plaintiff, | : No. 10 Civ. 9308 (JSR) |
| | : |
| - against - | : **BRIAN SIMMONS'S** |
| | : **VERIFICATION OF** |
| LVI SERVICES, INC.; LVI PARENT CORP., | : **INTERROGATORIES** |
| CODE HENNESSY SIMMONS LLC d/b/a/ CHS | : |
| PRIVATE EQUITY V LP; APOLLO | : |
| INVESTMENT CORP.; SCOTT E. STATE, in his | : |
| official and individual capacities; BRIAN | : |
| SIMMONS, in his official and individual | : |
| capacities; RAJAY BAGARIA, in his official and | : |
| individual capacities; GERALD J. GIRARDI, in his | : |
| official | : |
| and individual capacities, | : |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) ss.: |
| COOK COUNTY | ) |

BRIAN SIMMONS, being duly sworn, deposes and says:

1.      I am a member of the Board of Directors of LVI Parent Corp. and am a managing partner of CHS Private Equity V LP.

2.      I have read my Objections and Answers to Plaintiff's First Set of Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to my own knowledge, or upon information and belief, and as to those matters, I believe them to be true.

3.      The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events, my review of my records, correspondence and other writings.

_____
BRIAN SIMMONS

Sworn to and subscribed before
me this 4 day of *April* 2011

_____
Notary Public

OFFICIAL SEAL
MICHELLE J. KARLIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6/12/2012

2

Exhibit 29

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| BURTON T. FRIED, | : **ECF CASE** |
| Plaintiff, | : |
|  | : No. 10 Civ. 9308 (JSR) |
| v. | : |
|  | : **GERALD GIRARDI'S REVISED** |
| LVI SERVICES, INC., LVI PARENT CORP., | : **OBJECTIONS AND ANSWERS TO** |
| CODE HENNESSY SIMMONS LLC d/b/a/ CHS | : **PLAINTIFF'S FIRST SET OF** |
| PRIVATE EQUITY V LP; APOLLO | : **INTERROGATORIES** |
| INVESTMENT CORP.; SCOTT E. STATE, in his | :: |
| official and individual capacities; BRIAN |  |
| SIMMONS, in his official and individual capacities; |  |
| RAJAY BAGARIA, in his official and individual |  |
| capacities; GERALD J. GIRARDI, in his official |  |
| and individual capacities, |  |

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the Southern District of New York, Gerald Girardi

("Girardi"), by his attorneys, Sidley Austin LLP, submits his revised answers and makes his

written objections to Plaintiff's First Set of Interrogatories (the "Interrogatories") as set forth

below. Girardi's response to any of the Interrogatories is not, and shall not be construed as, an

admission of the relevance or admissibility into evidence of any such response or of the propriety

of any of Plaintiff's Interrogatories.

**GENERAL OBJECTIONS, COMMENTS AND QUALIFICATIONS**

In addition to the specific objections separately set forth in response to certain

Interrogatories, Girardi asserts the following General Objections, which are incorporated into

each specific answer and objection, whether or not specifically referred to therein.

1.      Girardi objects to the "Definitions and Instructions" section of the Interrogatories to the extent that Plaintiff's definitions and instructions contradict or go beyond the scope of permissible discovery under the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of New York.

2.      Girardi makes the objections and provides the answers contained herein without waiver of any right or privilege to object to the introduction into evidence, in this or any other action or proceedings, of any information contained in any of the documents or the introduction of any of the documents themselves, upon grounds of competency, relevancy, hearsay, authenticity or other proper grounds.  Girardi reserves all rights to object to the use of any of the information produced (now or in the future) in response hereto, in any subsequent proceedings, including the trial of this or any other action.  Girardi expressly reserves the right to object to further discovery into any subject matter in the Interrogatories.  In responding, Girardi does not admit the factual or legal premise of any Interrogatory.

3.      Girardi responds to the Interrogatories based on the best of its present knowledge, information and belief.  Girardi's response is at all times subject to such additional or different information that discovery or further investigation may disclose.  Girardi reserves the right to supplement and update its responses to the Interrogatories.  Any supplemental response provided to the Interrogatories shall not function as a waiver of any privilege or objection Girardi has or may assert herein.

4.      Girardi objects to the Interrogatories to the extent that they seek information that is subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint-defense privilege, and/or any other

2

applicable privileges.  Girardi intends to and does claim such privilege(s) with respect to all such information.

These General Objections are incorporated into each of the responses set forth below and shall have the same force and effect as if set forth in full in response to each individual request.

*          *          *

## SPECIFIC OBJECTIONS AND ANSWERS

**Interrogatory No. 1:**

Identify all person(s) with knowledge or information regarding the allegations as set forth in the Complaint.

### Objections to Interrogatory No. 1:

Girardi objects to Request No. 1 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

### Answer to Interrogatory No. 1:

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Employees of Apollo who have knowledge or information regarding the allegations in the Complaint and/or Charge of Discrimination are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 2:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise has information or knowledge concerning the reasons for, and the process leading to, the decision to transition Plaintiff's job duties to other LVI managers.

3

**Objections to Interrogatory No. 2:**

Girardi objects to Request No. 2 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "have information or knowledge concerning the reasons for, and the process leading to . . . transition Plaintiff's duties to other LVI managers" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 2:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

The Apollo employees who have knowledge of the reasons for Scott State's decision to transition Plaintiff's job duties to other LVI managers are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 3:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge of the Employment Agreement between Plaintiff and LVI.

**Objections to Interrogatory No. 3:**

Girardi objects to Interrogatory No. 3 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 3:**

Without waiving the foregoing objection, and to the extent not objected to therein, Girardi answers:

4

The Apollo employees who have knowledge of the contents of the agreement dated November 16, 2005 between Plaintiff and LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 4:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to replace Plaintiff's Employment Agreement with a consulting agreement.

### Objections to Interrogatory No. 4:

Girardi objects to Interrogatory No. 4 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to the decision to replace Plaintiff's Employment Agreement with a consulting agreement" is vague, ambiguous and lacks sufficient precision to permit a response. Girardi further objects to Interrogatory No. 4 to the extent that it assumes facts that are not in evidence, such as a decision "to replace Plaintiff's Employment Agreement with a consulting agreement."

### Answer to Interrogatory No. 4:

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Apollo employees who have knowledge of the reasons for Scott State's decision to offer Plaintiff a consultant agreement are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 5:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to terminate Plaintiff's employment.

5

**Objections to Interrogatory No. 5:**

  Girardi objects to Interrogatory No. 5 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge" is vague, ambiguous and lacks sufficient precision to permit a response.

**Answer to Interrogatory No. 5:**

  Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

  Apollo employees who have knowledge the reasons for Scott State's decision to terminate Plaintiff's employment are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 6:**

  Identify all directors, officers, partners, managers and/or employees of the Apollo and/or Parent who determined the terms and conditions of Plaintiff's employment, or otherwise have knowledge of the terms and conditions of Plaintiff's employment, including, but not limited to, the authority to set Plaintiff's compensation, enter into employment agreements with Plaintiff, and/or terminate Plaintiff's employment.

**Objections to Interrogatory No. 6:**

  Girardi objects to Interrogatory No. 6 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who otherwise have knowledge" is vague, ambiguous, and lacks sufficient precision to permit an answer.

6

**Answer to Interrogatory No. 6:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Employees of Apollo who had knowledge of the terms and conditions of Plaintiff's employment at LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 7:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who received any complaint, communication or report from Plaintiff, whether formal or informal, written or verbal, regarding any discriminatory actions taken against Plaintiff.

**Objections to Interrogatory No. 7:**

Girardi objects to Interrogatory No. 7 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Girardi further objects to Interrogatory No. 7 to the extent that it assumes facts that are not in evidence.

**Answer to Interrogatory No. 7:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Rajay Bagaria, Gerald Girardi and Edward Reynolds were present at the Board of Directors meeting in which Plaintiff raised a complaint of discrimination against Mr. State.

**Interrogatory No. 8:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge of the remark about Plaintiff's age made to Plaintiff on or about October 19, 2010 by Defendant State.

**Objections to Interrogatory No. 8:**

Girardi objects to Interrogatory No. 8 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Girardi further objects to Interrogatory No. 8 to the extent that it assumes facts that are not in evidence, such as the existence of a remark "about Plaintiff's age."

**Answer to Interrogatory No. 8:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Rajay Bagaria, Edward Reynolds and Gerald Girardi were present at the Board of Directors meeting in which Plaintiff alleged that Scott State made a comment about Plaintiff's age.

**Interrogatory No. 9:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have knowledge of, the decision to hire Defendant State as Chief Executive Officer of the Company.

**Objections to Interrogatory No. 9:**

Girardi objects to Interrogatory No. 9 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participate in the decision" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 9:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

The employees of Apollo who have knowledge of the reasons for the decision to hire Scott State as Chief Executive Officer of LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 10:**

Identify all officers, directors, partners, managers and/or employees of Apollo who are common to the management, ownership, financial control and/or labor relations of Parent and/or have knowledge of the common management, ownership, financial control and/or labor relations of LVI and Apollo and Parent and Apollo.

**Objections to Interrogatory No. 10:**

Girardi objects to Interrogatory No. 10 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who are common to the management, ownership and/or labor relations" is vague, ambiguous and lacks sufficient precision to permit an answer.  Girardi further objects to Interrogatory No. 10 to the extent it assumes facts that are not in evidence.

**Answer to Interrogatory No. 10:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Rajay Bagaria and Gerald Girardi are members of the Parent's Board of Directors.

**Interrogatory No. 11:**

Identify all directors, officers, partners, managers and/or employees of Apollo who have knowledge in any way relating to Parent's control over the labor relations and personnel policies and practices of LVI.

**Objections to Interrogatory No. 11:**

Girardi objects to Interrogatory No. 11 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

9

For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and lacks sufficient precision to permit an answer.  Girardi further objects to Interrogatory No. 11 to the extent it assumes facts that are not in evidence, such as any control by Parent over the labor relations and practices of LVI.

**Interrogatory No. 12:**

> Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge concerning the agreement through which Apollo became an equity shareholder of Parent on or about October 8, 2010.

**Objections to Interrogatory No. 12:**

Girardi objects to Interrogatory No. 12 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 12:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

The employees of Apollo who have knowledge of the agreement through which Apollo became an equity shareholder of Parent on or about October 8, 2010 are Rajay Bagaria, Gerald Girardi, James Zelter, Edward Reynolds, Patrick Dalton and Justin Sendak.

10

Dated: *April 11*, 2011

SIDLEY AUSTIN LLP

By: _Joanne Seltzer_
Nicholas H. De Baun
Joanne Seltzer

787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants

LVI Services, Inc., LVI Parent Corp., CHS
Private Equity V LP, Scott E. State, Brian
Simmons, Rajay Bagaria and Gerald J.
Girardi

11

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, states, under penalty of perjury, that, on *April 11*, 2011, a true and correct copy of Gerald Girardi's Revised Objections and Answers to Plaintiff's First Set of Interrogatories was served by electronic and Federal Express overnight delivery upon the following:

Douglas H. Wigdor
Thompson Wigdor & Gilly LLP
85 Fifth Avenue
New York, New York 10003
dwigdor@twglaw.com


Joanne Seltzer

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BURTON T. FRIED,

                  Plaintiff,

      - against -

LVI SERVICES, INC.; LVI PARENT CORP.,
CODE HENNESSY SIMMONS LLC d/b/a/ CHS
PRIVATE EQUITY V LP; APOLLO
INVESTMENT CORP.; SCOTT E. STATE, in his
official and individual capacities; BRIAN
SIMMONS, in his official and individual
capacities; RAJAY BAGARIA, in his official and
individual capacities; GERALD J. GIRARDI, in his
official
and individual capacities,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

:   **ECF CASE**
:
:
:   No. 10 Civ. 9308 (JSR)
:
:   **GERALD J. GIRARDI'S**
:   **VERIFICATION OF**
:   **INTERROGATORIES**

STATE OF NEW YORK       )
                         ) ss.:
COUNTY OF NEW YORK   )

      GERALD J. GIRARDI, being duly sworn, deposes and says:

          1.     I am a member of the Board of Directors of LVI Parent Corp.

          2.     I have read my Revised Objections and Answers to Plaintiff's First Set of

Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to

my own knowledge, or upon information and belief, and as to those matters, I believe them to be

true.

3.     The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events, my review of my records, correspondence and other writings, and conversations I have had.

_____
GERALD J. GIRARDI

Sworn to and subscribed before
me this ⊔ day of H∤n∖ 2011

_____
Notary Public

**LYDIA ELLIOTT**
Notary Public, State of New York
No. 01EL6113939
Qualified in Nassau County
Commission Expires August 9, 2012

2

# Exhibit 30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |  |
|---|---|---|
| BURTON T. FRIED, | : | **ECF CASE** |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No. 10 Civ. 9308 (JSR) |
|  | : |  |
| LVI SERVICES, INC., LVI PARENT CORP., | : | **RAJAY BAGARIA'S REVISED** |
| CODE HENNESSY SIMMONS LLC d/b/a/ CHS | : | **OBJECTIONS AND ANSWERS TO** |
| PRIVATE EQUITY V LP; APOLLO | : | **PLAINTIFF'S FIRST SET OF** |
| INVESTMENT CORP.; SCOTT E. STATE, in his | :: | **INTERROGATORIES** |

official and individual capacities; BRIAN
SIMMONS, in his official and individual capacities;
RAJAY BAGARIA, in his official and individual
capacities; GERALD J. GERARDI, in his official
and individual capacities,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the Southern District of New York, Rajay Bagaria

("Bagaria"), by his attorneys, Sidley Austin LLP, submits his revised answers and makes his

written objections to Plaintiff's First Set of Interrogatories (the "Interrogatories") as set forth

below.  Bagaria's response to any of the Interrogatories is not, and shall not be construed as, an

admission of the relevance or admissibility into evidence of any such response or of the propriety

of any of Plaintiff's Interrogatories.

## GENERAL OBJECTIONS, COMMENTS AND QUALIFICATIONS

In addition to the specific objections separately set forth in response to certain

Interrogatories, Bagaria asserts the following General Objections, which are incorporated into

each specific answer and objection, whether or not specifically referred to therein.

1.      Bagaria objects to the "Definitions and Instructions" section of the Interrogatories to the extent that Plaintiff's definitions and instructions contradict or go beyond the scope of permissible discovery under the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of New York.

2.      Bagaria makes the objections and provides the answers contained herein without waiver of any right or privilege to object to the introduction into evidence, in this or any other action or proceedings, of any information contained in any of the documents or the introduction of any of the documents themselves, upon grounds of competency, relevancy, hearsay, authenticity or other proper grounds.  Bagaria reserves all rights to object to the use of any of the information produced (now or in the future) in response hereto, in any subsequent proceedings, including the trial of this or any other action.  Bagaria expressly reserves the right to object to further discovery into any subject matter in the Interrogatories.  In responding, Bagaria does not admit the factual or legal premise of any Interrogatory.

3.      Bagaria responds to the Interrogatories based on the best of his present knowledge, information and belief.  Bagaria's response is at all times subject to such additional or different information that discovery or further investigation may disclose.  Bagaria reserves the right to supplement and update his responses to the Interrogatories.  Any supplemental response provided to the Interrogatories shall not function as a waiver of any privilege or objection Bagaria has or may assert herein.

4.      Bagaria objects to the Interrogatories to the extent that they seek information that is subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint-defense privilege, and/or any other

2

applicable privileges. Bagaria intends to and does claim such privilege(s) with respect to all such information.

These General Objections are incorporated into each of the responses set forth below and shall have the same force and effect as if set forth in full in response to each individual request.

*         *         *

**SPECIFIC OBJECTIONS AND ANSWERS**

**Interrogatory No. 1:**

Identify all person(s) with knowledge or information regarding the allegations as set forth in the Complaint.

**Objections to Interrogatory No. 1:**

Bagaria objects to Request No. 1 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 1:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Employees of Apollo who have knowledge or information regarding the allegations in the Complaint and/or Charge of Discrimination are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 2:**

Identify all directors, officers, partners, managers and/or employees of any of the Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to transition Plaintiff's job duties to other LVI managers.

3

**Objections to Interrogatory No. 2:**

Bagaria objects to Request No. 2 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "have information or knowledge concerning the reasons for, and the process leading to . . . transition Plaintiff's duties to other LVI managers" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 2:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

The Apollo employees who have knowledge of the reasons for Scott State's decision to transition Plaintiff's job duties to other LVI managers are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 3:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge of the Employment Agreement between Plaintiff and LVI.

**Objections to Interrogatory No. 3:**

Bagaria objects to Interrogatory No. 3 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 3:**

Without waiving the foregoing objection, and to the extent not objected to therein, Bagaria answers:

4

The Apollo employees who have knowledge of the contents of the agreement dated November 16, 2005 between Plaintiff and LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 4:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to replace Plaintiff's Employment Agreement with a consulting agreement.

### Objections to Interrogatory No. 4:

Bagaria objects to Interrogatory No. 4 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to the decision to replace Plaintiff's Employment Agreement with a consulting agreement" is vague, ambiguous and lacks sufficient precision to permit a response. Bagaria further objects to Interrogatory No. 4 to the extent that it assumes facts that are not in evidence, such as a decision "to replace Plaintiff's Employment Agreement with a consulting agreement."

### Answer to Interrogatory No. 4:

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Apollo employees who have knowledge of the reasons for Scott State's decision to offer Plaintiff a consultant agreement are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 5:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to terminate Plaintiff's employment.

5

**Objections to Interrogatory No. 5:**

Bagaria objects to Interrogatory No. 5 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge" is vague, ambiguous and lacks sufficient precision to permit a response.

**Answer to Interrogatory No. 5:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Apollo employees who have knowledge the reasons for Scott State's decision to terminate Plaintiff's employment are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 6:**

Identify all directors, officers, partners, managers and/or employees of the Apollo and/or Parent who determined the terms and conditions of Plaintiff's employment, or otherwise have knowledge of the terms and conditions of Plaintiff's employment, including, but not limited to, the authority to set Plaintiff's compensation, enter into employment agreements with Plaintiff, and/or terminate Plaintiff's employment.

**Objections to Interrogatory No. 6:**

Bagaria objects to Interrogatory No. 6 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who otherwise have knowledge" is vague, ambiguous, and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 6**:

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Employees of Apollo who had knowledge of the terms and conditions of Plaintiff's employment at LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 7:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who received any complaint, communication or report from Plaintiff, whether formal or informal, written or verbal, regarding any discriminatory actions taken against Plaintiff.

**Objections to Interrogatory No. 7**:

Bagaria objects to Interrogatory No. 7 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Bagaria further objects to Interrogatory No. 7 to the extent that it assumes facts that are not in evidence.

**Answer to Interrogatory No. 7:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Rajay Bagaria, Edward Reynolds and Gerald Girardi were present at the Board of Directors meeting in which Plaintiff raised a complaint of discrimination against Mr. State.

**Interrogatory No. 8:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge of the remark about Plaintiff's age made to Plaintiff on or about October 19, 2010 by Defendant State.

7

**Objections to Interrogatory No. 8:**

Bagaria objects to Interrogatory No. 8 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Bagaria further objects to Interrogatory No. 8 to the extent that it assumes facts that are not in evidence, such as the existence of a remark "about Plaintiff's age."

**Answer to Interrogatory No. 8:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Rajay Bagaria, Edward Reynolds and Gerald Girardi were present at the Board of Directors meeting in which Plaintiff alleged that Scott State made a comment about Plaintiff's age.

**Interrogatory No. 9:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have knowledge of, the decision to hire Defendant State as Chief Executive Officer of the Company.

**Objections to Interrogatory No. 9:**

Bagaria objects to Interrogatory No. 9 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participate in the decision" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 9:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

The employees of Apollo who have knowledge of the reasons for the decision to hire Scott State as Chief Executive Officer of LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 10:**

Identify all officers, directors, partners, managers and/or employees of Apollo who are common to the management, ownership, financial control and/or labor relations of Parent and/or have knowledge of the common management, ownership, financial control and/or labor relations of LVI and Apollo and Parent and Apollo.

**Objections to Interrogatory No. 10:**

Bagaria objects to Interrogatory No. 10 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who are common to the management, ownership and/or labor relations" is vague, ambiguous and lacks sufficient precision to permit an answer. Bagaria further objects to Interrogatory No. 10 to the extent it assumes facts that are not in evidence.

**Answer to Interrogatory No. 10:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Rajay Bagaria and Gerald Girardi are members of the Parent's Board of Directors.

**Interrogatory No. 11:**

Identify all directors, officers, partners, managers and/or employees of Apollo who have knowledge in any way relating to Parent's control over the labor relations and personnel and practices of LVI.

**Objections to Interrogatory No. 11:**

Bagaria objects to Interrogatory No. 11 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

9

For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and

lacks sufficient precision to permit an answer. Bagaria further objects to Interrogatory No. 11 to

the extent it assumes facts that are not in evidence, such as any control by Parent over the labor

relations and practices of LVI.

**Interrogatory No. 12:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge concerning the agreement through which Apollo became an equity shareholder of Parent on or about October 8, 2010.

**Objections to Interrogatory No. 12:**

Bagaria objects to Interrogatory No. 12 to the extent it is vague, ambiguous,

overly broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and

lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 12:**

Without waiving the foregoing objections, and to the extent not objected to

therein, Bagaria answers:

The employees of Apollo who have knowledge of the agreement through which

Apollo became an equity shareholder of Parent on or about October 8, 2010 are Rajay Bagaria,

Gerald Girardi, James Zelter, Edward Reynolds, Patrick Dalton and Justin Sendak.

10

Dated: *April 11*, 2011

SIDLEY AUSTIN LLP

By: _____
      Nicholas H. De Baun
      Joanne Seltzer

      787 Seventh Avenue
      New York, New York 10019
      (212) 839-5300

      Attorneys for Defendants

      LVI Services, Inc., LVI Parent Corp., CHS
      Private Equity V LP, Scott E. State, Brian
      Simmons, Rajay Bagaria and Gerald J.
      Girardi

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, states, under penalty of perjury that, on *April 11*, 2011, a true and correct copy of Rajay Bagaria's Objections and Answers to Plaintiff's First Set of Interrogatories was served by electronic and Federal Express overnight delivery upon the following:

> Douglas H. Wigdor
> Thompson Wigdor & Gilly LLP
> 85 Fifth Avenue
> New York, New York 10003
> dwigdor@twglaw.com


_____
Joanne Seltzer

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
|  | :   **ECF CASE** |
| BURTON T. FRIED, | : |
|  | : |
| Plaintiff, | :   No. 10 Civ. 9308 (JSR) |
|  | : |
| - against - | :   **RAJAY BAGARIA'S** |
|  | :   **VERIFICATION OF** |
| LVI SERVICES, INC.; LVI PARENT CORP., | :   **INTERROGATORIES** |
| CODE HENNESSY SIMMONS LLC d/b/a/ CHS | : |
| PRIVATE EQUITY V LP; APOLLO | : |
| INVESTMENT CORP.; SCOTT E. STATE, in his | : |
| official and individual capacities; BRIAN | : |
| SIMMONS in his official and individual | : |
| capacities; RAJAY BAGARIA, in his official and | : |
| individual capacities; GERALD J. GIRARDI, in his | : |
| official | : |
| and individual capacities, | : |
|  | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | )   ss.: |
| COUNTY OF NEW YORK | ) |

RAJAY BAGARIA, being duly sworn, deposes and says:

      1.     I am a member of the Board of Directors of LVI Parent Corp.

      2.     I have read my Revised Objections and Answers to Plaintiff's First Set of Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to my own knowledge, or upon information and belief, and as to those matters, I believe them to be true.

3.    The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events, my review of my records, correspondence and other writings, and conversations I have had.

_____
RAJAY BAGARIA

Sworn to and subscribed before me this ___ day of _____ 2011

_____
Notary Public

LYDIA ELLIOTT
Notary Public, State of New York
No. 01EL6113698
Qualified in Nassau County
Commission Expires August 9, 2012

2