Exhibit 31

November 30, 2010

To: The Board of Directors of  LVI Parent Corp., LVI Services Inc. and all of it's Subsidiaries
and Affiliated Companies

Effective immediately, because of the termination of my employment as Chairman of
LVI Services Inc., I hereby resign all of my positions as Director and/or Officer of LVI
Parent Corp., LVI Services Inc. and all of it's subsidiaries and affiliated companies.

Dated: November 30, 2010

_____
Burton T. Fried

CONFIDENTIAL

LVI 000601

# Exhibit 32

| | |
|---|---|
| **From:** | Leonard, John <jleonard@lvi.com> |
| **Sent:** | Tuesday, December 21, 2010 8:37 PM |
| **To:** | All Regional Managers-COO-CFO <AllRegionalManagersCOOCFO@lviservices.com> |
| **Cc:** | State, Scott <SState@lviservices.com> |
| **Subject:** | Proposed Reductions for January 15, 2011 - confidential |
| **Attach:** | proposed reduction.xls |

Gents,

We are going to end the year with our worst results in over 5 years and even with the restructuring come dangerously close to breaking the covenants. In 2011, we have to be close to doubling our 2010 results. With that in mind we need to make drastic reductions in OH's. The attachment has proposed personnel reductions in order to save us a million dollars to the bottom line. Please think long and hard if there are other employees that we should add to this list. If you have questions or comments regarding the attachment or are other employees to be added, please contact Scott to discuss.

This needs to be finalized prior to the 1st so we can have a plan in place for the 15th. Thanks.

John M. Leonard
Chief Operating Officer
LVI Services Inc.
NorthStar Recovery Services
80 Broad Street - 3rd Floor
New York, NY 10004

Cell # (201) 370-2113
Phone # (303) 727-9205
Fax # (212) 951-8930
24 Hour Emergency Response # (800) 283-2933
johnleonard@lviservices.com
www.lviservices.com

Emergency/Facility Response
Asbestos/Lead/Mold Abatement
Demolition/Decommissioning
Fireproofing - Fiber/Cementitious/Intumescent

CONFIDENTIAL

| | A | B | C |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | Proposed Employee Reduction | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | Lorraine Glenn | $82,500.00 | |
| 13 | Robin Keller | $41,200.00 | |
| 14 | Shari Demblin | $85,000.00 | |
| 15 | Peggy Craemer | $52,500.00 | |
| 16 | Marcy Juran | $55,000.00 | |
| 17 | Kristen Braun | $40,000.00 | |
| 18 | Jerry Fields | $175,000.00 | $8,400.00 |
| 19 | Matt Demblin | $160,000.00 | $6,000.00 |
| 20 | Ron Nardone | $160,000.00 | $6,000.00 |
| 21 | Chareles LeFever | $156,000.00 | |
| 22 | Mike Debenedet | $75,000.00 | |
| 23 | | | |
| 24 | | $1,082,200.00 | $20,400.00 |
| 25 | | | |
| 26 | Total proposed reduction | $1,102,600.00 | |

CONFIDENTIAL

LVI 001175

# Exhibit 33

1

1

2   UNITED STATES DISTRICT COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   No. 10 Civ. 9308(JSR)

5   ------------------------------------------x

6   BURTON T. FRIED,

7                           Plaintiff,

8           - against -

9   LVI SERVICES, INC., LVI PARENT CORP., CODE

10   HENNESSY SIMMONS, LLC d/b/a CHS PRIVATE

11   EQUITY V LP; APOLLO INVESTMENT CORP.,

12   SCOTT E. STATE, in his official and

13   individual capacities; BRIAN SIMMONS, in

14   his official and individual capacities;

15   RAJAY BAGARIA, in his official and

16   individual capacities; GERALD J. GIRARDI,

17   in his official and individual capacities,

18                           Defendants.

19   ------------------------------------------x

20                           May 25, 2011

                            11:10 a.m.

21

22

23

24

25

**2**

```
 1
 2
 3
 4          VIDEOTAPE DEPOSITION of BRIAN
 5   SIMMONS, taken by the Plaintiff, pursuant
 6   to Notice, held at the offices of Thompson
 7   Wigdor & Gilly, LLP, 85 Fifth Avenue, New
 8   York, New York, before Debbie Zaromatidis,
 9   a Shorthand Reporter and Notary Public of
10   the State of New York.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**3**

```
 1
 2   A P P E A R A N C E S :
 3
 4   THOMPSON WIGDOR & GILLY, LLP
 5   Attorneys for Plaintiff
 6        85 Fifth Avenue
 7        New York, New York 10003
 8   BY:  SHAFFIN A. DATOO, ESQ.
 9        MATTHEW GORMAN, ESQ.
10
11   SIDLEY AUSTIN, LLP
12   Attorneys for Defendants
13        787 Seventh Avenue
14        New York, New York 10019
15   BY:  JOANNE SELTZER, ESQ.
16
17
18   ALSO PRESENT:
19   BURTON FRIED
20   J.D. MARTINEZ, Videographer
21
22
23
24
25
```

**4**

```
 1
 2            S T I P U L A T I O N S
 3
 4        IT IS HEREBY STIPULATED AND
 5   AGREED by and between the Attorneys for
 6   the respective parties hereto that filing
 7   and sealing be and the same are hereby
 8   waived.
 9        IT IS FURTHER STIPULATED AND
10   AGREED that all objections except as to
11   the form of the question, shall be
12   reserved to the time of the trial.
13        IT IS FURTHER STIPULATED AND
14   AGREED that the within examination may be
15   signed and sworn to before any notary
16   public with the same force and effect as
17   though signed and sworn to before this
18   Court.
19
20
21
22
23
24
25
```

**5**

```
 1
 2        THE VIDEOGRAPHER:  We are on    11:09:53
 3   the record.  My name is J.D. Martinez of   11:10:00
 4   Veritext New York.  The date today is May  11:10:03
 5   25, 2011, and the time is 11:10 a.m.  This 11:10:07
 6   deposition is being held in the office of  11:10:11
 7   Thompson Wigdor & Gilly, LLP located at 85 11:10:15
 8   Fifth Avenue, New York, New York.  The     11:10:18
 9   caption of the case is Burton T. Fried     11:10:19
10   versus LVI Services, Inc. et al. filed in  11:10:21
11   the United States District Court, Southern 11:10:25
12   District of New York.                      11:10:27
13        The name of the witness is Brian      11:10:29
14   Simmons.  At this time the attorneys will  11:10:30
15   identify themselves and the parties they   11:10:33
16   represent after which our court reporter,  11:10:35
17   Debbie Zaromatidis, will swear in the      11:10:36
18   witness, and we can proceed.               11:10:39
19        MS. SELTZER:  Joanne Seltzer          11:10:42
20   with Sidley Austin representing all the    11:10:43
21   defendants.                                11:10:46
22        MR. DATOO:  Shaffin Datoo with        11:10:47
23   Thompson Widgor & Gilly representing the   11:10:51
24   plaintiff Burton T. Fried.                 11:10:51
25
```

2 (Pages 2 to 5)

**VERITEXT REPORTING COMPANY**

212-267-6868                                    516-608-2400

**6**

```
 1
 2    BRIAN SIMMONS,
 3    having first been duly sworn by a Notary
 4    Public of the State of New York, was
 5    examined and testified as follows:
 6    EXAMINATION BY MR. DATOO:              11:11:03
 7       Q.   Good morning, Mr. Simmons.  As I  11:11:03
 8    mentioned to you earlier, my name is    11:11:05
 9    Shaffin Datoo.  To my left is my colleague  11:11:07
10    Matthew Gorman, and to his left, as you  11:11:10
11    know, is Burt Fried.                    11:11:13
12          We are going to ask you some       11:11:15
13    questions today, and hopefully you can  11:11:17
14    answer all of them unless of course your  11:11:20
15    attorney directs you not to answer a    11:11:23
16    question.  I am just going to start off by  11:11:26
17    asking you some preliminary questions.   11:11:28
18          Is your ability to tell the        11:11:29
19    truth in any way impaired today?        11:11:30
20       A.   No.                             11:11:32
21       Q.   Do you understand that the      11:11:33
22    answers you are about to give are under  11:11:34
23    oath, and that you are subject to       11:11:35
24    penalties of perjury if you give an     11:11:37
25    untruthful answer?                      11:11:40
```

**7**

```
 1                  SIMMONS
 2       A.   Yes.                            11:11:41
 3       Q.   I am going to assume that if you  11:11:41
 4    answer a question, that you understood it.  11:11:43
 5    If you don't understand a question, let me  11:11:45
 6    know, and I will ask the question in a  11:11:47
 7    different way?                          11:11:49
 8       A.   Thank you.                      11:11:49
 9       Q.   Please give verbal answers to my  11:11:50
10    questions.  Don't shake your head or nod  11:11:52
11    it.  The court reporter won't be able to  11:11:56
12    take that down.  Also please let me finish  11:11:58
13    asking a question even though you may   11:12:01
14    already think you know where I am with it.  11:12:03
15    That is -- once again that is for the   11:12:09
16    court reporter.                         11:12:10
17          If you need a break, let me        11:12:11
18    know.  The only condition is that you   11:12:14
19    answer the last question asked.         11:12:15
20          In connection with this lawsuit,   11:12:18
21    did you provide your attorney with all  11:12:20
22    responsive documents?                   11:12:22
23       A.   Yes.                            11:12:23
24       Q.   And where did you look to find  11:12:24
25    these documents?                        11:12:27
```

**8**

```
 1                  SIMMONS
 2       A.   I looked in my e-mail files at   11:12:27
 3    work, and I instructed various people at  11:12:32
 4    my firm to look through the firm's files  11:12:35
 5    on our investment in LVI.               11:12:38
 6       Q.   Do you have a personal e-mail   11:12:41
 7    account?                                11:12:43
 8       A.   I do not.                       11:12:44
 9       Q.   Do you keep any work-related    11:12:45
10    documents at home?                      11:12:48
11       A.   I do not.                       11:12:49
12       Q.   Have you ever been sued before?  11:12:50
13       A.   My firm has been sued.  I am not  11:12:52
14    sure if I was named personally in any of  11:12:58
15    those suits or not.                     11:13:00
16       Q.   And other than this lawsuit, has  11:13:01
17    anyone ever accused you of discrimination  11:13:03
18    before?                                 11:13:06
19       A.   No.                             11:13:06
20       Q.   Have you ever given any sworn   11:13:06
21    testimony before?                       11:13:12
22       A.   Yes.                            11:13:12
23       Q.   How many times?                 11:13:13
24       A.   Once.                           11:13:14
25       Q.   And in what type of proceeding  11:13:16
```

**9**

```
 1                  SIMMONS
 2    was that?                               11:13:20
 3       A.   It was a deposition.            11:13:20
 4       Q.   And do you know in what type of  11:13:21
 5    case that was?                          11:13:23
 6       A.   I don't.                        11:13:24
 7       Q.   Okay.  Do you know how long ago  11:13:26
 8    you were deposed?                       11:13:29
 9       A.   Approximately twenty years.     11:13:30
10       Q.   Okay.  Have you ever been       11:13:32
11    deposed in connection with an employment  11:13:34
12    discrimination case?                    11:13:35
13       A.   No.                             11:13:37
14       Q.   Did you do anything to prepare  11:13:37
15    for this deposition?                    11:13:40
16       A.   I met with my attorney.         11:13:41
17       Q.   How many times?                 11:13:44
18       A.   Once.                           11:13:47
19       Q.   And for how long?               11:13:48
20       A.   Approximately two hours.        11:13:49
21       Q.   And did you read Mr. Fried's    11:13:52
22    deposition transcript?                  11:13:56
23       A.   I did not.                      11:13:57
24       Q.   Did you read any excerpts or    11:13:58
25    summaries of his deposition transcript?  11:14:00
```

3 (Pages 6 to 9)

VERITEXT REPORTING COMPANY

212-267-6868                                            516-608-2400

**10**

SIMMONS

1             SIMMONS
2   A.  I did not.         11:14:03
3   Q.  Mr. Simmons, how old are you?   11:14:04
4   A.  Fifty-one.         11:14:06
5   Q.  And what is your date of birth?  11:14:06
6   A.  April 24.         11:14:08
7   Q.  What year?         11:14:10
8   A.  1960.         11:14:11
9   Q.  And do you know the plaintiff in  11:14:16
10 this lawsuit, Mr. Burt Fried?     11:14:18
11   A.  Yes.         11:14:20
12   Q.  How so?         11:14:21
13   A.  He is the former chairman of the  11:14:21
14 board of LVI.         11:14:27
15   Q.  And do you know how old Mr.    11:14:30
16 Fried is?         11:14:32
17   A.  I do not.         11:14:32
18   Q.  Okay. How old do you think he  11:14:35
19 is?         11:14:37
20   A.  Approximately 70.     11:14:37
21   Q.  How long have you known Mr.    11:14:39
22 Fried?         11:14:42
23   A.  Approximately five and a half  11:14:42
24 years.         11:14:45
25   Q.  What LVI entity employed Mr.   11:14:46

**11**

1             SIMMONS
2 Fried in 2010?         11:14:53
3   A.  I don't know.        11:14:55
4   Q.  Do you know who Mr. Fried worked  11:14:56
5 for in 2010?         11:15:02
6     MS. SELTZER: Objection. Asked  11:15:06
7 and answered. You can answer it.   11:15:07
8   A.  I don't know.        11:15:09
9   Q.  Do you know if he worked for LVI  11:15:10
10 Parent Corp.?         11:15:12
11   A.  I don't know.        11:15:13
12   Q.  Do you know if he worked for LVI  11:15:14
13 Services?         11:15:17
14   A.  I don't know.        11:15:17
15   Q.  Do you know what his job title  11:15:18
16 was?         11:15:20
17     MS. SELTZER: I am sorry.   11:15:22
18 Which portion of 2010 are you talking  11:15:23
19 about?         11:15:25
20     MR. DATOO: I'm sorry. Sorry.  11:15:26
21   Q.  In November 2010, do you know  11:15:28
22 what his job title was?     11:15:29
23   A.  November 2010 I believe is the  11:15:31
24 month he resigned from various potions in  11:15:40
25 various LVI entities.     11:15:43

**12**

1             SIMMONS
2   Q.  Was he --         11:15:45
3   A.  So it is -- so I don't know what  11:15:46
4 his job title was in November.    11:15:48
5   Q.  Was he -- did he resign or was  11:15:50
6 he fired?         11:15:51
7   A.  He resigned from some positions,  11:15:52
8 and he was terminated from some positions.  11:16:00
9   Q.  Do you know what position he   11:16:02
10 resigned from?        11:16:03
11   A.  I do not.         11:16:04
12   Q.  Do you know what positions he   11:16:06
13 was fired from?        11:16:07
14   A.  I do not.         11:16:08
15   Q.  Are you currently employed?   11:16:08
16   A.  Yes.         11:16:10
17   Q.  Full time?        11:16:10
18   A.  Yes.         11:16:12
19   Q.  Where do you work?     11:16:12
20   A.  CHS Capital.        11:16:13
21   Q.  And what does CHS do?     11:16:15
22   A.  CHS is a private equity fund   11:16:17
23 manager.         11:16:20
24   Q.  How long have you worked there?  11:16:22
25   A.  Approximately twenty-three   11:16:24

**13**

1             SIMMONS
2 years.         11:16:26
3   Q.  And what is your current job   11:16:26
4 title?         11:16:29
5   A.  Managing partner.     11:16:29
6   Q.  And how long have you held that  11:16:30
7 title?         11:16:32
8   A.  Approximately a year.    11:16:32
9   Q.  And what was your previous job  11:16:37
10 title?         11:16:40
11   A.  Partner.        11:16:40
12   Q.  How long did you hold that title  11:16:41
13 for?         11:16:43
14   A.  Approximately twenty-one years.  11:16:44
15   Q.  And what are your job duties,   11:16:48
16 your current job duties?     11:16:50
17   A.  I am responsible for numerous   11:16:51
18 aspects of managing my firm. I serve as  11:16:56
19 one of the partners on an investment team.  11:17:02
20 I serve on our management committee, and I  11:17:05
21 serve on our investment committee.   11:17:08
22   Q.  What does LVI Parent Corp. do?  11:17:10
23   A.  I don't know.        11:17:15
24   Q.  Do you know who owns LVI Parent?  11:17:17
25   A.  No.         11:17:21

4 (Pages 10 to 13)

VERITEXT REPORTING COMPANY

212-267-6868                         516-608-2400

**18**

SIMMONS

1
2     A.   Or in New York at LVI's office.   11:21:32
3     Q.   When were you first appointed to   11:21:35
4  the board of directors?   11:21:36
5     A.   November of 2005.   11:21:38
6     Q.   And how many seats does CHS have   11:21:40
7  on the board of directors?   11:21:43
8     A.   Two.   11:21:45
9     Q.   And do you occupy one of those   11:21:45
10 seats?   11:21:50
11    A.   Yes, I do.   11:21:50
12    Q.   And who occupies the other seat?   11:21:51
13    A.   Rob Hogan.   11:21:53
14    Q.   And what types of decisions does   11:21:54
15 the board make?   11:22:01
16    A.   The board approves an annual   11:22:10
17 budget.  The board approves acquisitions.   11:22:13
18 The board approves other requests   11:22:16
19 presented by the chief executive officer.   11:22:19
20    Q.   And what types of requests are   11:22:22
21 those?   11:22:24
22    A.   Requests for capital spending,   11:22:24
23 requests to entering into long-term   11:22:29
24 contracts.   11:22:32
25    Q.   How about closing offices?   11:22:34

**19**

SIMMONS

1
2     A.   No.   11:22:36
3     Q.   And does the board make any   11:22:38
4  personnel decisions?   11:22:41
5     A.   Other than hiring a chief   11:22:43
6  executive officer, no.   11:22:47
7     Q.   Now, since you've been on the   11:22:48
8  board, were you given any   11:22:55
9  anti-discrimination training?   11:22:56
10    A.   No.   11:22:58
11       MS. SELTZER:  Objection.   11:23:00
12 Through the board or through his --   11:23:01
13       MR. DATOO:  Through the board.   11:23:03
14    A.   No.   11:23:05
15    Q.   Okay.  Now, the entity whose   11:23:05
16 board you sit on, the LVI entity whose   11:23:10
17 board you sit on, does that entity have a   11:23:14
18 handbook?   11:23:16
19    A.   I don't know.   11:23:16
20    Q.   Does that entity whose board you   11:23:17
21 sit on have an equal employment   11:23:19
22 opportunity policy?   11:23:22
23    A.   I imagine so.   11:23:23
24    Q.   Why?   11:23:29
25       MS. SELTZER:  Objection, but   11:23:30

**20**

SIMMONS

1  you can answer.   11:23:31
2     A.   I believe all companies have   11:23:31
3  EEOC policies.   11:23:33
4     Q.   Okay.  Does the entity whose   11:23:34
5  board you sit on have an   11:23:36
6  anti-discrimination policy?   11:23:38
7     A.   I am sorry.  Repeat the   11:23:39
8  question, please.   11:23:44
9     Q.   Does the entity whose board you   11:23:44
10 sit on have an anti-discrimination policy?   11:23:46
11    A.   Sure.  Yes.   11:23:48
12    Q.   And does the entity whose board   11:23:50
13 you sit on have an anti-retaliation   11:23:53
14 policy?   11:23:56
15    A.   I don't know.   11:23:56
16    Q.   What is LVI Acquisition Corp.?   11:23:59
17    A.   I am not sure.   11:24:06
18    Q.   How many employees does LVI   11:24:17
19 have?   11:24:21
20    A.   I don't know.   11:24:21
21    Q.   Does the entity of the board you   11:24:25
22 sit on have any employees?   11:24:41
23    A.   I don't know.   11:24:43
24    Q.   Does the entity whose board you   11:24:46

**21**

SIMMONS

1  sit on have any officers?   11:24:50
2     A.   I am not -- I don't know.   11:24:51
3     Q.   Who is Jeffrey Smith?   11:25:01
4     A.   Jeffrey Smith is an attorney   11:25:02
5  with Sidley Austin.   11:25:07
6     Q.   Does he serve on the board of   11:25:09
7  directors for the entity whose board you   11:25:11
8  sit on?   11:25:13
9     A.   No.   11:25:13
10    Q.   Does he -- is he a secretary to   11:25:14
11 the board of directors for the entity you   11:25:16
12 sit on?   11:25:18
13    A.   No.   11:25:19
14       MS. SELTZER:  If -- if I might   11:25:19
15 make a suggestion, if you phrase your   11:25:32
16 questions between LVI Services he might be   11:25:35
17 able to give you better answers.   11:25:38
18    A.   I can't distinguish between the   11:25:39
19 LVI entities.  LVI to me is LVI.  Period.   11:25:41
20       MR. DATOO:  Let's go off the   11:25:46
21 record.   11:25:47
22       THE VIDEOGRAPHER:  Off the   11:25:50
23 record.  The time is 11:25 a.m.   11:25:51
24       (Discussion held off the   11:26:37

6  (Pages 18 to 21)

**62**

SIMMONS

```
1           SIMMONS
2    A.   Do I recall when?        12:08:12
3    Q.   When.               12:08:14
4    A.   No, I don't recall exactly when.  12:08:15
5    Q.   Do you know if it was in '06,    12:08:16
6  '07, '08, '09, '10?            12:08:19
7    A.   I just don't remember.  I am   12:08:22
8  sorry.              12:08:24
9    Q.   Now, did Mr. State want to speak 12:08:24
10 to Mr. Fried before accepting an offer  12:08:28
11 from LVI?               12:08:30
12   A.   Yes.              12:08:32
13   Q.   Why?              12:08:32
14   A.   He was concerned about his     12:08:33
15 ability to conduct the job of chief    12:08:34
16 executive officer without interference  12:08:39
17 with Mr. Fried.           12:08:41
18   Q.   Why would he be concerned?    12:08:42
19   A.   I don't know why.        12:08:44
20   Q.   And did Mr. Fried speak to Mr.   12:08:49
21 State?              12:08:53
22   A.   Yes, I believe so.       12:08:53
23   Q.   And do you know what they     12:08:54
24 discussed?              12:08:55
25   A.   I believe they discussed the   12:08:56
```

**63**

SIMMONS

```
1           SIMMONS
2  autonomy that Mr. State would have to   12:08:59
3  organize the affairs of the company in the 12:09:02
4  way in which he saw fit.       12:09:04
5    Q.   And do you know how that     12:09:09
6  conversation went?          12:09:10
7    A.   I believe Mr. Fried assured Mr.  12:09:10
8  State that he would have free rein to run  12:09:12
9  the company any way he wanted, and that   12:09:15
10 Mr. Fried would remain at the company only 12:09:17
11 as long as Mr. State desired.     12:09:19
12   Q.   And how do you know that they   12:09:21
13 had this discussion?         12:09:24
14   A.   Mr. Fried told me.       12:09:25
15   Q.   After Mr. State started working  12:09:29
16 for LVI, did Mr. Fried's job title change? 12:09:36
17   A.   Yes.              12:09:40
18   Q.   To what?           12:09:41
19   A.   To -- back to chairman of the   12:09:43
20 board.              12:09:46
21   Q.   And what were his job duties   12:09:46
22 after his title changed?       12:09:50
23   A.   I don't know.         12:09:51
24   Q.   Do you know if they were any   12:09:52
25 different from when -- from what his job  12:09:55
```

**64**

SIMMONS

```
1           SIMMONS
2  duties were as chairman?       12:09:57
3    MS. SELTZER:   Just as a      12:09:59
4  clarification, you're talking about his   12:10:00
5  duties as chairman of the board of the   12:10:02
6  directors?             12:10:06
7    MR. DATOO:   His duties as     12:10:07
8  chairman.             12:10:08
9    MS. SELTZER:   Okay.       12:10:10
10   A.   Chairman of the board of      12:10:11
11 directors.              12:10:12
12   Q.   As chairman, that is what I am   12:10:12
13 asking.  Do you know what his job duties  12:10:13
14 were as chairman?          12:10:15
15   A.   Is there a distinction between   12:10:16
16 chairman and chairman of the board of    12:10:19
17 directors?              12:10:20
18   Q.   There is.          12:10:21
19   A.   Can you explain that to me,    12:10:21
20 please?              12:10:23
21   Q.   Sure.  Why don't we go off the  12:10:24
22 record because this is not going to be a  12:10:26
23 question answer, so --        12:10:27
24     THE VIDEOGRAPHER:   Going off   12:10:29
25 the record.  12:10 p.m.        12:10:29
```

**65**

SIMMONS

```
1           SIMMONS
2     (Discussion held off the     12:11:00
3  record.)              12:11:00
4     THE VIDEOGRAPHER:   We are     12:11:01
5  returning to the record.  12:11 p.m.    12:11:07
6    Q.   Was Mr. Fried an employee of    12:11:10
7  LVI?              12:11:13
8    A.   At what time?         12:11:13
9    Q.   At any time.         12:11:22
10   A.   At any time.  Yes, Mr. Fried was 12:11:23
11 an employee of at least one LVI entity.   12:11:25
12   Q.   And of that LVI entity that he   12:11:28
13 was an employee of, what was his job    12:11:30
14 title?              12:11:32
15   A.   I don't know.         12:11:32
16   Q.   And was he also the chairman of  12:11:33
17 the board of directors?        12:11:36
18   A.   I --             12:11:37
19     MS. SELTZER:   I object to the   12:11:41
20 form.              12:11:42
21   A.   At what point in time?     12:11:42
22   Q.   At any point in time.      12:11:44
23   A.   Yes, Mr. Fried served as      12:11:45
24 chairman of the board of directors     12:11:47
25 and -- and to my knowledge that was his  12:11:49
```

17 (Pages 62 to 65)

**74**

SIMMONS

1
2  performance at board meetings?        12:31:05
3      A.   I don't remember the exact      12:31:07
4  number.  I imagine I observed something   12:31:09
5  negative at every board meeting.        12:31:11
6      Q.   And what was that?             12:31:13
7      A.   Mr. Fried can be a challenging   12:31:15
8  individual to work with in situations    12:31:20
9  where opinions counter to his are proposed 12:31:22
10 and discussed and considered, and I     12:31:28
11 observed that challenging behavior on    12:31:31
12 numerous occasions.                     12:31:33
13     Q.   And did you speak to Mr. Fried  12:31:35
14 about that?                             12:31:37
15     A.   I may have.  I don't remember.  12:31:37
16     Q.   And did you put that in writing, 12:31:39
17 your observations?                      12:31:45
18     A.   I may have.  I don't remember.  12:31:46
19     Q.   Did you ever put in writing your 12:31:48
20 observations regarding Mr. Fried's work  12:31:50
21 performance?                            12:31:52
22         MS. SELTZER:   Objection.        12:31:53
23     A.   I may have.  I don't remember.  12:31:54
24     Q.   And if you would have, would you 12:31:55
25 have provided that -- those documents to  12:31:57

**75**

SIMMONS

1
2  your counsel?                           12:31:59
3      A.   No.  Well, in connection with   12:31:59
4  this lawsuit, sure.  If I have them, they 12:32:03
5  have them.                              12:32:07
6      Q.   Okay.  Did you attend a meeting  12:32:07
7  on October 19, 2010 between Mr. State and 12:32:16
8  Mr. Fried?                              12:32:20
9      A.   I don't believe so.            12:32:21
10     Q.   Do you know if they met that    12:32:25
11 day?                                    12:32:27
12     A.   I don't know.                   12:32:27
13     Q.   Do you know if Mr. State made   12:32:28
14 any comments regarding Mr. Fried's age?   12:32:29
15     A.   I have no idea.                 12:32:32
16     Q.   Did Mr. Fried ever tell you that 12:32:34
17 Mr. State made a comment about his age?   12:32:36
18     A.   Yes.                           12:32:39
19     Q.   When?                          12:32:39
20     A.   At the board meeting.          12:32:40
21     Q.   And --                         12:32:42
22     A.   The final board meeting at which 12:32:43
23 Mr. Fried -- that Mr. Fried attended.     12:32:45
24     Q.   And what did Mr. Fried tell you? 12:32:47
25     A.   He didn't tell me anything.  He  12:32:49

**76**

SIMMONS

1
2  told the board in a -- in the middle of a 12:32:50
3  long tirade regarding the injustices being 12:32:55
4  done to him that he was well aware        12:32:59
5  of -- of the legal ramifications of age   12:33:08
6  discrimination, and he threatened Mr.     12:33:11
7  State and the board with a proceeding     12:33:15
8  regarding alleged age discrimination.     12:33:17
9      Q.   Did he tell you what comment     12:33:20
10 Mr. State made to him about his age?      12:33:22
11     A.   I don't believe so.             12:33:27
12     Q.   Did he tell you about any        12:33:28
13 comment Mr. State made to him about his   12:33:29
14 age?                                    12:33:31
15     A.   I don't believe so.  He simply   12:33:32
16 stated that comments had been made.       12:33:36
17     Q.   But he didn't -- to your         12:33:37
18 knowledge, he didn't tell you what comment 12:33:38
19 was made?                               12:33:40
20     A.   If he did, I don't remember.     12:33:40
21     Q.   Did you investigate Mr. Fried's  12:33:42
22 allegations of age discrimination?        12:33:46
23     A.   What do you mean by             12:33:48
24 "investigate"?                          12:33:51
25     Q.   Did you look into his           12:33:51

**77**

SIMMONS

1
2  allegations of age discrimination?        12:33:52
3      A.   Other than the discussion -- I   12:33:54
4  guess no is the answer.  No.             12:34:03
5      Q.   Did the board?                  12:34:06
6      A.   No.                            12:34:07
7      Q.   Why not?                        12:34:07
8      A.   We didn't deem them to have      12:34:08
9  enough validity to investigate.          12:34:14
10     Q.   Okay.  Now, did there come a     12:34:16
11 time when Mr. Fried's job duties -- when   12:34:34
12 Mr. State started transitioning Mr.       12:34:37
13 Fried's job duties to other people?       12:34:40
14     A.   I'm not certain.                12:34:41
15     Q.   Did there come a time when Mr.   12:34:42
16 Fried e-mailed you a list of his job      12:34:44
17 duties?                                 12:34:46
18     A.   Whose job duties?               12:34:47
19     Q.   His job duties?                 12:34:48
20     A.   No.                            12:34:50
21     Q.   Did there come a time when Mr.   12:34:51
22 Fried e-mailed you a list of his job      12:34:53
23 duties?                                 12:34:56
24         MS. SELTZER:   Mr. Fried's job    12:34:57
25 duties?                                 12:34:59

20 (Pages 74 to 77)

130

SIMMONS

1
2    Q.   -- did you send another letter   02:29:43
3    to Burt?                              02:29:44
4    A.   I don't remember.               02:29:45
5    Q.   Okay.                           02:29:47
6    A.   At this point it became pretty   02:29:51
7    clear that Burt had chartered a course   02:29:54
8    that was highly unlikely to result in an   02:29:56
9    acceptable resolution of this dispute,   02:29:58
10   management dispute between himself and Mr.   02:30:02
11   State.                                02:30:04
12   Q.   Now, did there come a time when   02:30:04
13   Mr. Fried was fired?                  02:30:06
14   A.   Well, Mr. Fried was asked to    02:30:07
15   assume the position of chairman of the   02:30:11
16   board with a defined list of          02:30:15
17   responsibilities and a compensation   02:30:18
18   arrangement that would have enabled him to   02:30:21
19   earn the same level of compensation he had   02:30:24
20   previously been paid assuming he worked   02:30:28
21   the same number of hours, and he was told   02:30:30
22   that if he did not accept that position   02:30:33
23   then he would be terminated.          02:30:36
24   Q.   So did there come a time when he   02:30:38
25   was fired?                            02:30:40

131

SIMMONS

1
2    A.   Burt did not accept the position   02:30:40
3    as chairman of the board, and ultimately   02:30:42
4    he was terminated.                    02:30:45
5    Q.   Do you know when he was fired?   02:30:46
6    A.   I don't know the exact date.    02:30:47
7         (Document handed to witness.)   02:31:05
8    Q.   Handing you a document that has   02:31:05
9    been previously marked as Plaintiff's 11.   02:31:07
10   A.   Right.                          02:31:09
11   Q.   Take a look at that document and   02:31:09
12   let me know if you have seen it before.   02:31:11
13   A.   I have seen it before.          02:31:12
14   Q.   Did you author this document?   02:31:14
15       MS. SELTZER:   Objection.        02:31:16
16   Q.   Did you draft this document?    02:31:18
17       MS. SELTZER:   Author?           02:31:20
18       MR. DATOO:   Yes.                02:31:20
19       MS. SELTZER:   Sorry.            02:31:21
20   A.   Yes.                            02:31:24
21   Q.   Okay.  Can I direct your        02:31:25
22   attention to the second full paragraph in   02:31:28
23   this letter?  It says, "Effective     02:31:30
24   11/30/10, your employment with LVI    02:31:36
25   Services, Inc. will terminate."       02:31:39

132

SIMMONS

1
2    Do you see that?                      02:31:43
3    A.   I do.                           02:31:44
4    Q.   Does that refresh your          02:31:45
5    recollection as to whether Mr. Fried   02:31:45
6    was -- on when Mr. Fried was terminated?   02:31:48
7    A.   It appears he was terminated    02:31:50
8    effective 11/30.                      02:31:52
9    Q.   Okay.  And was that termination   02:31:54
10   contingent upon him accepting any sort of   02:31:56
11   arrangement, alternative working      02:31:59
12   arrangement?                          02:32:01
13       MS. SELTZER:   Objection to the   02:32:02
14   form.                                 02:32:03
15   A.   I'm not sure I understand the   02:32:04
16   question.                             02:32:05
17   Q.   You testified earlier that if   02:32:05
18   Mr. Fried did not accept a consulting   02:32:07
19   arrangement, he would be terminated; is   02:32:09
20   that correct?                         02:32:11
21       MS. SELTZER:   He did not say    02:32:12
22   that.                                 02:32:13
23       THE WITNESS:   Could you read    02:32:13
24   that back to me, please.              02:32:14
25       (Record read.)                   02:34:10

133

SIMMONS

1
2    Q.   Okay.  So if Mr. Fried -- was   02:34:10
3    Mr. Fried terminated regardless of whether   02:34:20
4    he accepted or didn't accept a position?   02:34:23
5        MS. SELTZER:   Objection to the   02:34:27
6    form, but you can answer.             02:34:28
7    A.   Yes.  So I think we need to     02:34:29
8    expand a little on my earlier answer.   02:34:32
9    What this letter does is what we intended   02:34:35
10   it to do, which is to make Mr. Fried the   02:34:37
11   non-executive chairman of LVI with    02:34:40
12   prescribed responsibilities and a mutually   02:34:43
13   agreed upon compensation arrangement.  In   02:34:46
14   order to make Mr. Fried a non-executive   02:34:49
15   chairman, his employment by definition had   02:34:53
16   to be terminated.  By definition a    02:34:55
17   non-executive chairman is not an employee,   02:34:57
18   and we addressed the compensation and   02:35:00
19   other benefit aspects of his relationship   02:35:03
20   with LVI outside of a relationship with   02:35:07
21   the company as an employee.  So that was   02:35:10
22   the purpose of this letter.           02:35:12
23   Q.   So his status as an employee of   02:35:14
24   LVI was terminated?                   02:35:19
25   A.   That is correct.                02:35:22

34 (Pages 130 to 133)

VERITEXT REPORTING COMPANY

212-267-6868                                    516-608-2400

```
                                              158
 1            SIMMONS
 2      A.   No.                    02:58:15
 3      Q.   Do you know which office she   02:58:15
 4  worked out of?                 02:58:17
 5      A.   I have been told she worked in   02:58:17
 6  the company's Westport office.   02:58:19
 7      Q.   Do you have any personal   02:58:21
 8  knowledge about the quality of her work?   02:58:25
 9      A.   None whatsoever.       02:58:27
10      Q.   Do you have any knowledge about   02:58:28
11  the quality of her work?       02:58:29
12      A.   None whatsoever.       02:58:30
13      Q.   Now, did there come a time when   02:58:31
14  Ms. Dembin was terminated?     02:58:34
15      A.   I believe so.          02:58:37
16      Q.   Do you know when that was?   02:58:38
17      A.   I don't know.          02:58:40
18      Q.   Do you know why she was   02:58:41
19  terminated?                    02:58:42
20      A.   I believe she was terminated as   02:58:43
21  part of a general reduction in force that   02:58:45
22  affected a range of employees.   02:58:47
23      Q.   Sorry.  What was the last part?   02:58:49
24      A.   A general reduction in force   02:58:52
25  that affected a group of employees.   02:58:54
```

```
                                              159
 1            SIMMONS
 2      Q.   And was that group of employees   02:58:56
 3  limited only to the Westport office?   02:58:57
 4      A.   I don't believe so.    02:58:59
 5      Q.   Was it a company-wide reduction   02:59:02
 6  in force?                      02:59:04
 7      A.   It -- I believe it affected   02:59:04
 8  multiple offices of the company and --   02:59:06
 9      Q.   Do you know which office?   02:59:09
10      A.   I don't know which offices.   02:59:10
11      Q.   Do you know what people?   02:59:11
12      A.   I don't know.          02:59:12
13      Q.   Do you know how many people?   02:59:13
14      A.   No, I know -- I don't know.   02:59:14
15      Q.   Were you involved in the   02:59:17
16  decision -- in the reduction in force   02:59:18
17  decision?                      02:59:22
18      A.   No, I was not.         02:59:23
19      Q.   Was the board consulted on   02:59:24
20  the -- in the decision?        02:59:26
21      A.   No.                    02:59:28
22      Q.   Does Mr. State have discretion   02:59:28
23  to open and close offices?     02:59:30
24      A.   Absolutely.            02:59:32
25      Q.   Does he have discretion to hire   02:59:33
```

```
                                              160
 1            SIMMONS
 2  and fire?                      02:59:35
 3      A.   Absolutely.            02:59:36
 4      Q.   Why did the board -- why was the   02:59:37
 5  board involved in the decision to   02:59:40
 6  terminate Mr. Fried?           02:59:41
 7      A.   Because Mr. Fried works for the   02:59:42
 8  board.                         02:59:44
 9      Q.   Wasn't he also an employee at   02:59:45
10  LVI?                           02:59:46
11      A.   Mr. Fried reported to the board   02:59:47
12  of directors, so it is exactly that group   02:59:53
13  of people that were responsible for the   02:59:58
14  terms of his employees, and it was that   02:59:59
15  group of people that were able to make a   03:00:01
16  decision as to his ongoing role at the   03:00:02
17  company.                       03:00:05
18      Q.   He didn't report to Scott State?   03:00:05
19      A.   No.  He certainly didn't think   03:00:07
20  he reported to Scott State.  Scott State   03:00:08
21  certainly didn't think he reported to   03:00:10
22  Scott State.                   03:00:12
23      Q.   Who made the decision to close   03:00:12
24  the Westport office?           03:00:18
25      A.   I believe Scott -- Scott State.   03:00:19
```

```
                                              161
 1            SIMMONS
 2      Q.   Who made the decision to select   03:00:21
 3  which employees to be laid off?   03:00:24
 4      A.   With respect to the Westport   03:00:26
 5  office?                        03:00:30
 6      Q.   In connection with this general   03:00:31
 7  reduction in force that affected --   03:00:32
 8      A.   Mr. State.  And he may have   03:00:35
 9  received input from other managers have the   03:00:37
10  company.  I'm not certain.     03:00:38
11      Q.   But the board had nothing to do   03:00:40
12  with this?                     03:00:41
13      A.   The board had nothing to do with   03:00:41
14  it.                            03:00:43
15      Q.   Okay.  Were you involved in any   03:00:43
16  communications whether it be verbal or   03:00:49
17  written regarding a reduction in force?   03:00:53
18      A.   I believe there were some   03:00:55
19  e-mails that outlined the potential   03:00:57
20  expense savings associated with a variety   03:01:00
21  of actions, and I believe I have seen some   03:01:03
22  of those e-mails.              03:01:04
23      Q.   Do you know when the decision   03:01:05
24  was made to reduce the force?   03:01:07
25      A.   I don't know.          03:01:08
```

**41 (Pages 158 to 161)**

|  | 179 |
|---|---|

```
 1              SIMMONS
 2   various members of his executive      03:27:52
 3   management team.                      03:27:54
 4      Q.   So if these responsibilities  03:27:55
 5   were delegated to Mr. Fried by the CEO,   03:27:56
 6   would that be acceptable?             03:27:59
 7      A.   Yes, that would be acceptable to   03:28:00
 8   me.                                   03:28:02
 9      Q.   Okay.  And do you know if these   03:28:03
10   were the duties that were delegated Mr.   03:28:08
11   Fried while he was -- while Mr. McNamara   03:28:10
12   was CEO?                              03:28:14
13      A.   I don't --                    03:28:15
14          MS. SELTZER:   I object.  Asked   03:28:17
15   and answered about 1200 times.        03:28:18
16          MR. DATOO:   Let's go for 1201   03:28:20
17   then.                                 03:28:21
18          MS. SELTZER:   Let's go for    03:28:22
19   1201.                                 03:28:24
20      A.   I don't know.                 03:28:24
21      Q.   Can I direct your attention to   03:28:31
22   the stack of exhibits in front of you that   03:28:32
23   is marked as Plaintiff's Exhibit 16.  I   03:28:35
24   you just want to draw your attention to   03:28:44
25   the e-mail you sent to Mr. Fried where you   03:28:46
```

|  | 180 |
|---|---|

```
 1              SIMMONS
 2   wrote: "You were earning every penny of   03:28:49
 3   it."                                  03:28:55
 4          Do you see that?              03:28:56
 5      A.   Yes.                          03:28:57
 6      Q.   Is that a true statement?     03:28:58
 7          MS. SELTZER:   Objection.  Asked   03:29:02
 8   and answered.                         03:29:03
 9      A.   Yes.                          03:29:03
10      Q.   Okay.                         03:29:04
11          MR. DATOO:   Okay.  Thank you   03:29:08
12   very much.                            03:29:12
13          THE WITNESS:   Thank you.      03:29:14
14          MR. DATOO:   No further        03:29:15
15   questions.                            03:29:15
16          (Continued on next page.)      03:29:15
17
18
19
20
21
22
23
24
25
```

|  | 181 |
|---|---|

```
 1              SIMMONS
 2          THE VIDEOGRAPHER:   We're going   03:29:16
 3   off the record.  3:29 p.m. End of today's   03:29:16
 4   questioning.                          03:29:20
 5          (Time noted: 3:29 p.m.)        03:29:22
 6
 7
 8
 9
10
11
12          BRIAN SIMMONS
13
14   Subscribed and sworn to before me
15   this    day of        , 2011
16
17                            .
18
19
20
21
22
23
24
25
```

|  | 182 |
|---|---|

```
 1
 2          C E R T I F I C A T I O N
 3
 4
 5
 6      I, DEBBIE ZAROMATIDIS, a Shorthand
 7   Reporter and a Notary Public, do hereby
 8   certify that the foregoing witness, BRIAN
 9   SIMMONS, was duly sworn on the date
10   indicated, and that the foregoing is a
11   true and accurate transcription of my
12   stenographic notes.
13      I further certify that I am not
14   employed by nor related to any party to
15   this action.
16
17
18
19
20
21
22
23              DEBBIE ZAROMATIDIS
24
25
```

45 (Pages 179 to 182)

VERITEXT REPORTING COMPANY

212-267-6868                                           516-608-2400

# Exhibit 34

**From:**      Scott State <scott.state@gmail.com>
**Sent:**      Thursday, October 14, 2010 3:36 PM
**To:**        Simmons, Brian P. <bsimmons@chsonline.com>; Hogan, Robert
               <rhogan@chsonline.com>
**Subject:**   Chairman Duties
**Attach:**    CHAIRMAN.doc

Gentlemen

I have been going back and forth with Burt on who does what at LVI. He has been pretty unhappy that I do not seek his counsel on almost everything and has expressed that view to me and a number of other members of senior management, all whom seem to be looking for new leadership and a new direction. This morning I initiated a phone call to Burt to start a process that completely defines his future role with LVI. My position was very clear that I would like his support in dealing with legacy issues such as litigation and claims and that other support would be as needed and requested by me. I was clear to indicate that I expected no direct involvement in the day to day activities of LVI or business on ago forward basis. Like most of my discussions with Burt on his continuing role he agreed. We then slated a meeting to discuss this again next week in person while I am in NYC. Burt said he had a list of what he believed his ongoing duties were already prepared and would send it to me. Attached is that list.

Here is my dilemma, after review of this list there is really only one bullet that pertains to the discussion I had with him 10 minutes earlier yet he somehow believes his view of his duties is consistent with my view. I can't be more clear than I have been and I don't see spending $1MM / yr to have Burt reviewing air travel and BS administrative items. My inclination is to go through this list with him and tell him that there is no reason that the Chairman of a Company would do any of these things. That discussion will not go well. It seems that Burt has a goal to remain active forever and these tasks he has latched on to were apparently supported by McNamera.

I am OK making moves on a number of senior people that don't pull their weight and not looking to involve the investors in those decisions or actions. With Burt I feel I must be more careful and seek your thoughts and counsel.

Scott

CONFIDENTIAL

Exhibit 35

| | |
|---|---|
| **From:** | Cutrone, Paul <pcutrone@lvi.com> |
| **Sent:** | Thursday, October 21, 2010 4:50 PM |
| **To:** | Cattan, Paul <PCattan@lviservices.com>; Pressa, Leonard <LPressa@Notes.lvi.com>; Rapuzzi, Frank <FrankRapuzzi@lviservices.com>; Balanag, Mark <MBalanag@Notes.lvi.com>; Maldonado, Natalie <NMaldonado@lviservices.com>; Silver, Greg <GSilver@lviservices.com> |
| **Subject:** | Fw: 2011 Planning Meeting |

FYI - let's review plans to get budget files ready and out by next Friday. Ideally, we get them out mid week but Friday is a must. Gives the BM's a week to produce and you and the RM's a week to review/roll up before the meeting. I'll set a call in the am.

**From:** JohnLeonard@lviservices.com [mailto:JohnLeonard@lviservices.com]
**Sent:** Thursday, October 21, 2010 10:51 AM
**To:** All Regional Managers-COO-CFO
**Cc:** State, Scott
**Subject:** 2011 Planning Meeting

Gents,

We will be having a planning meeting in Denver on November 13, 2011 at the Denver Office.  Please make airline arrangements to get into Denver Friday evening and depart Saturday Evening or Sunday Morning.  I will get Hotel Rooms downtown.

Note on the budget.  Each Branch will need to include ER above there base budget.  NorthStar will exceed 30 million worth of revenue this year that has run primarily through the branch office and we expect 50% growth next year, so we need to make sure the branch managers push there revenue to include this added sales growth.  Paul will be sending out the budgets tot he branch offices next week.


John M. Leonard
Chief Operating Officer
LVI Services Inc. & NorthStar Recovery Services
80 Broad Street
Third Floor
New York,  NY 10004


Cell #: (201) 370-2113
Phone # (303) 727-9205
Fax #: (212) 951-8930
24 hour disaster response - (800) 283-2933

johnleonard@lviservices.com
www.lviservices.com

Asbestos Abatement \ Demolition \ Mold Remediation
Emergency Response - Fire \ Water Restoration
Decommissioning \ Decontamination
Fiber \ Cementitious \ Intumescent Fireproofing

CONFIDENTIAL

LVI 003579

# Exhibit 36

**From:**       Leonard, John <jleonard@lvi.com>
**Sent:**       Thursday, October 14, 2010 6:37 PM
**To:**         State, Scott <SState@lviservices.com>
**Subject:**    Re: FW: Chairman - Areas of Responsibility
**Attach:**     CHAIRMAN.doc; CHAIRMANanswers.doc

For discussion.  I will give you me thoughts.

<<...>>

John M. Leonard

Chief Operating Officer
LVI Services Inc. & NorthStar Recovery Services
80 Broad Street
Third Floor
New York, NY 10004

Cell #: (201) 370-2113
Phone # (303) 727-9205
Fax #: (212) 951-8930
24 hour disaster response - (800) 283-2933

johnleonard@lviservices.com
www.lviservices.com

Asbestos Abatement \ Demolition \ Mold Remediation
Emergency Response - Fire \ Water Restoration
Decommissioning \ Decontamination
Fiber \ Cementitious \ Intumescent Fireproofing

From:  "State, Scott" <SState@lviservices.com>

To:    "Leonard, John" <JohnLeonard@lviservices.com>

Date:  10/14/2010 03:33 PM

Subject:      FW: Chairman - Areas of Responsibility

I spoke at length with Burt about his future role.  I will meet with him on the same
topic next week while in NY.  He sent the attached list of his duties as he sees them.
Can you go through the list and ID who we could transition these to?  The 7th bullet
regarding historical business is the only area I had told him we wanted his active
support.  I want to have a transition plan that gets us to where we need to be by the end
of this year.

From: BFried@lviservices.com [BFried@lviservices.com]
Sent: Thursday, October 14, 2010 11:55 AM

CONFIDENTIAL

LVI 000420

To: State, Scott
Subject: Chairman - Areas of Responsibility

Attached for your review and discussion on Tues 10/19.

(See attached file: CHAIRMAN.doc)

Burton T. Fried
Chairman
LVI Services Inc.
877 Post Road East
Suite # 4
Westport, CT 06880
Phone: (203) 222-0584
Fax: (203) 222-2227
bfried@lviservices.com <<...>>

CONFIDENTIAL

## CHAIRMAN -  AREAS OF RESPONSIBILITY

- Development and implementation of new business initiatives – Domestic and International – UK, Middle East, U.S., Latin America.......Squibb, Emcor Middle East, Harsco, LendLease
- Major Client /Major Project/Competitor Relationships – Turner, Tishman Construction, Yale, duel relationships with other LVI managers etc.
- LVI relationship manager with Surety (Arch) and Surety Agent (Ferrucci)
- Review all Requests for Bid Bond/Payment and Performance Bond Requests; Bonded Contracts and large Unbonded Contracts – Risk Assessment of scope, schedule, and difficulty.
- Select all outside counsel to represent LVI on legal matters.
- Manage at a senior level all LVI litigation and legal matters......contracts, corporate compliance ie: minutes, qualification to do business, corporate name changes, construction claims, collection matters, employment related claims and litigation, employment terminations, internal corporate investigations of violations of Business Code and Theft, regulatory compliance/environmental violation support, etc., supervise public agency/quasi-public agency review during prequalification process ie: NYS SCA, NYC Vendex Listings, Debarment etc.
- Resource for all historical LVI business, employee and legal matters.
- Review and approve of all LVI Offers of Employment.
- Negotiate all company acquisitions....both conventional and unconventional ie: Hudak.
- Monitor all employee air travel.
- Secure approvals from Surety of Bonding for Mentor/Protégé and Teaming Surety Bond Requirements.
- Review and approve all planned submissions of Prequalification submissions nationwide prepared at Westport office.
- Prepare, review and/or approve all LVI contracts and/or terms of agreements not in the ordinary course of business ie: non disclosure agreements, office/warehouse leases, mentor/protégé, teaming, alliance agreements, master service agreements.
- Prepare all LVI consulting agreements ie: sales, services etc.
- Coordinate all corporate public relations communications and website updates with LVI public relations firm.

10/14/10

CONFIDENTIAL

LVI 000422

CHAIRMAN -  AREAS OF RESPONSIBILITY

- Development and implementation of new business initiatives – Domestic and International – UK, Middle East, U.S., Latin America.......Squibb, Emcor Middle East, Harsco, Lend Lease

Mark Canessa for Squibb, Harsco.  He has the relationship with Emcor Middle East and Lendlease (Bob).  I would give Lendlease to David Pearson and think you need to take Emcor.

- Major Client /Major Project/Competitor Relationships – Turner, Tishman Construction, Yale, duel relationships with other LVI managers etc.

Jim Mooney and Frank Aiello with the local BD's.

- LVI relationship manager with Surety (Arch) and Surety Agent (Ferrucci).

Yourself and Joe Annarumma.  Greg Dicarlo from a bond request submission.

- Review all Requests for Bid Bond/Payment and Performance Bond Requests; Bonded Contracts and large Unbonded Contracts – Risk Assessment of scope, schedule, and difficulty.

Greg Dicarlo and Tom Cullen working with me.

- Select all outside counsel to represent LVI on legal matters.

Greg Dicarlo.

- Manage at a senior level all LVI litigation and legal matters......contracts, corporate compliance ie: minutes, qualification to do business, corporate name changes, construction claims, collection matters, employment related claims and litigation, employment terminations, internal corporate investigations of violations of Business Code and Theft, regulatory compliance/environmental violation support, etc., supervise public agency/quasi-public agency review during prequalification process ie: NYS SCA, NYC Vendex Listings, Debarment etc.

Greg Dicarlo.

- Resource for all historical LVI business, employee and legal matters.

Greg Dicarlo and myself.

- Review and approve of all LVI Offers of Employment.

Kamal Sookram.

- Negotiate all company acquisitions....both conventional and unconventional ie: Hudak.

Greg Dicarlo, you and myself.

- Monitor all employee air travel.

Myself with administrative assistant.

- Secure approvals from Surety of Bonding for Mentor/Protégé and Teaming Surety Bond Requirements.

Yourself.

- Review and approve all planned submissions of Prequalification submissions nationwide prepared at Westport office.

Mark Canessa.

- Prepare, review and/or approve all LVI contracts and/or terms of agreements not in the ordinary course of business ie: non disclosure agreements, office/warehouse leases, mentor/protégé, teaming, alliance agreements, master service agreements.

Greg Dicarlo.

- Prepare all LVI consulting agreements ie: sales, services etc.

Greg Dicarlo.

- Coordinate all corporate public relations communications and website updates with LVI public relations firm.

Mark Canessa.

10/14/10

CONFIDENTIAL

# Exhibit 37

| From: | BFried@lviservices.com |
|---|---|
| Sent: | Wednesday, September 22, 2010 4:00 PM |
| To: | Simmons, Brian P. <BSimmons@chsonline.com> |
| Cc: | Hogan, Robert <RHogan@chsonline.com> |
| Subject: | Scott State |

Brian:  Spoke with Scott. He now has no concern about my support in his
role as CEO. He does have a few remaining issues relating to the EBITDA
language ("as adjusted") and other items which are not major. Recommend
that you be personally on the call with Rob when he calls Scott this
afternoon. Otherwise, at best discussions will be protracted without
resolution with Scott or at worst he may end up totally frustrated and
withdraw himself from further consideration.........Burt

Burton T. Fried
Chairman/CEO
LVI Services Inc.
877 Post Road East
Suite # 4
Westport, CT 06880
Phone: (203) 222-0584
Fax: (203) 222-2227
bfried@lviservices.com

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only
for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the
employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly
prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system.
Thank you.

CONFIDENTIAL

Exhibit 38

| | |
|---|---|
| **From:** | Fried, Burton <bfried@lvi.com> |
| **Sent:** | Thursday, September 23, 2010 10:39 AM |
| **To:** | Leonard, John <JohnLeonard@lviservices.com>; Cutrone, Paul <PCutrone@Notes.lvi.com> |
| **Subject:** | Scott State |

Spoke to Scott yesterday and ended with him being very comfortable about how we would work together. He had one issue to resolve with CHS concerning basis for extra stock option to be vested. Today received an e-mail in which he withdrew his name from consideration. He said he is totally frustrated with the negotiating position taken by CHS. Told Brian this was going to happen and to handle himself personally yesterday but he left it to Rob.

Brian is now trying to resolve by agreeing to the last issue raised by Scott but Scott is not answering his call and is not answering my call. Ask John "not" to reach out to Scott. Let the dust settle and see if Scott reconsiders. Sent him an e-mail and hope that will change his mind.

CHS does it again.

Burt


Burton T. Fried
Chairman/CEO
LVI Services Inc.
877 Post Road East
Suite # 4
Westport, CT 06880
Phone: (203) 222-0584
Fax: (203) 222-2227
bfried@lviservices.com

CONFIDENTIAL