UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                              :

BURTON T. FRIED,                        :
                                              :  10 Civ. 9308 (JSR) (JCF)
                      Plaintiff,          :

                - against -            :

LVI SERVICES, INC.; LVI PARENT CORP.,    :
CODE HENNESSY SIMMONS LLC d/b/a/ CHS  :
PRIVATE EQUITY V LP; APOLLO                  :
INVESTMENT CORP.; SCOTT E. STATE, in his :
official and individual capacities; BRIAN      :
SIMMONS, in his official and individual capacities; :
RAJAY BAGARIA, in his official and individual :
capacities; GERALD J. GIRARDI, in his official :
and individual capacities,                            :
                                              :
                    Defendants.      :
------------------------------------ X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SIDLEY AUSTIN LLP

ATTORNEYS FOR Defendants
    LVI Services, Inc., LVI Parent Corp., Scott E. State,
    Brian Simmons, Rajay Bagaria and Gerald J.
    Girardi.

787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
(212) 839-5300

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

    I.    FRIED'S ADEA CLAIMS SHOULD BE DISMISSED ........................................1

        A.    Fried Fails to Adduce Any Competent Evidence That Age Was the "But For" Cause of His Termination ..........................................................1

            1.    Fried Tried to Interfere with State's Management of LVI ..............3

            2.    State's Remark Alone Cannot Defeat Summary Judgment.............3

            3.    The Allocation of Fried's Proposed List of Responsibilities to Other Managers Is Irrelevant.......................................................5

    II.    FRIED'S AGE DISCRIMINATION CLAIMS UNDER THE NYCHRL SHOULD BE DISMISSED WITH PREJUDICE ..................................................6

    III.    FRIED'S RETALIATION CLAIMS SHOULD BE DISMISSED ........................7

        A.    Fried Fails to Rebut the Legitimate Business Reason for His Termination ......................................................................................................7

        B.    Defendants Have Articulated Legitimate Business Reasons for Closing The Westport Office and Eliminating Shari Dembin's Position ............................................................................................................9

CONCLUSION ...........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Deebs v. ALSTOM Transp., Inc.,
 346 Fed. Appx. 654 (2d Cir. 2009) ............................................................................................9

Deebs v. ALSTOM Transp., Inc.,
 550 F. Supp. 2d 385 (W.D.N.Y. 2008) ......................................................................................5

Giarratano v. Edison Hotel,
 No. 08 Civ. 1849, 2009 WL 464441 (S.D.N.Y. Feb. 24, 2009) .................................................4

Hird-Moorhouse v. Belgian Mission to the U.N.,
 No. 03 Civ. 9688, 2010 WL 3910742 (S.D.N.Y. Oct. 5, 2010) ...............................................10

Hoffman v. Parade Publ'ns.,
 15 N.Y.3d 285 (2010) ............................................................................................................6, 7

Hoffman v. Parade Publ'ns.,
 878 N.Y.S. 2d 320 (1st Dep't. 2009) .........................................................................................6

Hofmann v. Dist. Council 37,
 No. 99 Civ. 8636, 2004 WL 1936242 (S.D.N.Y. Aug. 31, 2004) .............................................4

Hunter v. St. Francis Hosp.,
 281 F. Supp. 2d. 534 (E.D.N.Y. 2003) ......................................................................................9

Lightfoot v. Union Carbide Corp.,
 No. 92 Civ. 6411, 1994 WL 184670 (S.D.N.Y. May 12, 1994) ................................................7

Morris v. N.Y.C. Dep't. of Sanitation,
 No. 99 Civ. 4376, 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003) ................................................4

O'Reilly v. Marina Dodge, Inc.,
 No. 10-2977-cv, 2011 WL 1897489 (2d Cir. May 19, 2011) ................................................4, 5

Saenger v. Montefiore Med. Ctr.,
 706 F. Supp. 2d 494 (S.D.N.Y. 2010) .......................................................................................1

Schreiber v. Worldco LLC,
 324 F. Supp. 2d 512 (S.D.N.Y. 2004) .......................................................................................4

Sciola v. Quattro Piu, Inc.,
 361 F. Supp. 2d 61 (E.D.N.Y. 2005) .........................................................................................4

<u>Shapiro v. N.Y.C. Dep't. of Educ.</u>,
   561 F. Supp 2d 413 (S.D.N.Y. 2008) ..................................................................4

<u>Silver v. N. Shore Univ. Hosp.</u>,
   490 F. Supp. 2d 354 (S.D.N.Y. 2007) ..............................................................8, 9

<u>Slattery v. Swiss Reinsurance Am. Corp</u>,
   248 F.3d 87 (2d Cir. 2001) ..................................................................................9

<u>Suttell v. Mfrs. Hanover Trust Co.</u>,
   793 F. Supp. 70 (S.D.N.Y. 1992) ........................................................................5

## PRELIMINARY STATEMENT

"It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age . . . . [T]he ADEA was prompted by the concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." Saenger v. Montefiore Med. Ctr., 706 F. Supp. 2d 494, 510 (S.D.N.Y. 2010) (citation omitted). Here, it is undisputed that Burton Fried had the ability to perform a valuable role for LVI. It was not his age but his refusal to relinquish control of the reins of management to Scott State, LVI's new President and CEO, that caused his dismissal.

As set forth more fully below, the documents and testimony Fried presents as evidence of discrimination is the very evidence that supports Defendants' decision to create a role for Fried that would not interfere with State's ability to run LVI as he saw fit. In his opposing brief (the "Opp."), Fried has failed to set forth any evidence, other than his own conjecture, that Defendants' reasons for terminating his employment and that of his daughter are pretextual and mask an intent to discriminate against him on the basis of his age or retaliate against him because of his complaint. As such, Fried's Amended Complaint should be dismissed in its entirety.

### I. FRIED'S ADEA CLAIMS SHOULD BE DISMISSED

#### A. Fried Fails to Adduce Any Competent Evidence That Age Was the "But For" Cause of His Termination

In the Opposition, Fried fails to set forth evidence that Defendants' decision to restructure his role was anything but a legitimate business decision made after careful consideration, and fails to sustain his burden of showing that age was the "but for" reason for his termination.

Fried's "evidence" to support this final burden consists of: (1) an email in which State asks about a contractual provision that required unanimous Board consent to remove Fried as Chairman; (2) State's email setting forth the conditions for his acceptance of the position of

President and CEO, including his understanding that Fried would retire from the day-to-day running of LVI and assume a consultant role, as Fried had previously promised; (3) State's receipt of assurances from Fried that he would give State the independence to run LVI without interference; (4) Defendants' supposed failure to allege that Fried interfered with State; (5) no other LVI senior managers were fired; (6) the redistribution of Fried's responsibilities to "younger" employees and (7) State's statement during the course of a conversation about Fried's role: "Burt, you are 71 years of age, how much longer do you expect to work? What if you get hit by a bus?" (Opp., 12-13 & 17; Seltzer Aff., Exh. B, 18-19.) Other than the incorrect statement that Defendants failed to allege that Fried interfered with State, which is addressed below, the other evidence is fully supportive of Defendants' position that Fried's employment was terminated because of his stubborn refusal to fully turn the reins of governance over to State and to accept the role he had agreed to assume.[1]

The undisputed facts that put Fried's purported "evidence" in context are entirely ignored in the Opposition. Fried agreed in writing that he would step away from the day-to-day running of the Company when State expressed his concern that he would not have the autonomy he needed to run LVI.[2] Unambiguously, Fried wrote "I will repeat my offer to Scott. I am prepared to remain at LVI until he, the Board or I decide its time for me to leave . . . an offer he can't refuse." (Seltzer Aff., Exh. E.) These reassurances justly led Defendants to assume that Fried was indeed ready to "retire" from his management obligations and assume an advisory role at the pleasure of the new CEO. State's pre-hire inquiries, his request for reassurance that Fried would

---

[1] Fried's "evidence" that no other senior managers were terminated along with Fried is a red herring. Fried's discharge was not the result of a reduction in force, but, rather, was the consequence of his rejection of the consultancy offer made by the Board.

[2] Fried's agreement to step down from the day-to-day running of LVI had been a condition of the sale to CHS in 2005. (Seltzer Aff., Exh. B, 77; see also Main Brief at pp. 2-3.)

2

keep his word and his baffled question "Burt, you are 71 years of age, how much longer do you expect to work? What if you get hit by a bus?" in response to Fried's extensive list of managerial responsibilities he proposed to perform, are readily explained by Fried's dramatic reversal of position. (Seltzer Aff., Exhs. E, F, G, J, K, L, O & V.)

### 1. Fried Tried to Interfere with State's Management of LVI

Contrary to Fried's unfounded contention that "Defendants do not even allege that Mr. Fried actually interfered with State" (Opp., 13), the record is replete with undisputed evidence that, in fact, Fried began a campaign of interference from State's earliest days at LVI. Specifically, during the transition period, Fried demanded that State confer with him prior to making decisions, leading State to protest to the Board that this was "exactly the issue I had prior to accepting the job." (Seltzer Aff., Exhs. J, K, L & M.) Moreover, Fried communicated his intent to continue to involve himself with LVI's management by presenting State with a list of responsibilities he expected to perform, ranging from the development and implementation of business initiatives to tasks as mundane as the monitoring of all employee air travel. (Seltzer Aff., Exh. O.) It was precisely Fried's blind refusal to accept a role as envisioned by the CEO and Board that led to the decision to terminate his employment with LVI and offer him a consultancy. This decision was communicated to Fried by Brian Simmons in an email that preceded the Board Meeting in which Fried complained of discrimination. (Seltzer Aff., Exh. S.) Defendants, therefore, have set forth sufficient evidence of Fried's interference with State's management of LVI in contravention of the promises he repeatedly made to Defendants.

### 2. State's Remark Alone Cannot Defeat Summary Judgment

Realizing that all of his "evidence" of pretext can be readily explained when put into context, Fried focuses the large part of his ADEA argument on State's statement of October 19, 2010. Initially, Fried contends that Defendants' explanation that the statement was an inquiry

3

into Fried's future plans must be false because State "admittedly knew that [Fried] had no intention of retiring." Fried supports this proposition with two emails. (Opp., 13.) The first is an email from State, dated September 19, 2010, prior to his acceptance of the position, indicating that State had been told by members of the senior team that Fried would never retire. (Datoo Aff., Exh. 19.) Because of these representations, however, State asked to have a conversation with Fried to obtain reassurance from him that he was indeed ready to relinquish responsibility for the management of LVI – a reassurance Fried gave him on September 22, 2010. (Seltzer Aff., Exh. F.) The second email that purportedly shows that State knew that Fried "had no intention of retiring" is, in fact, an email from State shortly after his receipt of the list of Fried's proposed duties, in which State expresses frustration at Fried's ever-shifting position relating to his role. (Datoo Aff., Exh. 34.) Neither email is supportive of Fried's proposition. These emails, in fact, amply prove that State was blind-sided by Fried's change of position, from his reassurances of September 22, 2010 that he would accept any role proposed by State or the Board, to his sudden demand for pivotal responsibilities on October 14, 2010.[3]

Tellingly, the only case cited by Fried that was decided after the Supreme Court's Gross decision, O'Reilly v. Marina Dodge, Inc., No. 10-2977-cv, 2011 WL 1897489 (2d Cir. May 19, 2011), gives a good indication of a plaintiff's burden in proving that age was the "but for" reason

---

[3] The cases cited by Fried are inapposite because they all deal with situations involving evidence well beyond a single comment by a decision-maker. See Giarratano v. Edison Hotel, No. 08 Civ. 1849, 2009 WL 464441 (S.D.N.Y. Feb. 24, 2009) (in addition to purportedly ageist comment, the plaintiff set forth evidence that the defendant's legitimate business reason for the adverse action was pretextual); Sciola v. Quattro Piu, Inc., 361 F. Supp. 2d 61 (E.D.N.Y. 2005) (same); Morris v. N.Y.C. Dep't. of Sanitation, No. 99 Civ. 4376, 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003) (same); Schreiber v. Worldco LLC, 324 F. Supp. 2d 512 (S.D.N.Y. 2004) (plaintiff alleged multiple statements from numerous management members directly denigrating his age); Hofmann v. Dist. Council 37, No. 99 Civ. 8636, 2004 WL 1936242 (S.D.N.Y. Aug. 31, 2004) (same); Shapiro v. N.Y.C. Dep't. of Educ., 561 F. Supp 2d 413 (S.D.N.Y. 2008) (defendant was unable to articulate legitimate business reasons for the adverse actions).

4

for an adverse employment action. In a case involving the termination of a plaintiff's employment due to poor performance, the court denied summary judgment where, in addition to the evidence of numerous derogatory ageist remarks, the defendant failed to provide evidence of alleged performance deficiencies, including discipline or negative performance evaluations, and the plaintiff provided abundant evidence of good work performance. Id. at *2-3. In stark contrast to O'Reilly, Fried fails to adduce evidence, other than the single comment by State, to support his contention that the reason for Defendants' actions was pretextual and based on age.[4]

### 3. The Allocation of Fried's Proposed List of Responsibilities to Other Managers Is Irrelevant

Finally, Fried alleges that the reassignment of "his duties" to "younger" managers is evidence of discrimination. (Opp., 17.) Initially, with the exception of one manager, the job duties on the list proposed to State by Fried were ultimately assumed by individuals over the age of 40, including State, who was 47 at the time. (Opp., 8.) Moreover, the reassignment of a terminated employee's duties to younger employees is not itself indicative of age discrimination. See Deebs v. ALSTOM Transp., Inc., 550 F. Supp. 2d 385, 390-91 (W.D.N.Y. 2008) ("reassignment of [the plaintiff's] duties to other, younger employees does not dictate a finding that other employees were hired into the [plaintiff's] position, or that the position was effectively reinstated at any relevant time following [the plaintiff's] discharge"); Suttell v. Mfrs. Hanover Trust Co., 793 F. Supp. 70, 73 (S.D.N.Y. 1992) (reassigning the plaintiff's duties to younger employees after his job was eliminated did not mean that the plaintiff was "replaced" by a younger employee for purposes of his age discrimination claim).

---

[4] Plaintiff's proclamations about his "exceptional" performance prior to State's hire are irrelevant. (Opp., 16.) Defendants never stated that the reason for their decision relating to Fried's employment was based on performance, and, in fact members of the Board of Directors praised his performance as interim CEO. Id. His prior performance, therefore, is of no consequence. The favorable comments by the Board members do, however, support the same actor inference, as set forth in the Main Brief at page 19.

5

## II.  FRIED'S AGE DISCRIMINATION CLAIMS UNDER THE NYCHRL SHOULD BE DISMISSED WITH PREJUDICE

Although Plaintiff states in the Opposition that he worked out of the New York City office "on occasion," attended meetings in New York City, and called and/or emailed personnel in the New York City Office (Opp., 3), he cannot escape (nor does he really deny) the undisputed fact that at the time of the purported discrimination, Fried both lived and worked in Westport, Connecticut. (Compl., ¶¶ 15, 27.) Despite this concession, Fried argues, without benefit of any supporting law, that he was "impacted" by the adverse decision in New York City because his termination prevented him from working on projects, traveling to meet with clients and overseeing employees in New York City. (Opp., 19.) This is a misinterpretation of the law.

As set forth in the Main Brief, New York courts have consistently held that the "impact" of an adverse decision when determining the application of the NYCHRL is the impact of the decision on the plaintiff's employment. (Main Br., 16-17.) Regardless of Fried's unsupported interpretation, Fried's job was based in Connecticut and was eliminated, thus impacting Fried, in Connecticut, not in New York City.

Plaintiff's reliance on Hoffman v. Parade Publ'ns., 15 N.Y.3d 285 (2010) is puzzling, as it is not even minimally supportive of his claim. (Opp., 18.) Hoffman, a resident of Georgia, who worked in Atlanta, alleged that he had "frequent in-person meetings" in New York City, attended quarterly meetings in New York City, and he was managed from and the decision to terminate him was made and executed in New York City. Hoffman v. Parade Publ'ns., 878 N.Y.S. 2d 320, 322 (1st Dep't. 2009). The Court of Appeals rejected Hoffman's claim, holding that the NYCHRL protects only those who felt the impact of an adverse decision in the city, namely those "who work in the city." 15 N.Y.3d at 291. The Court explained: "the impact requirement is relatively simple for courts to apply and litigants to follow, leads to predictable

results, and confines the protections of the NYCHRL to those who are meant to be protected – those who work in the City."[5] Id. Because, Fried was employed in LVI's Connecticut office, the impact of his termination occurred in Connecticut, and his NYCHRL claim must be dismissed.

## III. FRIED'S RETALIATION CLAIMS SHOULD BE DISMISSED

### A. Fried Fails to Rebut the Legitimate Business Reason for His Termination

In the Opposition, Fried contends that he has set forth "direct evidence" of retaliation, thereby relieving him of the requirement of proving that the legitimate business reason articulated by Defendants is pretext for retaliation. (Opp., 21.) The testimony and documents cited by Plaintiff are, however, not evidence of discrimination at all, let alone "direct evidence." Gerald Girardi's testimony and contemporaneous notes, state: "Burt sent preemption letter. Ignore. Good faith letter offer to Burt Fried. Next step send out letter to Burt." (Datoo Aff., Exh. 5, 82-92, Exh. 25.) This evidence indicates only that, despite receipt of the letter from Fried's counsel on November 15, 2010, the Board was prepared to move forward with presenting the offer of consultancy to Fried as had been planned even before Fried's complaint at the November 4, 2010 Board meeting. The offer of consultancy had been made by Simmons to Fried on November 2, 2010 and a draft of the offer letter had been circulated for comment by November 11, 2010, four days prior to the receipt of Fried's demand letter. (Seltzer Aff., Exh. S; Affirmation of Joanne Seltzer in Support of Defendants' Reply Memorandum of Law ("Seltzer Reply Aff."), Exh. A.) The cited portions of the testimony of another Board member, John Schnabel, similarly fail to lend support to Fried's claim. In the cited pages, Schnabel merely testifies about a telephone conference with the Board relating to the receipt of Fried's demand

---

[5] Plaintiff's suggestion that Hoffman rendered Lightfoot v. Union Carbide Corp., No. 92 Civ. 6411, 1994 WL 184670 (S.D.N.Y. May 12, 1994), bad law is entirely inaccurate. (Opp., 20 n 2.) Not only is Lightfoot good law, but it is in accord with the Hoffman ruling that the protections of the NYCHRL should be given to individuals who have been impacted in the city by discriminatory decisions. See id. at *5.

7

letter (Datoo Aff., Exh. 8, 138-39) and that he "assumes" that Fried's *demand letter* was in response to Simmons's letter offering Fried the consulting agreement. Schnabel's testimony is, therefore, a total reversal of Fried's contention. (Datoo Aff. Exh., 8, 145-48.)[6] This evidence, far from proving that the offer of the consultancy was triggered by Fried's demand letter of November 15, 2010, instead shows the Board's intent to ignore Fried's litigation threat and proceed with the offer of a consultant role with LVI.

Fried's Opposition to Defendants' motion to dismiss his retaliation claim boils down to the temporal proximity between his Complaint and Simmons's proposal of November 16, 2011, which terminated his employment as an LVI employee and offered him, instead, a consultancy agreement. In addition to the insufficiency of this temporal proximity alone to defeat Defendants' motion, the proximity is totally undermined by the fact that the discussions about the decision to ask Fried to assume a consultant role were considered by State and members of the Board even before State accepted the position of CEO and President. (Datoo Aff., Exh. 19.)

The single case cited by Fried in opposition to Defendants' proposition that the decisions made with respect to Fried's employment were made prior to his complaints of discrimination, Silver v. N. Shore Univ. Hosp., 490 F. Supp. 2d 354 (S.D.N.Y. 2007), is distinguishable. In Silver, a pre-Gross mixed-motive case, the Court found the temporal proximity between the plaintiff's filing of an EEOC charge and the decision to terminate him to be enough to show causation – a necessary element of a *prima facie* claim. Id. at 364. In its ultimate determination to deny the defendant's motion for summary judgment, however, the Court considered all of the evidence in the case, not just the temporal proximity, including direct evidence of the manager's

---

[6] This is only one of the many "facts" in Plaintiff's response to Defendants' Rule 56.1 Statement of Material Facts that are not supported by the record. Defendants are prepared to submit a summary of these unsupported "facts" and what the record really reflects at the Court's request.

8

testimony that the plaintiff's age was linked to his decision-making process. Id. at 360-61. As there is no similar direct evidence in Fried's case, this case can be easily distinguished from his. Fried's single case stands in stark contrast to the numerous decisions that have found that if an employer's conduct before and after the employee complaint is consistent, the post-complaint conduct is not retaliatory. See e.g., Slattery v. Swiss Reinsurance Am. Corp, 248 F.3d 87, 94-95 (2d Cir. 2001); Hunter v. St. Francis Hosp., 281 F. Supp. 2d. 534, 547 (E.D.N.Y. 2003).

### B. Defendants Have Articulated Legitimate Business Reasons for Closing The Westport Office and Eliminating Shari Dembin's Position

It is well settled that "claims arising from the results of a firm's force reduction will generally not lie where the record 'demonstrate[s] that the reorganization was a business decision made on a rational basis.'" Deebs v. ALSTOM Transp., Inc., 346 Fed. Appx. 654, 657 (2d Cir. 2009) (citation omitted). Defendants have adduced unrebutted evidence of a legitimate business reason for closing LVI's Westport office – one of many necessary measures taken by LVI to cut costs in 2011. (Seltzer Aff. Exhs., AA, BB & CC.) Fried challenges this reason by stating that, even though the closing of the Westport office was contemplated as early as October 29, 2010, Dembin's name was not raised until November 13, 2010; that State was the same actor in the decision to terminate both Fried and Dembin and that she had not been selected in a prior reduction in force. (Opp., 24.)

Initially, it makes absolute sense that, as every employee in the Westport office other than the legal personnel would be terminated, none of the individual employees, including Dembin would have been brought up for individual discussion. Second, the fact that the President and CEO of LVI was involved in both termination decisions is not surprising and hardly evidence of pretext. Finally, the fact that Dembin had not been selected for a reduction prior to the closing of

9

the Westport office is irrelevant and likely attributable, in part, to her being Fried's daughter.[7]

Fried's unfounded supposition regarding the selection of Dembin for the reduction cannot overcome the undisputed fact that Dembin was one of 12 employees included in the RIF and that all the employees in the Westport Office, except the three-person legal department of LVI, were included in the RIF.[8] In sum, Fried fails to allege anything more than Dembin is his daughter and that she was included in a 12-person reduction two months after Fried complained of discrimination. This, without more, does not present an issue of material fact for a jury.

## CONCLUSION

For the reasons set forth above, and in Defendants' Memorandum of Law in Support of Summary Judgment, Defendants respectfully requests that the Court enter summary judgment dismissing the Complaint in its entirety, with prejudice.

Dated: June 27, 2011
New York, New York

SIDLEY AUSTIN LLP

By: _____
Nicholas H. De Baun
ndebaun@sidley.com
Joanne Seltzer
jseltzer@sidley.com
Michael D. Mann
mdmann@sidley.com
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants

---

[7] The case cited by Fried involved a reduction impacting only one employee, rather than multiple employees as here. See Hird-Moorhouse v. Belgian Mission to the UN, No. 03 Civ. 9688, 2010 WL 3910742, at *5 (S.D.N.Y. Oct. 5, 2010).

[8] The Westport Office remains open only until its lease expires this summer, at which point LVI's legal department will be transferred to other LVI offices. State Tr., pp. 75-76. Copies of the pages of the transcript of the deposition of Scott State cited in this Brief are attached to the Seltzer Reply Aff. as Exhibit B.